Exh. 2 to FCCI MSJ
Case No: 8:18-cv-03042
Page 1 of 86

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

------------------------------------------- x

AMERISURE INSURANCE COMPANY AND

AMERISURE MUTUAL INSURANCE COMPANY,

                    Plaintiffs,   Case No.

                            8:18-cv-03042-SCB-SPF

     -against-

FCCI INSURANCE COMPANY, NATIONAL TRUST INSURANCE

COMPANY, TSG INDUSTRIES, INC., THE AUCHTER

COMPANY, AND ARCH INSURANCE COMPANY,

                    Defendants.

------------------------------------------- x


       DEPOSITION of the Defendant, ARCH INSURANCE

COMPANY, by JOEL BEACH, Esq. taken by the Respective

Parties, pursuant to Notice, held at the offices of

Lewis, Brisbois, Bisgaard & Smith, LLP, 77 Water

Street, New York, New York, on January 30, 2020, at

10:03 a.m., before a Notary Public of the State of New

York.

JOEL BEACH, ESQ.

```
 1   A P P E A R A N C E S:
 2          EMERSON & ELDER, P.C.
                   Attorneys for Plaintiffs
 3                 53 West Jackson Boulevard
                   Suite 526
 4                 Chicago, Illinois 60604
 5          BY:   BRETT L. WARNING, ESQ.
 6
            LEWIS, BRISBOIS, BISGAARD & SMITH, LLP
 7                 Attorneys for Defendant
                   ARCH INSURANCE COMPANY
 8                 2 Alhambra Plaza,
                   Coral Gables, Florida 33134
 9
            BY:   TODD R. EHRENREICH, ESQ.
10
11          GOODMAN & McGUFFEY, LLP
                   Attorneys for Defendant
12                 FCCI NATIONAL TRUST COMPANY
                   6751 Professional Parkway West
13                 Suite 103
                   Sarasota, Florida 34240
14
            BY:   CHAD BICKERTON, ESQ.
15
16          LYDECKER & DIAZ, ESQS.
                   Attorneys for Defendant
17                 LANDMARK AMERICAN INSURANCE
                   2300 Glades Road
18                 Suite 440W
                   Boca Raton, Florida 33413
19
            BY:   JEREMY W. HARRIS, ESQ.
20                 (Via telephone)
21                      xxxxx
22
23
24
25
```

JOEL BEACH, ESQ.

1     J O E L   B E A C H,

2         having been first duly affirmed before a Notary

3         Public of the State of New York, was examined

4         and testified as follows:

5     EXAMINATION BY

6     MR. BICKERTON:

7     Q     Good morning, Mr. Beach.  My name is Chad

8     Bickerton.  I represent FCCI and National Trust in this

9     case.

10         Can we start by you giving me your full name?

11     A     Joel D-A-R-R-Y-L Beach.

12     Q     What is your business address, Mr. Beach?

13     A     Three Parkway, Suite 1500, Philadelphia, PA.  I

14     forget the zip. 19102.

15     Q     Mr. Beach, you have been deposed before,

16     correct?

17     A     I have.

18     Q     I believe, correct me if I am wrong, you were

19     deposed twice in another related declaratory judgment

20     action similar to this one, correct?

21     A     That's correct.

22     Q     I assume you are familiar with the rules of a

23     deposition.  I will go over mine.  If at any time I ask

24     you a question you don't understand, please ask me to

25     clarify.  Just to put this on the record, I understand

JOEL BEACH, ESQ.

1   you are not feeling well today, is that correct?

2   A      That is correct.

3   Q      At any point that you need to take a break,

4   please let me know.  We will do that.  The only thing I

5   ask is you don't take a break while a question is

6   pending.

7          I would appreciate affirmative answers, verbal

8   answers instead of nodding your head or things like

9   that.  As this is part of other cases, I think just to

10  make things go more simpler, I'm going to refer to the

11  construction defect case involving RAP, Arch, Amerisure

12  as the underlying action or the RAP suit; is that all

13  right?

14  A      We typically refer to it as the RAP case.

15  Q      Then I will use that terminology, although I

16  don't promise to do it all the time.

17  A      Sure.

18              MR. BICKERTON:  We all have our habits.

19              MR. EHRENREICH:  We will yell at you if

20         you don't.

21              MR. WARNING:  You mentioned Amerisure as

22         a party to that underlying case; they were not.

23              MR. BICKERTON:  Sorry if I said that,

24         that was a mistake.

25  Q      Then there is another related declaratory

JOEL BEACH, ESQ.

1    judgment action.  I am going to refer to that as the

2    Auchter DJ or the first DJ; is that all right?

3    A       Sure.

4    Q       You understand that you are here today in the

5    case Amerisure Insurance Company versus FCCI National

6    Trust; is that correct?

7    A       That's correct.

8    Q       I am going to refer to that as this matter or

9    the second DJ; if that's all right?

10   A       Yes, it is.

11   Q       It just makes things a lot simpler as we parse

12   through other things.  In one of your depositions in

13   the first DJ, you mentioned that you have been deposed

14   more than 10 times?

15   A       Yes.

16   Q       I assume that's still correct?

17   A       That is correct.

18   Q       In that you went through your background, you

19   said you were an assistant vice president at Arch, is

20   that still your position?

21   A       It is, yes.

22   Q       You've been with Arch for eight to nine years at

23   this point?

24   A       That's right.

25   Q       Is that right?

JOEL BEACH, ESQ.

Exh. 2 to FCCI MSJ
Case No: 8:18-cv-03042
Page 6 of 86

1    A       Yes.

2    Q       I figured I would do some of the work so we

3    didn't have to go through all of that.  I understand

4    you're a member of the Pennsylvania bar?

5    A       That's correct.

6    Q       You were first barred in 1996?

7    A       Yes.

8    Q       Is your license still active?

9    A       Yes.

10   Q       You are a licensed adjuster as well?

11   A       Yes.

12   Q       That's in multiple states, correct?

13   A       That's correct.

14   Q       Is one of those states Florida?

15   A       Yes.

16   Q       We touched on this.  I understand you are not

17   feeling well.  Do you feel that that will affect your

18   testimony in any way today?

19   A       No.

20   Q       You are involved in this matter on behalf of

21   Arch; is that correct?

22   A       That's correct.

23   Q       Around how long have you been involved in the

24   claims involved in the RAP case, the first DJ, this

25   matter for Arch?

JOEL BEACH, ESQ.

1    A        Since October of 2012.

2    Q        That's been a continual involvement; is that

3    correct?

4    A        That's correct.

5    Q        Could you just briefly go through your

6    educational history, where you went to college, where

7    you got your law degree?

8    A        Sure.  I got my undergraduate degree from

9    J-U-N-I-A-D-A College in Huntington, Pennsylvania.  I

10   received a Master's in industrial relations from St.

11   Francis College in L-O-R-E-T-T-O, Pennsylvania.

12          I have a Juris Doctor degree from Widener

13   University School of Law.  I have a Master's in

14   Business Administration from Widener University and I

15   have my -- it is called a 2A claims adjuster

16   certificate from the Insurance Claims Institute.

17   Q        Mr. Beach, I am showing you a document that's

18   been marked as Defendant's Exhibit 1.  Have you seen

19   that document before?

20                    (Whereupon a Notice of Deposition was

21                    marked Defendant's Exhibit 1 for

22                    identification as of this date.)

23   A        Yes.

24   Q        Can you please identify that document?

25   A        This is the defendant's Notice of Deposition for

JOEL BEACH, ESQ.

1    Arch Insurance Company's corporate representative.

2    Q       Do you understand that you have been designated

3    by Arch to testify as to certain topics today?

4    A       Yes.

5    Q       If you please look at number -- I am sorry page

6    3, it has a list, pages 3 and 4 has a list of nine

7    different topics.  Have you been designated as to each

8    of those topics?  Please take your time to review them,

9    if you need to.

10   A       Yes.

11   Q       On page 5, it would be easier if I numbered

12   these.  There is a heading that says "Duces Tecum

13   List," do you see that?

14   A       I do.

15   Q       Have you brought any documents with you today

16   for this deposition?

17   A       I have some documents with me, yes.

18           MR. EHRENREICH:  Chad, this is what he

19           reviewed.  If you want to mark that, that's

20           fine.

21           MR. BICKERTON:  I'm going to mark the

22           documents that have been presented as

23           Defendant's Exhibit 2.

24           MR. EHRENREICH:  One is an Arch exhibit,

25           that's the first page.  All the other ones are

JOEL BEACH, ESQ.

 1              TSG exhibits, I believe, Bates stamped.

 2                      (Whereupon documents presented by witness

 3                      were marked Defendant's Exhibit 2 for

 4                      identification as of this date.)

 5                      MR. BICKERTON:  Off the record.

 6                      (Recess taken from 10:14 to 10:17.)

 7                      MR. BICKERTON:  Go back on the record.

 8     Q      The first page of Defendant's Exhibit 2 is Bates

 9     stamped Arch 235492.  After that, there are two other

10     large -- large may be inaccurate, 20 to 40 pages of

11     documents with varying Bates stamped, TSG Bates

12     stamped, Auchter Bates stamped, Arch -- I am not going

13     to go through each individually.

14          Then there is another larger group of papers

15     bound together, probably around 60 to a hundred pages

16     that also bears differing TSG and Auchter and Arch

17     Bates stamps.  So one page and then two bound together

18     collections of documents.

19          Mr. Beach, are those the only documents that you

20     reviewed in preparation for your deposition today?

21     A      No.

22     Q      Can you tell me what else you reviewed in

23     addition to Exhibit 2?

24     A      Generally I looked over the order by Judge

25     Harvey Jay in the RAP case.  I looked over one of my

JOEL BEACH, ESQ.

Exh. 2 to FCCI MSJ
Case No: 8:18-cv-03042
Page 10 of 86       10

1   deposition transcripts.  I think it was the most recent

2   deposition.

3   Q       Would that be -- sorry, not to cut you off.

4   Would that be when you were deposed as the corporate

5   representative for Arch; do you recall?

6   A       I believe so.  I looked over the order in the

7   Arch versus Amerisure case, the summary judgment order.

8   I looked over the deposition transcript of Mr. Kim

9   McNaughton in the Arch/Amerisure case.  I think that's

10  it.

11  Q       Just to clarify a few things.  When you mention

12  the order in the RAP case, do you mean the final

13  judgment?

14  A       It was the order from a filing by -- I am sorry,

15  I am murdering the words, but it is the filing by

16  Amerisure for reconsideration.  Then there is a further

17  order by the judge having to do with a motion for

18  reconsideration.  That's what I recall.

19  Q       Do you recall what the argument's claims

20  involved in that motion for reconsideration were?

21  A       Off the top of my head, I do not.

22  Q       Are you positive that that was in the RAP

23  underlying case as opposed to the first DJ?

24  A       No, I am sorry.  If I said it was a RAP case, I

25  misspoke.  It was a DJ action, I think the first DJ

JOEL BEACH, ESQ.

Exh. 2 to FCCI MSJ
Case No: 8:18-cv-03042
Page 11 of 86

**11**

1   case of the -- well, I have to make sure.  There is

2   Arch's case against Auchter which we received the

3   judgment in, and then there is Arch's case against

4   Amerisure.  I think that's a separate case.

5   Q       Correct.

6   A       Then there is this second DJ action.  There is

7   actually four.

8   Q       Correct.

9           So that that one between Auchter and Arch, that

10  dealt with largely the general indemnity agreement; is

11  that correct?

12  A       That's right.

13  Q       We can call that the indemnification action, is

14  that cool?

15  A       Sure, indemnification.

16  Q       That's why I go through the cases in the

17  beginning.  In the summary judgment order in the first

18  DJ that you mentioned, I will represent to you there

19  were several.  Do you recall the date of that order?

20  A       I do not.  I seem to recall it was the last one.

21  It was an interim -- it wasn't entered as a final

22  because there were others using the case, but there

23  were -- but we have what, I forgot, 5 million or

24  something like that, that we have a judgment.  Then

25  there was a number of other things in there in that

JOEL BEACH, ESQ.

1   order having to do with issues.  I just forgot.  I have

2   to look again.

3   Q     Sure.  Do you recall if it was entered in

4   February of last year, 2019?

5   A     I don't recall the date.

6   Q     The deposition of Mr. McNaughton that you

7   reviewed, that was taken in the first DJ as well?

8   A     Yes.

9              MR. EHRENREICH:  DJ, so that we are all

10             in agreement, stands for declaratory judgment.

11             MR. BICKERTON:  That's correct.

12   Q     As part of your preparation, did you review the

13   final judgment in the RAP case?

14   A     Yes.

15   Q     Around how long would you say that you spent

16   reviewing documents preparing for this deposition?

17   A     I mean, six or seven hours.

18   Q     Did you meet with counsel to prepare?

19   A     I did.

20   Q     Around how long did you meet?

21   A     The better part of a day, so again six or seven

22   hours.

23   Q     Just so I am clear, the six or seven hours you

24   mentioned related to review, that would be in addition

25   to the six to seven hours you spent meeting?

JOEL BEACH, ESQ.

```
1    A       That's right.

2    Q       In total, would it be fair to say you spent 12

3    to 14 hours preparing?

4    A       Yes.

5    Q       Mr. Beach, I'm showing you what has been marked

6    as Defendant's Exhibit 3.  I apologize, it has been

7    printed on both sides.  That's not my preference.

8    A       Sure.

9                    (Whereupon the final judgment in the RAP

10                   case was marked Defendant's Exhibit 3 for

11                   identification as of this date.)

12                   MR. EHRENREICH:  We are saving trees,

13           that's okay.  Our firm does that.

14                   MR. BICKERTON:  I didn't have to carry

15           more documents around the streets of Manhattan

16           with me.  Off the record.

17                   (Whereupon a discussion was held off the

18           record.)

19                   MR. BICKERTON:  Back on the record.

20   Q       Mr. Beach, have you seen that document before?

21   A       Yes, I have.

22   Q       Can you identify that document for me?

23   A       This is the final judgment in the RAP case

24   issued by Judge Harvey Jay.

25   Q       In that case, RAP filed suit against Auchter and
```

JOEL BEACH, ESQ.

1   Arch for declaratory judgment for breach of contract

2   and for breach of a performance bond; is that correct?

3   A       That's correct.

4   Q       Then Arch and Auchter sued TSG Industries, Inc.

5   for contractual indemnity and breach of contract; is

6   that correct?

7   A       That's my understanding, yes.

8   Q       RAP did not make any claims directly against TSG

9   in that case; is that correct?

10  A       That's my understanding, that's correct.

11  Q       In the underlying action, Arch never sued TSG

12  for claims of negligence; is that correct?

13  A       That's my understanding, yes.

14  Q       The claims against TSG by Arch and by Auchter

15  related to TSG's breach of the subcontract between TSG

16  and Auchter; is that correct?

17  A       Yes.

18  Q       In that case, there were three main types of

19  damages.  There were damages related to the window

20  system, damages related to delay damages and there were

21  damages related to punch list items in that case?

22              MR. EHRENREICH:  Object to form.

23  A       Actually, there were four.

24  Q       What did I miss?

25  A       Interest.

JOEL BEACH, ESQ.

Exh. 2 to FCCI MSJ
Case No: 8:18-cv-03042
Page 15 of 86
15

1  Q     Interest, okay.  Generally I described those

2  other three types of damages?

3  A     That's correct.  To clarify, you weren't off.

4  The judge left open the issue of interest in the order

5  itself.  It wasn't the final ruling on the interest

6  issue itself.

7  Q     When you say order, you mean the final judgment?

8  A     That's right.

9  Q     Did Arch bring any claims to TSG for the punch

10  list items?

11  A     Not that I am aware of.

12  Q     Were the only claims against TSG by Arch and

13  Auchter related to the window system damages?

14          MR. EHRENREICH:  Object to form to that

15          previous question.  I think there is an

16          interrelationship.  That's my objection.

17  A     The window damages encompassing the windows

18  themselves and then what I call the rip and tear around

19  the windows, so yeah.

20  Q     Those would include the $5 million that you

21  mentioned previously?

22  A     That's right.

23  Q     Can you turn to page 45, please, of that

24  document?  I am using the number on the bottom.

25  A     Yes, sir.

JOEL BEACH, ESQ.

1    Q      Do you see that paragraph at the top of the

2    page?

3    A      I do.

4    Q      Do you mind reading that?

5    A      No --

6    Q      Not out loud, just to yourself.  Sorry.

7    A      Yes, sir.

8    Q      This paragraph references total damages due to

9    RAP in connection with the defective building envelope

10   and water intrusion are $5,067,033.01.

11         Did I read that correctly?

12   A      You did, yes.

13   Q      Are those total damages the damages that we were

14   just speaking about in terms of the window systems?

15   A      Yes.

16   Q      You reference the term "rip and tear"?

17   A      Right.

18   Q      Are there damages in that paragraph that relate

19   to that phrase that you used?

20   A      I did.  It is in-artfully stated by me, but yes,

21   there is.

22   Q      Which damages are those?

23   A      The damages referenced in the second sentence

24   RAP shall also recover 1,062,492 as the amount required

25   to perform interior repairs in connection with removing

JOEL BEACH, ESQ.

Exh. 2 to FCCI MSJ
Case No: 8:18-cv-03042
Page 17 of 86      17

1  and replacing the windows.

2  Q      The term rip and tear isn't used in that portion

3  of the final judgment, correct?

4  A      That's correct.  That was my characterization,

5  not the Judges'.

6  Q      Then if you would turn to page 82, please.

7  A      Yes.

8  Q      At the bottom of sub part C, the second to the

9  last sentence, it states "Additionally the court finds

10  that TSG breached the TSG subcontract by performing

11  defective work and by failing to remedy the defective

12  work when it should have known the work was faulty."

13        Did I read that correctly?

14  A      You did.

15  Q      Is it your understanding that -- I am sorry.  I

16  said that in-artfully.

17        Is it Arch's understanding that TSG was found to

18  have breached the TSG subcontract in that final

19  judgment?

20  A      Yes.

21  Q      Is it Arch's position that the court correctly

22  held that TSG breached the TSG subcontract when it

23  should have known the work TSG did was faulty?

24              MR. EHRENREICH:  Object to form.

25  A      We don't contest the judge's ruling on that

JOEL BEACH, ESQ.

1   point.

2   Q     Was any appeal of the final judgment made by

3   Arch in the RAP case?

4   A     I don't believe an appeal was filed by Arch in

5   that case.

6   Q     If you don't mind turning to page 83 -- we

7   should start on page 82.  My apologies.

8         The last partial sentence states specifically

9   "The court awards damages in favor of Arch and against

10  TSG in the amount of $5,067,033.01."

11        Did I read that correctly?

12  A     You did, yes.

13  Q     Does Arch contest that the court awarded that

14  amount in favor of Arch and against TSG in the final

15  judgment?

16  A     Can you restate the question?

17  Q     Sure.

18        Does Arch contest that the court awarded damages

19  in favor of Arch and against TSG in the amount of

20  $5,067,033.01?

21  A     I don't know what you mean by contest.  We have

22  no issue with the order.

23  Q     That amount that the final judgment awards to

24  Arch against TSG is the amount of the window system

25  damages in the RAP case; is that correct?

1          MR. EHRENREICH:  Object to form?

2    A      In sum and substance, that's correct.

3    Q      That is the same amount of damages that was

4    discussed on page 45 for the final judgment that we

5    talked about earlier?

6    A      Yes.

7    Q      Maybe I should have asked that question instead

8    of the original confusing one.

9          There were no other damages that were awarded to

10   Arch against TSG in the final judgment, other than that

11   $5,067,033.01, correct?

12   A      That's correct.

13   Q      If you don't mind turning to page 6.  I wanted

14   to and I will just let you know, one of the issues I've

15   been trying to look at is what I am going to call the

16   transition from Auchter being on the RAP job site to

17   when Arch took over.

18         In paragraph 10 on page 6, it states "During an

19   April, 2007 meeting Arch introduced one of the RAP

20   owners Paul Lunetta, to Carl Schnabel," I hope I am

21   saying that right, "and Victor Ostrowski of Forcon and

22   RAP told Forcon --" sorry, "and told RAP that Forcon

23   would be managing the project."

24         Did I read that correctly?

25   A      You did.

JOEL BEACH, ESQ.

1  Q      Can you describe to me generally how Arch came

2  to be involved with the RAP job site, the construction

3  of the building?

4  A      Sure.  In late 2006, Arch was informed by

5  Auchter that they were encountering severe financial

6  difficulty and that they would not be able to complete

7  their bonded construction work.  Arch began

8  investigation and met with Auchter and reviewed the

9  bonded work that we had at that time.

10        In March of 2007, Arch met with Auchter and made

11  a decision to become involved in a more active manner

12  on the RAP project and we retained Forcon as our

13  construction consultant to assist us with that.

14  However, Auchter remained the contractor of record on

15  the project as far as the permits and whatnot were

16  concerned.

17  Q      Arch had been investigating whether the work

18  could be complete before the April, 2007 meeting

19  referenced in this paragraph?

20  A      That's true, yes.

21  Q      Would it be fair to say that Arch brought Forcon

22  on to the project to assist Auchter with completing

23  that work?

24  A      I think that's what happened, but they were

25  assisting Arch with completing the project because we

JOEL BEACH, ESQ.

1   have independent obligation under our performance bond

2   to make sure that the project was completed, but in

3   substance, that also is what happened.

4   Q      Arch -- I am sorry, Auchter remained the general

5   contractor of record while this was occurring, correct?

6   A      That's correct.

7   Q      Did Arch take over Auchter's financial

8   obligations to pay subcontractors other things like

9   that?

10  A      Arch had an independent obligation under our

11  payment bond to pay material suppliers on the project,

12  and so that combined with the performance bond

13  obligations and the bond contract led Arch to

14  facilitate payment of labor, materials, suppliers and

15  whatnot as necessary or facilitate the completion of

16  the RAP project.

17  Q      I assume that Arch coordinated those payments

18  with Auchter so that subcontractors, material, men were

19  paid double or anything like that, correct?

20  A      That's right.  They would coordinate that, they

21  would coordinate receipt of whatever lien releases or

22  whatnot were required.

23  Q      Do you know when Arch first started making

24  payments to subcontractors on the project?

25  A      I don't have that specifically in my mind.  I am

JOEL BEACH, ESQ.

1   sure that the records we produced will walk through

2   that, sort of show how those payments were made.  As I

3   sit here today, I don't know.

4   Q      Do you recall seeing that in the documents you

5   reviewed?

6   A      No.

7   Q      I am sorry, when you -- maybe I cut you off.  If

8   I did, I am sorry.

9          When you reference the documents you produced,

10  do you mean those today or that you have produced

11  throughout the course of this matter?

12  A      Throughout the course of this matter.

13  Q      Can you describe to me, if you know, the process

14  that Arch and Auchter had in coordinating how to pay

15  subcontractors and material men once Arch became

16  involved in the project?

17              MR. EHRENREICH:  Object to form.

18  A      I know typically how we do it at Arch, but in

19  this particular instance, I do not know how that

20  worked.

21  Q      How particularly do you do it at Arch or sorry

22  generally?

23  A      Typically we will set up an account where the

24  contract funds are paid into the account and so as

25  earned contract monies are received, they would go into

JOEL BEACH, ESQ.

1   this account called the trust account and that to the

2   extent that it is inadequate to meet the needs of the

3   project, Arch will supplement that money in order to

4   make sure that payments are made in a timely manner in

5   order to keep the project moving forward.

6   Q      In paragraph 14 on page 6, there is a sentence

7   that states "There were no Auchter personnel on the RAP

8   construction site by September, 2007."

9          Did I read that correctly?

10  A      You did.

11  Q      Does Arch have any evidence that that sentence

12  is not true?

13                  MR. EHRENREICH:  Object to form.

14  A      No.

15  Q      That statement in the final judgment, is that

16  correct, as far as Arch knows?

17  A      The reference to that is a testimony from Sugar,

18  T who -- or Sugar, who I believe is Mike Sugar, who was

19  with Forcon, the company they retained.  So I have no

20  reason to challenge that comment.

21  Q      Do you know if Auchter personnel were still

22  involved in the construction of the building after that

23  September, 2007 date?

24  A      I know that as an entity, Auchter continued for

25  some time and were involved in pay apps and things like

JOEL BEACH, ESQ.

1   that.  To the extent that they were involved in the

2   actual construction of the RAP project, I do not know.

3   Q       Would it be fair to say that even though there

4   were no Auchter personnel on the site by September,

5   2007, they may have had some involvement, other than

6   being on site with the project?

7   A       That's correct.

8   Q       That involvement would be things like pay apps,

9   is there anything else you can think of?

10  A       Sure, there is ministerial type things you need

11  to have signed, maybe insurance issues, permitting,

12  things like that, back office.  Maybe a change order,

13  submissions, but again, that's conjecture.  I don't

14  have a personal knowledge of that.

15  Q       Mr. Beach, I'm showing you what has been marked

16  as Exhibit 4.  Have you seen this document before?

17  Always feel free to take the time you need to review

18  it.  I don't mean to rush you.

19              (Whereupon an Application and Certificate

20               for payment was marked Defendant's

21               Exhibit 4 for identification as of this

22               date.)

23  A       This document is Application and Certificate for

24  payment, Application 21 invoice 6926.  I don't have a

25  present recollection of this particular pay app is the

JOEL BEACH, ESQ.

Exh. 2 to FCCI MSJ
Case No: 8:18-cv-03042
Page 25 of 86

**25**

1    term used for these type of documents, but I am

2    familiar with the form.

3    Q       The pay app has a signature on it under

4    contractor, the Auchter Company, do you see that?

5    A       I do.

6    Q       Do you know whose signature that may be?

7    A       I do not.

8    Q       It appears that it is dated August 17, 2007?

9    A       Yes.

10   Q       At this time, Arch would have been involved with

11   the RAP project; is that correct?

12   A       Yes.

13   Q       Is this a document that Arch would have reviewed

14   at that time?

15   A       Well, for sure Forcon would have reviewed it and

16   made a recommendation insofar as its submissions were

17   concerned.  They would have done that on our behalf.

18   Q       Did Arch rely on Forcon to -- I will ask -- what

19   did Arch retain Forcon to do at the RAP job site?

20   A       The scope of their involvement was to do the

21   Arch's eyes and ears on the project, to review the

22   status of the completion of the work, to facilitate

23   coordination of the subcontractors and suppliers of

24   Auchter on the project.  To, as best as possible,

25   maintain the construction schedule and make sure that

JOEL BEACH, ESQ.

1   the project advanced according to the terms and

2   conditions of the Auchter contract with Riverside

3   Avenue Partners for the project.

4   Q       Forcon was on the job site, correct?

5   A       That's correct.

6   Q       Were they there daily, if you know?

7   A       I don't recall if they were there daily, but

8   they had a presence, a regular presence on the project

9   site.

10  Q       One of their duties that you described for Arch

11  was to review the status of completion of the work as

12  it progressed, correct?

13  A       That's correct.

14  Q       If you look on page 2 of that document, there is

15  an item number 80.  It says glass and glazing.

16          Do you see that?

17  A       I do.

18  Q       Under subpart C at the top, it says "Schedule

19  value 2,374,285."

20          Do you see that?

21  A       I do.

22  Q       Under D, it states "Work completed."  There is a

23  section for previous application and a section "This

24  period in place."

25          Do you see that?

JOEL BEACH, ESQ.

1   A        I do.

2   Q        From previous application, it states $1,999,463,

3   is that right?

4   A        Yes, I see that.

5   Q        For this period in place, it states $374,822,

6   correct?

7   A        Yes, sir.

8   Q        Section G, it states "Total completed and stored

9   to date," correct?

10  A        That's correct.

11  Q        That states $2,374,285; is that correct?

12  A        That's correct.

13  Q        In the next label, unfortunately it doesn't have

14  a letter, it says "Percentage," it states

15  "100 percent," correct?

16  A        Yes.

17  Q        What is Arch's understanding about what those

18  numbers reference in terms of the glass and glazing

19  being completed at the project?

20  A        Well, for line item 80 as of the date of the

21  submission of this pay app, the representation was that

22  that work was a hundred percent complete.

23  Q        Who would be making the representation that this

24  was a hundred percent complete?

25  A        Well, it is from the Auchter Company, as they

JOEL BEACH, ESQ.

1   were the complete contractor of record.

2   Q       They would be sending that to Riverside Avenue

3   Partners LLC, the owner of the building, correct?

4   A       That's correct.

5   Q       Is this the representation that the glass and

6   glazing was a hundred percent complete, even though it

7   was sent by Auchter Company, would that be something

8   that Forcon would also examine and review before this

9   pay application was sent?

10  A       Yes.

11  Q       Does Arch have any reason to dispute that the

12  glass and glazing work on the project was 100 percent

13  complete as of the date of Exhibit 4?

14              MR. WARNING:  Object to form.

15  A       Yes, as far as line item 80 is concerned, no, I

16  have no reason to object -- no reason to believe --

17  sorry, I lost the thread of the question.

18              MR. BICKERTON:  Sure, it was a long one.

19              MR. EHRENREICH:  I think he was asking

20          you if you were challenging the number at all.

21              THE WITNESS:  We are not.  For line item

22          80, we are not.

23  Q       Arch's understanding is the glass and glazing

24  subcontractor on the project was TSG Industries, Inc.,

25  correct?

JOEL BEACH, ESQ.

```
 1   A        That's correct.

 2   Q        Are you doing good?

 3   A        Can I just take a short break?

 4            MR. BICKERTON:  Sure.  I kind of sensed

 5        that.

 6            (Recess taken from 11:01 to 11:09.)

 7            MR. BICKERTON:  Back on the record.

 8   Q    Again, if you need a break at all, just let me

 9   know.

10   A        Thanks.

11   Q    Mr. Beach, I'm showing you what has been marked

12   as Defendant's Exhibit 5.  Have you seen that document

13   before?

14   A        Yes, I have.

15            (Whereupon an email was marked

16            Defendant's Exhibit 5 for identification

17            as of this date.)

18   Q    Can you identify that document for me?

19   A        It appears to be an e-mail communication from

20   Robert Hervey to Robert McLeod and Charles McLeod dated

21   August 10th, 2007.

22   Q    Robert Hervey was with or employed by Auchter;

23   is that correct?

24   A        That's my understanding, yes.

25   Q    Do you recall his position with the company?
```

JOEL BEACH, ESQ.

1   A       I do not.

2   Q       This e-mail also copies vico1@cox.net and Brian

3   Mers, correct?

4   A       I see those cc's, yes, I do.

5   Q       Do you know who Brian Mers is?

6   A       I do not.

7   Q       Do you know that other e-mail address?

8   A       I do not.

9   Q       Do you know Victor Ostrowski?

10  A       I should know that name.  The name is familiar

11  to me, but I don't recall from where.

12  Q       I believe the final judgment was Exhibit 3 and

13  on page 6 paragraph 10, do you see that paragraph?

14  A       Yeah, he was employed by Forcon, so he was with

15  Mike Sugar on that job and also Carl Schnabel.

16  Q       Do you know any other Forcon employees that were

17  involved in the project?

18  A       I don't personally know anybody else that was

19  involved.

20  Q       This e-mail is dated August 10th, 2007, correct?

21  A       That's correct.

22  Q       The e-mail states "Charles and Robert, please

23  note that we are having issues with leaks through the

24  ribbon windows.  These leaks seem to be coming from

25  areas where the gasketing seems to be installed

JOEL BEACH, ESQ.

1    improperly."

2          Did I read that correctly?

3    A     You did.

4    Q     Does Arch have any information or evidence that

5    this e-mail was never sent to Charles McLeod or Robert

6    McLeod?

7    A     No.

8                MR. EHRENREICH:  Object to form.

9    Q     Below that, August 10th e-mail from Mr. Hervey

10   to Charles McLeod and Robert McLeod, there is an e-mail

11   from Brian Mers to Robert Hervey and Victor Ostrowski.

12         Do you see that?

13   A     I do.

14   Q     It states "Vic and Bob, here are photos of the

15   window problems on the building we need TSG to fix."

16         Did I read that correctly?

17   A     You did.

18   Q     What is Arch's understanding of this e-mail

19   chain or the purpose of this e-mail chain?

20               MR. EHRENREICH:  Object to form.

21               MR. WARNING:  Object to form.

22   A     My understanding is the purpose was to notify

23   Robert Hervey of issues with windows on the RAP

24   project.

25   Q     Does it appear that Mr. Harvey then e-mailed

JOEL BEACH, ESQ.

1    Charles McLeod and Robert McLeod about those same

2    issues?

3    A       That's correct.

4    Q       Do you know who Charles McLeod and Robert McLeod

5    are?

6    A       I do not.

7    Q       As part of your review for the deposition, did

8    you look at Arch Insurance Company's initial

9    disclosures?

10   A       Yes.

11   Q       I am going to show you what was marked as

12   Defendant's Exhibit 6.  Have you seen that document

13   before?

14   A       I have.

15                   (Whereupon Arch Insurance Company's

16                   initial 26(a)(1) disclosures in first DJ

17                   action were marked Defendant's Exhibit 6

18                   for identification as of this date.)

19   Q       Can you identify that document?

20   A       These are Arch Insurance company's initial

21   26(a)(1) disclosures in the first DJ action -- I am

22   sorry, the second DJ action.

23                   MR. BICKERTON:  If you turn to -- I am

24           sorry, I only brought one copy -- I believe it

25           actually was the last page.

JOEL BEACH, ESQ.

1          MR. EHRENREICH:  Hand it back to him.

2          THE WITNESS:  Sorry. (Handing.)

3          MR. EHRENREICH:  There you go.  Upside

4     down gets a little tough.

5  Q     Number 5?

6  A     I see, okay.  I was looking for Hervey.  Okay,

7  McLeod, yes, under number 5, Robert McLeod and Charles

8  McLeod are listed as being with TSG Industries.

9  Q     Do you have any reason to contest that they

10 would be with TSG Industries?

11 A     I do not.

12          MR. WARNING:  For the record, which case

13     is that from, that being Exhibit 5?

14          THE WITNESS:  Exhibit 6.

15          MR. WARNING:  I am sorry.

16          MR. BICKERTON:  It is Arch's initial

17     disclosures in this matter.

18          MR. WARNING:  The case we are here for

19     today?

20          MR. BICKERTON:  Yes, the second DJ.

21          MR. WARNING:  Thank you.

22 Q     Do you have any reason to contest that

23 Mr. Hervey was sending an e-mail to Charles McLeod and

24 Robert McLeod of TSG in Exhibit 5?

25 A     No.

JOEL BEACH, ESQ.

1   Q      That e-mail mentions "Issues with leaks through

2   the ribbon windows as well as leaks coming from areas

3   where gasketing seems to be installed improperly," is

4   that correct?

5   A      That's correct.

6   Q      As part of Forcon's duties at the job site, were

7   they in charge of investigating looking into complaints

8   about building leaks brought to them by the building's

9   tenants or the building's owners?

10  A      In sum and substance, yes.  Maybe not each and

11  every instance, but sum and substance, yes.

12  Q      Mr. Beach, I am showing you what has been marked

13  as Defendant's Exhibit 7.  Take some time to review

14  that, if you need.

15         Have you seen that document before?

16  A      I believe so.  It is one of the documents that I

17  brought with me today.

18                 (Whereupon an email chain was marked

19                 Defendant's Exhibit 7 for identification

20                 as of this date.)

21  Q      Does this document appear to be an e-mail chain

22  that has been sent from Robert Hervey to Robert McLeod

23  and Charles McLeod on September 18, 2007?

24  A      That's the heading on the first page, yes.

25  That's correct.

JOEL BEACH, ESQ.

1    Q       The e-mail below that heading is from Carlos

2    DelValle to the vico1@cox.net e-mail address and Robert

3    Hervey?

4    A       That's yes.

5    Q       It states Vic, correct?

6    A       Yes.

7    Q       Do you know who Vic might be?

8    A       I do not.

9    Q       Is there a possibility that that is Victor

10   Ostrowski?

11   A       With Forcon, yes.  There is a good chance it is,

12   yes.

13   Q       In any event, the e-mail is being sent to Robert

14   Hervey, correct?

15   A       Yes.

16   Q       It states "Steve Main has just advised me of the

17   reoccurring leaks which he inspected today."

18           Did I read that correct?

19   A       You did.

20   Q       It says "Please reference the numerous past

21   e-mails (included below) in which RDP requested that

22   the specified curtain wall water leak test be

23   performed."

24           Did I read that correctly?

25   A       Yes.

JOEL BEACH, ESQ.

Exh. 2 to FCCI MSJ
Case No: 8:18-cv-03042
Page 36 of 86

36

1   Q      The last sentence of that paragraph states --

2   well, my apologies.  It goes on to state,

3   "Additionally, RDP has noted in field reports going

4   back to February, 2007 numerous roofing noncompliance

5   items which, to the best of our knowledge, have never

6   been corrected.  The building has a long and documented

7   history of reoccurring leaks which we believe are going

8   to continue unless the required leak tests are

9   performed, the problem areas are identified, and the

10  noncompliance items are corrected."

11        Did I read that correctly?

12  A      Yes.

13  Q      Who is Carlos DelValle?

14  A      He is an architect.  To the best of my

15  recollection, the architect on the building that was

16  employed by the owner of the building, RAP.

17  Q      The e-mail references RDB?

18  A      Yes, that's his firm, Rolland D-E-L-V-A-L-L-E &

19  Bradley.

20  Q      Does Arch have any evidence or information that

21  the e-mail referenced in the heading which attaches

22  this e-mail I just read was not sent by Mr. Hervey to

23  Robert McLeod and Charles McLeod?

24            MR. EHRENREICH:  Object to form.

25            MR. WARNING:  Object.  I join.

JOEL BEACH, ESQ.

1    A       We have no reason to contest that.

2    Q       Mr. Beach, I am showing you what has been marked

3    as Defendant's Exhibit 8.  Have you seen that document

4    before?

5    A       I have, yes.

6                    (Whereupon an email chain was marked

7                    Defendant's Exhibit 8 for identification

8                    as of this date.)

9    Q       Do you recall if it is part of the documents you

10   brought today as Defendant's Exhibit 2?

11   A       I don't recall specifically, no.

12   Q       What is that document?

13   A       It is an e-mail from Arch's attorney, Michael

14   Trocke of the Shumaker Loop & Kendrick firm sent to Jan

15   Sipple.

16   Q       It attaches to other e-mails; is that correct?

17   A       I see one following e-mail.  I don't know that I

18   see two.

19   Q       It states "Original message from Michael Sugar

20   to Michael Trocke and Ken Givens" below that?

21   A       That's right.  Okay, so it was just a forward,

22   an FYI Mike, then the next one, yes.  You are correct.

23   Q       Ken Givens was an employee of Arch, correct?

24   A       Yes.

25   Q       What was Mr. Givens' position?

JOEL BEACH, ESQ.

Exh. 2 to FCCI MSJ
Case No: 8:18-cv-03042
Page 38 of 86        38

1    A       Givens, Ken Givens had the same position as I do

2    now.  He was an AVP with Arch and he was primarily

3    responsible for handling the issues involved in the RAP

4    building performance bond claim.

5    Q       At some point, Mr. Givens was not involved in

6    this matter and you became involved, correct?

7    A       That's correct.

8    Q       Do you know around the time when Mr. Givens was

9    not involved with this project anymore?

10   A       Yes, it would have been when I became employed

11   by Arch.  At that same time, Ken retired from the

12   business and so that would have been in October of

13   2012.

14   Q       Up until October of 2012, Mr. Givens, was he

15   still involved in this matter?

16   A       Yes.

17   Q       The second e-mail is from that vico1@cox.net

18   e-mail address, correct?

19   A       That's right.  Vic Ostrowski of Forcon.

20   Q       That e-mail appears to be Victor Ostrowski's

21   e-mail address, correct?

22   A       That's correct.

23   Q       Mr. Ostrowski's e-mail is dated September 20,

24   2007?

25   A       Yes.

JOEL BEACH, ESQ.

1  Q      It is sent to Paul Lunetta and it copies Carl

2  Schnabel, correct?

3  A      Yes.

4  Q      Mr. Lunetta was one of the building owners or a

5  member of RAP; is that correct?

6  A      Harden Associates which would be Ceree Harden,

7  so yes, part of the ownership group.

8  Q      The third paragraph under building leaks, it

9  states "I have also contracted TVS Glass and Istle

10 McDonald metal panel installer to come out and remedy

11 any problems/punch list items."

12        Did I read that correctly?

13 A      You did.

14 Q      Are you aware of any company named TVS Glass

15 being involved in the project?

16 A      I am not.

17 Q      Then the paragraph below that, it states "I will

18 contact today several window experts Forcon has used in

19 the past to set up a full investigation of the

20 buildings' curtain wall system."

21        Is that correct?

22 A      Yes, you have read that correctly.

23 Q      Does it appear that Mr. Ostrowski was telling

24 RAP he was going to investigate the building's curtain

25 wall system and contact window experts to do that --

JOEL BEACH, ESQ.

1           MR. WARNING:  Object to form.

2   Q       -- as of the date of this e-mail?

3   A       That's a fair characterization.  Yes.

4   Q       Does Arch have any evidence or information that

5   Mr. Ostrowski did not contact window experts to

6   investigate the building's curtain wall system on or

7   around September 20, 2007?

8           MR. WARNING:  Object to form.

9   A       No.

10  Q       Is there a reason Arch is aware of why this was

11  sent to Mr. Trocke?

12          MR. WARNING:  Object to form.

13  A       It was sent by Michael Sugar to Michael Trocke.

14  Q       Sorry?

15  A       And I don't know why, other than simply to keep

16  counsel advised as to developments on the project.

17  Q       At that time, is it fair to say that Arch had

18  retained Mr. Trocke as counsel related to this project?

19  A       Yes, and not just this project, but for all

20  matters involving Auchter.

21  Q       Mr. Trocke handled not only this case involving

22  Auchter, but also other cases where Auchter was

23  involved?

24  A       Yes, and not just that, there is the whole

25  indemnity issues and then the financial issues and

JOEL BEACH, ESQ.

Exh. 2 to FCCI MSJ
Case No: 8:18-cv-03042
Page 41 of 86          41

1   whatnot that may fall outside the particular bond

2   liability that Arch may have.

3   Q      Is Arch aware of how many similar projects

4   Auchter defaulted on where Arch had to become involved?

5           MR. EHRENREICH:  Object to form.

6   A      I can get you that information pretty readily,

7   but as we sit here today, I don't recall.  I know that

8   there was more than two.

9           MR. EHRENREICH:  Can we take a two-minute

10          break?

11          (Recess taken from 11:35 to 11:39.)

12  Q      Ready to keep pushing forward?

13  A      Sure.

14  Q      Mr. Beach, I have shown you what has been marked

15  as Defendant's Exhibit 9.

16          Have you seen that document before?

17  A      I don't recall seeing it before, no.

18          (Whereupon an email chain was marked

19          Defendant's Exhibit 9 for identification

20          as of this date.)

21  Q      Can you identify that document?

22  A      It appears to be a letter on Auchter Company

23  letterhead from Mr. Victor Ostrowski, project manager

24  directed to a number of people including Herman Kisler,

25  Robert McLeod, Mike Black and Ryan Hoover.

JOEL BEACH, ESQ.

1    Q       This letter states "The purpose of this meeting

2    is to address --" I am sorry.  I will start at the

3    beginning.

4            "This letter is to confirm my conversation and

5    e-mails to all parties involved regarding the RAP

6    on-site meeting on Tuesday, September 25, 2007 at

7    10:00.

8            "The purpose of this meeting is to address

9    building leaks that became obvious this past Monday,

10   September 19, 2007.  These building leaks caused

11   extensive damage to the building finish interior.

12           "You are required to have a representative of

13   your company at this meeting."

14           Did I read that correctly?

15   A       You did.

16   Q       One of the recipients of this letter is Robert

17   McLeod with TSG Industries, Inc., correct?

18   A       That's what it shows, that's correct.

19   Q       Does Arch have any evidence or information that

20   this letter was not sent to TSG -- or Mr. McLeod?

21                 MR. WARNING:  Object to form.

22   A       No.

23   Q       Was it common for Mr. Ostrowski to send

24   correspondence on Auchter Company letterhead?

25                 MR. EHRENREICH:  Object to form.

JOEL BEACH, ESQ.

Exh. 2 to FCCI MSJ
Case No: 8:18-cv-03042
Page 43 of 86          43

1          MR. WARNING:  I join.

2    A      I do not know.  Ostrowski was not employed by

3    Auchter.  So I don't know why he would put this on

4    Auchter letterhead.

5    Q      Does Arch have any information that this on-site

6    meeting of September 25, 2007 took place?

7    A      I don't know.

8    Q      Mr. Beach, I am showing you what has been marked

9    as Defendant's Exhibit 10.

10              (Whereupon an email chain was marked

11              Defendant's Exhibit 10 for identification

12              as of this date.)

13   A      Yes, sir.

14   Q      Have you seen that document before?

15   A      I don't recall seeing this before.

16   Q      Can you identify that document?

17   A      Yes, it appears to be a string of e-mails.  The

18   one at the -- the most recent one I would think at the

19   top of the page is from Ken Givens of Arch and was sent

20   to Mike Sugar of Forcon and the subject is RAP issues.

21   Q      This e-mail from Mr. Givens to Mr. Sugar states

22   "Based on the discussion I had with Carl yesterday, I

23   understand we've retained a consultant to look at the

24   building envelope.  Whom have we retained?  I think

25   Carl also indicated we had someone evaluate the

JOEL BEACH, ESQ.

```
 1   interior water damage."

 2           Did I read that correctly?

 3   A       You did.

 4   Q       Is it Arch's position at this time -- at the

 5   time this e-mail was sent that Arch had been having

 6   discussions with Forcon about retaining a consultant to

 7   look at the building envelope?

 8   A       That's correct.

 9   Q       That is in response to complaints, other issues

10   that have come up with leaks at the RAP building?

11   A       Yes.

12   Q       The Carl that's referenced in this e-mail, do

13   you believe that is Carl Schnabel?

14   A       That's correct.

15   Q       With Forcon?

16   A       Yes.

17   Q       Mr. Beach, I am showing you what I have marked

18   as Defendant's Exhibit 11.  Have you seen this document

19   before?

20   A       Not specifically, no.

21                   (Whereupon one-page letter dated 9/26/07

22                   was marked Defendant's Exhibit 11 for

23                   identification as of this date.)

24   Q       Can you identify the document for me?

25   A       Yes, it is a letter from Charles "Chuck" Diebel.
```

JOEL BEACH, ESQ.

1    He is the president of Auchter Company to Mr. Paul

2    Lunetta of Riverside Avenue Partners, dated

3    September 26, 2007.

4    Q       This letter states "As per your direction in

5    your e-mail of September 24, 2007 to Victor Ostrowski,

6    Auchter has retained Williamson & Associates, Inc. of

7    2603-A Maitland Center Parkway, Maitland, Florida 32751

8    as our building envelope/roofing specialist who will

9    evaluate and make recommendations and will perform any

10   specified tests.  We will also correct any damages to

11   finishes caused by the recent water intrusion."

12          Did I read that correctly?

13   A       You did, yes.

14   Q       This letter is copied to Ceree Harden, Ken

15   Givens, Mike Sugar, Mike Trocke and Carl Schnabel,

16   correct?

17   A       That's correct.

18   Q       Is it Arch's understanding that Auchter retained

19   Williamson & Associates on or around the date of this

20   letter as a building envelope/roofing specialist?

21   A       Yes, Williamson & Associates was retained by

22   Auchter for --

23                  MR. EHRENREICH:  He asked you

24          specifically about the date.  He wants to know

25          the date.

JOEL BEACH, ESQ.

1              THE WITNESS:  At least by this date.  I

2         don't know if it was earlier or not, but at

3         least by this date they were retained.

4    Q     Was Arch involved with the decision to retain

5    Williamson & Associates?

6    A     Yes.

7    Q     On the project?

8    A     Yes.

9    Q     I want to go now to some of the questions about

10   the defense of the RAP case, the underlying action.

11   A     Okay.

12   Q     Arch had its own counsel in that case, Shumaker

13   Lube & Kendrick; is that correct?

14   A     That's correct.

15   Q     Arch did not defend Auchter in that case, is

16   that correct?

17   A     Arch did not provide a legal defense to Auchter

18   in that case.  That's correct.

19   Q     Who did?

20   A     To the best of my knowledge, it was provided by

21   their insurer Amerisure.

22   Q     Did Auchter at any time request that Arch

23   provide a defense to Auchter in the RAP case?

24              MR. EHRENREICH:  In the litigation?

25              MR. BICKERTON:  Yes.

JOEL BEACH, ESQ.

Exh. 2 to FCCI MSJ
Case No: 8:18-cv-03042
Page 47 of 86                47

1    A       Not that I know of, no.

2    Q       Was Arch privy to Auchter's request for a

3    defense from Amerisure in the RAP case?

4              MR. EHRENREICH:   Can you define "privy"?

5    What do you mean privy?

6    Q       Was Arch copied on any communications between

7    Auchter and Amerisure related to a defense of Auchter

8    in the RAP case?

9    A       I don't have specific knowledge of that, but by

10   the time the litigation became in being, I guess that's

11   not the right word, Arch would have been quite active

12   in Auchter's affairs because of all of the claims that

13   were going on with the performance bonds and whatnot,

14   and the fact that Auchter as an entity was collapsing

15   or had collapsed.  So, our counsel would have been

16   involved with Auchter in seeking those, the defense of

17   Auchter in that litigation.

18   Q       Can you clarify or provide any more detail on

19   how Arch would have been involved?

20   A       I just don't have any specifics on that.  I

21   don't.

22   Q       Was Arch aware of any request by Auchter to FCCI

23   or National Trust to have FCCI or National Trust defend

24   Auchter in the RAP case?

25   A       It would not surprise me if requests were made

JOEL BEACH, ESQ.

1  by Auchter to any subcontractor whose issues were

2  raised in the RAP case to provide a defense.  However,

3  I have no specific knowledge of any such defense

4  requests.

5  Q      In preparing for today's deposition, did you

6  speak to anyone else at Arch to prepare for today's

7  deposition?

8  A      No.

9  Q      At any time, did Arch direct or request that

10  Auchter seek a defense in the RAP case from FCCI or

11  National Trust?

12  A      I don't know.

13  Q      At any time was Arch aware of communications by

14  Auchter that counsel could defend both Auchter and TSG

15  in the RAP case?

16  A      Can you repeat the question?

17              MR. BICKERTON:  Can you repeat it?

18                  (Whereupon the record was read back by

19        the reporter.)

20  A      No.

21  Q      Did Arch have any input or say in the counsel

22  that Amerisure retained to defend Auchter in the RAP

23  case?

24  A      Not to the best of my knowledge, no.

25  Q      In the RAP case, Auchter was directly suing TSG;

JOEL BEACH, ESQ.

Exh. 2 to FCCI MSJ
Case No: 8:18-cv-03042
Page 49 of 86      49

1    is that correct?

2    A      Yes.

3    Q      At any time, was Arch aware of a request by

4    anyone that Auchter or TSG could be defended by the

5    same counsel in the RAP case?

6    A      No.

7              MR. WARNING:  I object to the form of the

8         last question.

9    Q      In the first DJ between Arch and Amerisure, you

10   filled out an affidavit; is that correct?

11   A      Yes, sir.

12             MR. BICKERTON:  I am showing you what has

13        been marked as Defendant's Exhibit 12.

14             I am sorry, what I am giving you has just

15        the cover page on that.  Otherwise it is the

16        same document.

17             (Whereupon an Affidavit was marked

18             Defendant's Exhibit 12 for identification

19             as of this date)

20             MR. EHRENREICH:  I am familiar with it.

21   Q      Can you identify the document that's Defendant's

22   12?

23   A      It is an affidavit, my affidavit as a corporate

24   representative for Arch in the first DJ action dated

25   July 18, 2018.

JOEL BEACH, ESQ.

1   Q       Is it fair to say that this is an affidavit that

2   you provided after your second deposition in that case?

3   A       Yes.

4   Q       If you look at paragraph 3 in bold, it has  "Q:

5   Okay.  Mr. Beach, beyond the settlement agreement in

6   the -- beyond the settlement agreement in the -- beyond

7   the settlement agreement in the final judgment, is

8   there anything else in terms of Arch's position on

9   allocating between covered and uncovered claims?"

10          It contains an answer.  "In addition to the

11  Settlement Agreement and Final Judgment, Arch also

12  relies on the underlying record upon which Judge Jay

13  based the Final Judgment."

14          Did I read that correctly?

15  A       You did.

16  Q       Your answer in what I read in your affidavit, is

17  that still true?

18  A       Yes.

19  Q       Is that Arch's position as to whether the

20  Settlement Agreement in the RAP case allocated between

21  covered and uncovered damages?

22  A       Yes.

23  Q       That answer lists the Settlement Agreement, the

24  Final Judgment as well as the underlying record; is

25  that correct?

JOEL BEACH, ESQ.

1  A       Yes.

2  Q       Can you provide me with more specifics on things

3  in the underlying record upon which Judge Jay based the

4  Final Judgment?

5            MR. EHRENREICH:  Object to form.

6  A       As we sit here today, I cannot.

7  Q       We looked at the Final Judgment earlier,

8  correct?

9  A       Yes.

10 Q       If you look at page 85 and 86?

11           MR. EHRENREICH:  Of?

12           MR. BICKERTON:  Of Exhibit 3, Final

13     Judgment.

14 Q       Do you have that?

15 A       I do.

16 Q       The Final Judgment, Judge Jay ordered judgment

17 against the Auchter Company in the amount of

18 $11,267,515.75; is that correct?

19 A       That's correct.

20 Q       The Final Judgment also entered judgment in

21 favor of RAP against Arch in the amount of

22 8,791,460.72, is that correct?

23 A       That's correct.

24 Q       As part of the Final Judgment, Arch received a

25 set-off, is that fair statement?

JOEL BEACH, ESQ.

1    A      That's correct, yes.

2    Q      What was that set-off related to?

3    A      Monies earned under the Auchter contract, but

4    not paid by the obligee to Arch Auchter prior to the

5    judgment being awarded.

6    Q      Those monies that were due to be owed to Arch,

7    were they -- they were under the contracts between RAP

8    and Auchter that Arch had -- I am trying to think of

9    the right word -- Arch had substituted in for Auchter?

10              MR. EHRENREICH:  Object to form.

11   A      As a completing surety, Arch was entitled to

12   receive those monies and those monies were directed to

13   us under the contract.  So yes, that's why we received

14   the credit for that.

15   Q      The basis of those monies would be the -- first

16   of all, it would be the contract between Auchter and

17   RAP?

18   A      That's correct.

19   Q      Then that money would then go to Arch who took

20   over once Auchter defaulted or could no longer fulfill

21   their duties on the project?

22   A      In sum and substance, that's correct.

23              MR. BICKERTON:  Mr. Beach, I am showing

24         you what has been marked as Defendant's Exhibit

25         13.  I am sorry, I only have one copy.  I think

JOEL BEACH, ESQ.

1          we are familiar.

2                    MR. WARNING:  13?

3                    MR. BICKERTON:  Yes.

4                    MR. WARNING:  Thank you.

5                    (Whereupon a settlement agreement was

6                    marked Defendant's Exhibit 13 for

7                    identification as of this date.)

8     Q      Mr. Beach, have you seen that document before?

9     A      Yes, I have.

10    Q      Can you identify that document for me?

11    A      This is a Settlement Agreement Mutual Release

12    and Assignment Of Claims between Riverside Avenue

13    Partners and Arch in relation to the RAP case.

14    Q      Arch relies in part on the Settlement Agreement

15    to support its position that the Settlement Agreement

16    allocated damages between covered and uncovered claims

17    related to the RAP suit; is that correct?

18                    THE WITNESS:  Can you read the question

19          back to me?

20                    (Whereupon the record was read back by

21          the reporter.)

22    A      Yes.

23    Q      What language in the Settlement Agreement does

24    Arch rely on for that position?

25    A      The language referencing the Final Judgment

JOEL BEACH, ESQ.

1   entered on November 5th in the seventh whereas clause.

2   That's all I can see, as I sit here today.

3   Q      That language references the judgment in favor

4   of RAP against Auchter in the amount of $11,267,515.75,

5   correct?

6   A      Yes.

7   Q      It references the judgment in favor of RAP and

8   against Arch and the net judgment amount of

9   $8,791,460.72, correct?

10  A      Yes.

11  Q      It references the judgment in favor of Arch and

12  against TSG Industries Incorporated on the third-party

13  claim in the amount of $5,067,033.01, correct?

14  A      That's correct.

15  Q      It also references a judgment in favor of Arch

16  and against B & B of Duval; is that correct?

17  A      That's correct.

18  Q      Are there any other references in that

19  paragraph?

20  A      No.

21  Q      There is no reference in that paragraph to the

22  punch list items, correct?

23  A      No specific reference in that paragraph to punch

24  list items, you are correct.

25  Q      Is there a specific reference to the window

JOEL BEACH, ESQ.

1    systems damages?

2    A      Item 3 relates to Arch against TSG Industries'

3    claim in the amount of $5,067,033.01, but it doesn't

4    say the words for windows systems damages in that

5    sentence.

6    Q      The damages we talked about earlier which you

7    described as rip and tear damages, is there any

8    specific reference to that in this paragraph?

9    A      There is not.

10   Q      The Settlement Agreement was reached as a result

11   of communications between Arch and RAP after the Final

12   Judgment was issued, is that right?

13   A      That's correct.

14   Q      You were involved in those discussions, correct?

15   A      Yes.

16   Q      Mr. McNaughton was involved as well, correct?

17   A      Yes.

18   Q      Let me know if this is fair.  Mr. McNaughton is

19   your boss or is in a higher position at Arch than you,

20   correct?

21   A      Yes.

22   Q      You were both involved in those discussions?

23   A      Yes.

24   Q      At some point, there was an in-person meeting

25   between you, Mr. McNaughton and Ceree Harden with RAP,

JOEL BEACH, ESQ.

1   right?

2   A       That's correct.

3   Q       Were there any other in-person meetings that you

4   are aware of related to the negotiations for the

5   Settlement Agreement?

6   A       Not post judgment, prejudgment.  There were

7   mediations that Arch attended, but post judgment there

8   was just the one in-person meeting.

9   Q       Is it a fair characterization that Mr. Harden's

10  negotiating position was that Arch should pay

11  everything that was found against Arch in the Final

12  Judgment?

13                  MR. EHRENREICH:  Object to form.

14  A       Yes.

15  Q       At the time RAP had a judgment against Arch,

16  they had a verdict against Arch in the underlying

17  action, right?

18  A       Yes.

19  Q       In those in-person meetings, was there a

20  discussion about allocating any settlement between Arch

21  and RAP between damages that may be covered or

22  uncovered under a general liability policy?

23  A       No.

24  Q       Did the discussions largely revolve around how

25  much interest was owed to RAP as a result of the Final

JOEL BEACH, ESQ.

1   Judgment in the RAP case?

2   A      That's a correct characterization.

3   Q      The interest was something that Judge Jay in the

4   Final Judgment hadn't really decided at that point,

5   correct?

6   A      That's correct.

7   Q      In addition to you and Mr. McNaughton's

8   communications with RAP, Arch and RAP's attorneys also

9   discussed settlement; is that correct?

10  A      Yes.

11  Q      Were you involved with those discussions or were

12  they largely held between the attorneys?

13  A      I would not be involved in those discussions

14  between Shumaker Lube and Jeff Regan's office.  There

15  was just those between the attorneys, but our attorney

16  would let us know.

17  Q      In Exhibit 2, the very first page, it is a

18  document with Arch Bates stamped 235492.  It has a

19  heading "For settlement discussions only, not

20  admissible."

21  A      Yes.

22  Q      You have seen that document before, correct?

23  A      Yes, I have.

24  Q      Can you identify what that document is?

25  A      It is an analysis that sets out three different

JOEL BEACH, ESQ.

1   ranges for settlement of the interest portion of the

2   litigation based upon a couple of different factors.

3   Q      Do you know who created this document?

4   A      I didn't create it.  I believe it was created by

5   Tammy Giroux, but I don't know for sure.

6   Q      Miss Giroux was an attorney for Arch in the RAP

7   case, correct?

8   A      That's correct, G-I-R-O-U-X, Tammy T-A-M-M-Y.

9   Q      As we sit here today, you are not positive that

10  Miss Giroux created it?

11  A      That's right.

12  Q      I'm showing you, Mr. Beach, a document that's

13  been marked Defendant's 14.  It is Bates range Arch

14  235490 to Arch 2355045.  That was for the record.  Can

15  you look through the first couple of pages of that

16  document?

17  A      Okay.

18              (Whereupon a document containing email

19               dated 6/1/15 was marked Defendant's

20               Exhibit 14 for identification as of this

21               date.)

22  Q      On the second page with Bates number Arch

23  235491, does it appear that there is an e-mail from

24  Tammy Giroux and AHeydemann@wwhgd.com to Jeffrey Regan?

25  A      Yes.

JOEL BEACH, ESQ.

1    Q       Dated June 1st, 2015?

2    A       Yes.

3    Q       Does this refresh your recollection at all if

4    Miss Giroux created the document for Exhibit 2?

5    A       As I said, I believe it was created by Tammy or

6    someone in her office, if it wasn't Tammy.

7    Q       Let's go back to the first page of Exhibit 2.  I

8    am not sure where that went.

9    A       Here, this one. (Handing.)

10   Q       Yes.  I know it is hard, let's try to keep all

11   of it together since it is one exhibit.

12   A       Sure.

13   Q       There are three columns on this first page?

14   A       Yes.

15   Q       Just so the record is clear, the page is Bates

16   numbers ARCH 235492.  There is a line item "Net damages

17   before prejudgment interest" three rows down, correct?

18   A       Yes.

19   Q       The corresponding number to that is

20   $8,739,029.49; is that correct?

21   A       Yes.

22   Q       What is Arch's understanding of that line item

23   or what is being discussed?

24              MR. EHRENREICH:  Which one, the net

25         damages?

JOEL BEACH, ESQ.

1      MR. BICKERTON:  The net damages before

2      prejudgment interest.

3      MR. EHRENREICH:  Are you asking how they

4      arrived at that or what the number reflects?  I

5      am not sure what you are asking.

6  Q      Well, first, what does that number reflect?

7  A      It reflects the award in the Final Judgment from

8  Judge Harvey Jay against Arch.

9  Q      It reflects, just so I am clear, the net

10  judgment awarded against Arch in favor of RAP in the

11  RAP case?

12  A      Yes.

13  Q      Is there a reason the number in this document is

14  different than the $8,791,460.72 awarded against Arch

15  in favor of RAP in the Final Judgment in the RAP case?

16  A      Can you help me?

17  Q      Sure.

18  A      I am trying to find the damages awarded to Arch

19  in the judgment.

20  Q      It would be page 85 of Exhibit 3.  Sorry, I

21  wasn't trying to make you --

22  A      The damages awarded to Arch not against Arch.

23  The set-off figure, the 2 million-dollar figure.

24  Q      I will help you look for that.

25  A      Okay.

JOEL BEACH, ESQ.

1    Q       I am not entirely sure.  I believe on page 62,

2    it discusses Arch's claim for the contract balance

3    including the Auchter fee and the PCO allocation which

4    totals $2,476,055.03?

5    A       Yes, I see it.  I can only say that there must

6    have been a math error in the Final Judgment just

7    relating to the award against Arch and that we used

8    that figure for the damages awarded as opposed to the

9    net figure used by Harvey Jay.

10   Q       Are you aware of any other basis or reason that

11   that number is different than the damages awarded

12   against Arch in the final judgment in the RAP case?

13   A       No, not as I sit here today.  I am just not -- I

14   don't know.

15   Q       You are not sure?

16   A       Yeah, I don't know.

17   Q       That's fine.

18           It would be a cruel world where attorneys made

19   people do math for them.

20           In the RAP case, are you familiar or is Arch

21   familiar with Landmark and Amerisure's attempt to

22   intervene in the RAP case?

23   A       I am aware of it, yes.

24   Q       Is your understanding that Landmark and

25   Amerisure attempted to intervene in the RAP case to

JOEL BEACH, ESQ.

1    submit special interrogatories to the court --

2                    MR. WARNING:  Object to the form.

3    Q        -- related to insurance coverage issues?

4    A        I don't have any specific recollection of that.

5    I remember there was a general issue with that, but I

6    don't recall the specifics.

7    Q        Do you recall if Arch objected to Amerisure and

8    Landmark's attempts to intervene in the RAP case?

9    A        I don't recall.

10   Q        Up to today, has Arch received payment for any

11   part of the claim related to the RAP building, other

12   than payments related to attorneys fees and litigation

13   costs?

14   A        After the award of the judgment, is that what

15   you are talking about?

16   Q        Yes.

17   A        No.

18                    MR. EHRENREICH:  No, Arch has not

19           received any?  Clarify, answer his question.

20   A        I don't know if there was a settlement prior to

21   or any kind of money received.  I can't recall if there

22   was, so no.

23   Q        Just to be clear, Amerisure has not paid Arch

24   anything related to the RAP case or the first DJ, other

25   than attorneys fees or litigation costs?

JOEL BEACH, ESQ.

1   A       That's correct.

2   Q       Landmark has not paid Arch anything related to

3   the RAP case or the Auchter DJ, other than attorneys

4   fees or litigation costs; is that correct?

5   A       That's correct.

6                MR. BICKERTON:  I believe that's all the

7           questions I have.  Do you mind if we take a

8           short break so I can make sure?

9                MR. EHRENREICH:  Take whatever time you

10          need.

11               (Recess taken from 12:32 to 12:52.)

12   EXAMINATION BY

13   MR. EHRENREICH:

14   Q       Mr. Beach, you were presented with Defendant's 2

15   the first page For Settlement Discussions Only Not

16   Admissible.  I also saw that same exhibit attached to

17   Defendant's 14.  We will refer to either one, but it

18   states For Settlement Discussions Only Not Admissible.

19           Can you tell us what that document is, just

20   generally what it is?

21   A       It is a breakdown of the ranges of potential

22   interests that might be awarded in the underlying RAP

23   case involving Arch and RAP.

24   Q       There are two different possibilities based on

25   this of what the interest would be, meaning the

JOEL BEACH, ESQ.

```
 1    interest number, whether it is 5 percent, 10 percent,

 2    15 percent, but that percentage number, so there is a

 3    number that's affixed to the -- I will start over.

 4          Damages awarded, it is one number for all three

 5    columns?

 6    A     That's right.

 7    Q     Is it your understanding that's what was awarded

 8    by the court?

 9    A     That's right.

10    Q     Then parenthetically, you have numbers

11    underneath that, $11,215,084.52, underneath that

12    parenthetically and usually in the accounting world,

13    that means subtraction?

14    A     That's correct.

15    Q     Is that your understanding here?

16    A     Yes.

17    Q     Almost 2 and a half million dollars?

18    A     That's right.

19    Q     Tell us what that money represents.

20    A     That's the money remaining in the Auchter

21    subcontract with RAP that was earned at the completion

22    of the project.

23    Q     Was that money paid out by Arch?

24    A     Those --

25    Q     Let me ask you a different question.  The
```

1   $11 million plus in that first line, was that money

2   paid by Arch?

3   A       That was the award against Arch.

4   Q       Okay, was it eventually paid?

5   A       Yes.

6   Q       The money that was awarded by the court, was

7   $11 million eventually paid by Arch to Auchter?

8   A       Yes.

9   Q       Then there was a 2 million-dollar, almost 2 and

10  a half million dollar credit that was reduced from what

11  was to be paid to Auchter?

12  A       That's right.

13  Q       Those are those first two lines?

14  A       That's right.

15  Q       You have a gross amount that was to be paid to

16  Auchter and then you have -- you subtract for a credit

17  that was given to give us the net on the third line?

18  A       That's correct.

19  Q       Is it your understanding that that third line

20  was, according to the court, was what was to be paid to

21  Auchter by Arch?

22  A       That's right.

23  Q       The total amount on the project had been paid,

24  this $11 million plus by Arch?

25  A       That's right.

JOEL BEACH, ESQ.

```
 1              MR. BICKERTON:  Can I clarify something?
 2              MR. EHRENREICH:  Yes.
 3              MR. BICKERTON:  You mentioned in your
 4         last question a payment from Arch to Auchter,
 5         did you mean RAP?
 6              MR. EHRENREICH:  I meant RAP, sorry.
 7         Thank you.  RAP.
 8    Q    The same question but to RAP, the money was
 9    paid?
10    A    Yes.
11    Q    I am asking these questions because there
12    were -- it came in issue before that this money hadn't
13    been paid by Arch and I just needed to establish for
14    the first time.
15         Let me ask you the question differently.  The
16    $11,215,084.52 had been paid on the RAP project; is
17    that right?
18    A    Yes.
19    Q    The prejudgment interest, this line here where
20    it says "Prejudgment interest," are these the three
21    different scenarios that Arch, through its attorneys,
22    had come up with which would be the probable total
23    judgment outcome depending on what the court applied?
24    A    Yes.
25    Q    Was post judgment interest paid by Arch in this
```

JOEL BEACH, ESQ.

1   case?

2   A      Yes.

3   Q      As well as attorneys' fees and costs?

4   A      Yes.

5              MR. BICKERTON:  When you say "this case,"

6          you mean the RAP case?

7              MR. EHRENREICH:  I do, the RAP case.

8          Sorry.  When I say the RAP case, I am talking

9          about the document to which this refers.

10  Q      Anything else I didn't ask you, Mr. Beach, about

11  this document that you felt needed explaining?

12  A      No.

13  Q      It is self-explanatory?

14  A      Yeah.

15  Q      Just a clarification.  The parenthetical

16  subtraction in the net amount, so the interest went on

17  the net amount, not on the total amount that had been

18  paid out by Arch?

19  A      That's correct.

20             MR. EHRENREICH:  That's all.  Thanks.  I

21         don't have any other questions.

22  EXAMINATION BY

23  MR. WARNING:

24  Q      Hello, Mr. Beach.  I represent Amerisure

25  Insurance Company and Amerisure Mutual Insurance

JOEL BEACH, ESQ.

1  Company in the matter we are here for today.  I just

2  literally have a couple of questions for you.

3       Do you recall earlier, you were asked some

4  questions about Exhibit 4.  Could you pull that exhibit

5  out, please?

6  A    Yes, sir.

7  Q    This Exhibit has a date of I believe August 17,

8  2007, is that correct?

9  A    I see a couple of different dates on it, but

10  yeah, it was signed on August 17, 2007.

11  Q    Thank you.

12       Everything that is represented in this exhibit

13  was from a time period prior to your involvement at the

14  project, correct?

15  A    Yes.

16  Q    That is true for every exhibit today that

17  predates October of 2012, correct?

18  A    That's correct.

19  Q    You were present at a portion of the trial of

20  the RAP case, correct?

21  A    Yes.

22  Q    Were you present for the testimony of Jim

23  Nichols?  Let me back up.

24       Do you know who Jim Nichols is?

25  A    I don't recall.

JOEL BEACH, ESQ.

1  Q      As you sit here today, you would not be familiar

2  with his testimony, is that correct?

3  A      That's correct.

4              MR. WARNING:  Off the record.

5              (Whereupon a discussion was held off the

6         record.)

7              MR. WARNING:  We can go back on the

8         record.

9  Q      Mr. Beach, as the Arch corporate representative

10 here today, is it the understanding of Arch that there

11 were leaks at the project, the RAP project that

12 postdated November 1st, 2007?

13 A      Yes.

14             MR. WARNING:  Thank you, that's all I

15        have for now.

16             MR. EHRENREICH:  Jeremy, do you have any

17        questions?

18             MR. HARRIS:  No.

19             MR. EHRENREICH:  Chad, do you have

20        follow-up?

21             MR. BICKERTON:  I have very brief

22        follow-up.

23 CONTINUED EXAMINATION

24 BY MR. BICKERTON:

25 Q      Mr. Beach, just to clarify something for my

JOEL BEACH, ESQ.

1   sake.  When looking at Defendant's 2 with your counsel,

2   Arch 235492, you referenced an 11 million-dollar

3   payment that Arch made to RAP; is that correct?

4   A      That's correct.

5   Q      Is that in addition to the $16.8 million in the

6   Settlement Agreement or is that part of the

7   $16.8 million payment referenced in the Settlement

8   Agreement?

9   A      It is subsumed in the settlement payment made by

10  Arch to RAP.

11  Q      When you use the word "subsumed," can you

12  provide more clarity?

13  A      I am sorry.  I should have just said yes to the

14  second part of what you said.

15  Q      As part of the $16.8 million dollar payment in

16  the Settlement Agreement, that also included interest

17  that would be paid by Arch to RAP, correct?

18  A      Yeah, the remaining amount was a compromise

19  figure for interest.

20  Q      Do you remember what the compromise figure was?

21  A      It would be the difference between the

22  8,739,029.49 and the amount that we paid.

23  Q      That would be around $8 million; is that fair?

24  A      Yes.

25  Q      Explain to me how the $11 million in the

JOEL BEACH, ESQ.

1    judgment as well as $8 million in interest totaled the

2    $16.8 million payment in the Settlement Agreement?

3    A      We have the 2 million-dollar -- $2.46 million

4    set-off with the amount that was paid by Arch.

5    Q      Okay.  I just wanted to make that clear.

6    A      Yes.

7                 MR. BICKERTON:  I don't have anything

8          else.

9                 MR. EHRENREICH:  Jeremy, are you good?

10                MR. HARRIS:  Okay.

11                MR. EHRENREICH:  Brett?

12                MR. WARNING:  One follow-up.

13                MR. EHRENREICH:  Sure.

14   CONTINUED EXAMINATION

15   BY MR. WARNING:

16   Q      Mr. Beach, when I just asked you about Arch's

17   awareness of water intrusion into the RAP project post

18   November 1, 2007 --

19   A      Right.

20   Q      -- was it Arch's understanding that there was

21   water intruding into the RAP project through the water

22   envelope -- excuse me -- the building envelope of the

23   project, postdating November 1, 2007?

24                MR. BICKERTON:  Form.

25   A      Yes.

JOEL BEACH, ESQ.

 1              MR. WARNING:  Thank you.  That's all I

 2        have.

 3              MR. EHRENREICH:  Are you good?

 4              MR. BICKERTON:  Yes.

 5              MR. EHRENREICH:  Mr. Beach will read and

 6        we will get a copy of it, if it is ordered.

 7              MR. HARRIS:  Safe travels.

 8              (Time noted:  1:06 p.m.)

 9

10              _____

                        JOEL BEACH

11

12        Subscribed and sworn to before me

13        this    day of            , 2020.

14        _____

15              Notary Public

16

17

18

19

20

21

22

23

24

25

```
 1                    I N D E X
 2     WITNESS              EXAMINATION BY           PAGE
 3     Joel Beach         MR. BICKERTON            3, 69
 4                        MR. EHRENREICH              63
 5                        MR. WARNING             67, 71
 6
 7                        EXHIBITS
 8     Defendant's     Description                  Page
 9     1               Notice of Deposition            7
10     2               Document presented by witness   9
11     3               Final judgment in RAP case     13
12     4               Application and Certificate for 24
                       payment
13
       5               Email                          29
14
       6               Arch Insurance Company's initial 32
15                     26(a)(1) disclosures in first DJ
                       action
16
       7               Email chain                    34
17
       8               Email chain                    37
18
       9               Email chain                    41
19
       10              Email chain                    43
20
       11              One-page letter dated 9/26/07  44
21
       12              Affidavit                      49
22
       13              Settlement agreement           53
23
       14              Document containing email dated 58
24                     6/1/15
25
```

```
1              C E R T I F I C A T E

2         I, LORI CARR, hereby certify that the

3    Examination of said witness named in the foregoing

4    transcript was held before me at the time and place

5    herein named; that said witness was duly sworn before

6    the commencement of the testimony; that the testimony

7    was taken stenographically by myself and then

8    transcribed under my direction; that the party was

9    represented by counsel as appears herein;

10        That the within transcript is a true record of

11   the Examination of said witness;

12        That I am not connected by blood or marriage

13   with any of the parties; that I am not interested

14   directly or indirectly in the outcome of this matter;

15   that I am not in the employ of any of the counsel.

16        IN WITNESS WHEREOF, I have hereunto set my hand

17   this 30th day of January, 2020.

18

19

20   _____

                    LORI CARR

21

22

23

24

25
```

**JOEL BEACH, ESQ.**

## A

**a.m** 1:17
**able** 20:6
**account** 22:23,24
  23:1,1
**accounting** 64:12
**action** 3:20 4:12 5:1
  10:25 11:6,13 14:11
  32:17,21,22 46:10
  49:24 56:17 73:15
**active** 6:8 20:11
  47:11
**actual** 24:2
**addition** 9:23 12:24
  50:10 57:7 70:5
**Additionally** 17:9
  36:3
**address** 3:12 30:7
  35:2 38:18,21 42:2
  42:8
**adjuster** 6:10 7:15
**Administration** 7:14
**admissible** 57:20
  63:16,18
**advanced** 26:1
**advised** 35:16 40:16
**affairs** 47:12
**affect** 6:17
**affidavit** 49:10,17,23
  49:23 50:1,16 73:21
**affirmative** 4:7
**affirmed** 3:2
**affixed** 64:3
**against-** 1:7
**agreement** 11:10
  12:10 50:5,6,7,11
  50:20,23 53:5,11,14
  53:15,23 55:10 56:5
  70:6,8,16 71:2
  73:22
**AHeydemann@w...**
  58:24
**Alhambra** 2:8
**allocated** 50:20 53:16
**allocating** 50:9 56:20
**allocation** 61:3
**AMERICAN** 2:17
**Amerisure** 1:4,5 4:11

4:21 5:5 10:7,16
  11:4 46:21 47:3,7
  48:22 49:9 61:25
  62:7,23 67:24,25
**Amerisure's** 61:21
**amount** 16:24 18:10
  18:14,19,23,24 19:3
  51:17,21 54:4,8,13
  55:3 65:15,23 67:16
  67:17,17 70:18,22
  71:4
**analysis** 57:25
**answer** 50:10,16,23
  62:19
**answers** 4:7,8
**anybody** 30:18
**anymore** 38:9
**apologies** 18:7 36:2
**apologize** 13:6
**app** 24:25 25:3 27:21
**appeal** 18:2,4
**appear** 31:25 34:21
  39:23 58:23
**appears** 25:8 29:19
  38:20 41:22 43:17
  74:9
**application** 24:19,23
  24:24 26:23 27:2
  28:9 73:12
**applied** 66:23
**appreciate** 4:7
**apps** 23:25 24:8
**April** 19:19 20:18
**Arch** 1:9,12 2:7 4:11
  5:19,22 6:21,25 8:1
  8:3,24 9:9,12,16
  10:5,7 11:9 14:1,4
  14:11,14 15:9,12
  18:3,4,9,13,14,18
  18:19,24 19:10,17
  19:19 20:1,4,7,10
  20:17,21,25 21:4,7
  21:10,13,17,23
  22:14,15,18,21 23:3
  23:11,16 25:10,13
  25:18,19 26:10
  28:11 31:4 32:8,15
  32:20 36:20 37:23

38:2,11 40:4,10,17
  41:2,3,4 42:19 43:5
  43:19 44:5 46:4,12
  46:15,17,22 47:2,6
  47:11,19,22 48:6,9
  48:13,21 49:3,9,24
  50:11 51:21,24 52:4
  52:6,8,9,11,19
  53:13,14,24 54:8,11
  54:15 55:2,11,19
  56:7,10,11,15,16,20
  57:8,18 58:6,13,14
  58:22 59:16 60:8,10
  60:14,18,22,22 61:7
  61:12,20 62:7,10,18
  62:23 63:2,23 64:23
  65:2,3,7,21,24 66:4
  66:13,21,25 67:18
  69:9,10 70:2,3,10
  70:17 71:4 73:14
**Arch's** 11:2,3 17:17
  17:21 25:21 27:17
  28:23 31:18 33:16
  37:13 44:4 45:18
  50:8,19 59:22 61:2
  71:16,20
**Arch/Amerisure**
  10:9
**architect** 36:14,15
**areas** 30:25 34:2 36:9
**argument's** 10:19
**arrived** 60:4
**asked** 19:7 45:23
  68:3 71:16
**asking** 28:19 60:3,5
  66:11
**Assignment** 53:12
**assist** 20:13,22
**assistant** 5:19
**assisting** 20:25
**Associates** 39:6 45:6
  45:19,21 46:5
**assume** 3:22 5:16
  21:17
**attached** 63:16
**attaches** 36:21 37:16
**attempt** 61:21
**attempted** 61:25

**attempts** 62:8
**attended** 56:7
**attorney** 37:13 57:15
  58:6
**attorneys** 2:2,7,11,16
  57:8,12,15 61:18
  62:12,25 63:3 66:21
**attorneys'** 67:3
**Auchter** 1:8 5:2 9:12
  9:16 11:2,9 13:25
  14:4,14,16 15:13
  19:16 20:5,8,10,14
  20:22 21:4,18 22:14
  23:7,21,24 24:4
  25:4,24 26:2 27:25
  28:7 29:22 40:20,22
  40:22 41:4,22 42:24
  43:3,4 45:1,6,18,22
  46:15,17,22,23 47:7
  47:7,14,16,17,22,24
  48:1,10,14,14,22,25
  49:4 51:17 52:3,4,8
  52:9,16,20 54:4
  61:3 63:3 64:20
  65:7,11,16,21 66:4
**Auchter's** 21:7 47:2
  47:12
**August** 25:8 29:21
  30:20 31:9 68:7,10
**Avenue** 26:3 28:2
  45:2 53:12
**AVP** 38:2
**award** 60:7 61:7
  62:14 65:3
**awarded** 18:13,18
  19:9 52:5 60:10,14
  60:18,22 61:8,11
  63:22 64:4,7 65:6
**awards** 18:9,23
**aware** 15:11 39:14
  40:10 41:3 47:22
  48:13 49:3 56:4
  61:10,23
**awareness** 71:17

## B

**B** 3:1 54:16,16
**back** 9:7 13:19 24:12
  29:7 33:1 36:4

48:18 53:19,20 59:7
68:23 69:7
**background** 5:18
**balance** 61:2
**bar** 6:4
**barred** 6:6
**based** 43:22 50:13
51:3 58:2 63:24
**basis** 52:15 61:10
**Bates** 9:1,8,11,11,12
9:17 57:18 58:13,22
59:15
**Beach** 1:13 3:7,11,12
3:15 7:17 9:19 13:5
13:20 24:15 29:11
34:12 37:2 41:14
43:8 44:17 50:5
52:23 53:8 58:12
63:14 67:10,24 69:9
69:25 71:16 72:5,10
73:3
**bears** 9:16
**began** 20:7
**beginning** 11:17 42:3
**behalf** 6:20 25:17
**believe** 3:18 9:1 10:6
18:4 23:18 28:16
30:12 32:24 34:16
36:7 44:13 58:4
59:5 61:1 63:6 68:7
**best** 25:24 36:5,14
46:20 48:24
**better** 12:21
**beyond** 50:5,6,6
**Bickerton** 2:14 3:6,8
4:18,23 8:21 9:5,7
12:11 13:14,19
28:18 29:4,7 32:23
33:16,20 46:25
48:17 49:12 51:12
52:23 53:3 60:1
63:6 66:1,3 67:5
69:21,24 71:7,24
72:4 73:3
**Bisgaard** 1:15 2:6
**Black** 41:25
**blood** 74:12
**Bob** 31:14

**Boca** 2:18
**bold** 50:4
**bond** 14:2 21:1,11,12
21:13 38:4 41:1
**bonded** 20:7,9
**bonds** 47:13
**boss** 55:19
**bottom** 15:24 17:8
**Boulevard** 2:3
**bound** 9:15,17
**Bradley** 36:19
**breach** 14:1,2,5,15
**breached** 17:10,18
17:22
**break** 4:3,5 29:3,8
41:10 63:8
**breakdown** 63:21
**Brett** 2:5 71:11
**Brian** 30:2,5 31:11
**brief** 69:21
**briefly** 7:5
**bring** 15:9
**Brisbois** 1:15 2:6
**brought** 8:15 20:21
32:24 34:8,17 37:10
**building** 16:9 20:3
23:22 28:3 31:15
34:8 36:6,15,16
38:4 39:4,8 42:9,10
42:11 43:24 44:7,10
45:8,20 62:11 71:22
**building's** 34:8,9
39:24 40:6
**buildings'** 39:20
**business** 3:12 7:14
38:12

---

**C**

**C** 2:1 3:1 17:8 26:18
74:1,1
**call** 11:13 15:18
19:15
**called** 7:15 23:1
**Carl** 19:20 30:15
39:1 43:22,25 44:12
44:13 45:15
**Carlos** 35:1 36:13
**CARR** 74:2,20

**carry** 13:14
**case** 1:6 3:9 4:11,14
4:22 5:5 6:24 9:25
10:7,9,12,23,24
11:1,2,3,4,22 12:13
13:10,23,25 14:9,18
14:21 18:3,5,25
33:12,18 40:21
46:10,12,15,18,23
47:3,8,24 48:2,10
48:15,23,25 49:5
50:2,20 53:13 57:1
58:7 60:11,15 61:12
61:20,22,25 62:8,24
63:3,23 67:1,5,6,7,8
68:20 73:11
**cases** 4:9 11:16 40:22
**caused** 42:10 45:11
**cc's** 30:4
**Center** 45:7
**Ceree** 39:6 45:14
55:25
**certain** 8:3
**certificate** 7:16 24:19
24:23 73:12
**certify** 74:2
**Chad** 2:14 3:7 8:18
69:19
**chain** 31:19,19 34:18
34:21 37:6 41:18
43:10 73:16,17,18
73:19
**challenge** 23:20
**challenging** 28:20
**chance** 35:11
**change** 24:12
**characterization**
17:4 40:3 56:9 57:2
**charge** 34:7
**Charles** 29:20 30:22
31:5,10 32:1,4 33:7
33:23 34:23 36:23
44:25
**Chicago** 2:4
**Chuck** 44:25
**claim** 38:4 54:13 55:3
61:2 62:11
**claims** 6:24 7:15,16

10:19 14:8,12,14
15:9,12 47:12 50:9
53:12,16
**clarification** 67:15
**clarify** 3:25 10:11
15:3 47:18 62:19
66:1 69:25
**clarity** 70:12
**clause** 54:1
**clear** 12:23 59:15
60:9 62:23 71:5
**collapsed** 47:15
**collapsing** 47:14
**collections** 9:18
**college** 7:6,9,11
**columns** 59:13 64:5
**combined** 21:12
**come** 39:10 44:10
66:22
**coming** 30:24 34:2
**commencement** 74:6
**comment** 23:20
**common** 42:23
**communication**
29:19
**communications**
47:6 48:13 55:11
57:8
**company** 1:4,5,8,8,9
1:9,13 2:7,12 5:5
23:19 25:4 27:25
28:7 29:25 39:14
41:22 42:13,24 45:1
51:17 67:25 68:1
**company's** 8:1 32:8
32:15,20 73:14
**complaints** 34:7 44:9
**complete** 20:6,18
27:22,24 28:1,6,13
**completed** 21:2 26:22
27:8,19
**completing** 20:22,25
52:11
**completion** 21:15
25:22 26:11 64:21
**compromise** 70:18
70:20
**concerned** 20:16

25:17 28:15
**conditions** 26:2
**confirm** 42:4
**confusing** 19:8
**conjecture** 24:13
**connected** 74:12
**connection** 16:9,25
**construction** 4:11
  20:2,7,13 23:8,22
  24:2 25:25
**consultant** 20:13
  43:23 44:6
**contact** 39:18,25 40:5
**containing** 58:18
  73:23
**contains** 50:10
**contest** 17:25 18:13
  18:18,21 33:9,22
  37:1
**continual** 7:2
**continue** 36:8
**continued** 23:24
  69:23 71:14
**contract** 14:1,5 21:13
  22:24,25 26:2 52:3
  52:13,16 61:2
**contracted** 39:9
**contractor** 20:14
  21:5 25:4 28:1
**contracts** 52:7
**contractual** 14:5
**conversation** 42:4
**cool** 11:14
**coordinate** 21:20,21
**coordinated** 21:17
**coordinating** 22:14
**coordination** 25:23
**copied** 45:14 47:6
**copies** 30:2 39:1
**copy** 32:24 52:25
  72:6
**Coral** 2:8
**corporate** 8:1 10:4
  49:23 69:9
**correct** 3:16,18,20,21
  4:1,2 5:6,7,16,17
  6:5,12,13,21,22 7:3
  7:4 11:5,8,11 12:11

14:2,3,6,9,10,12,16
  15:3 17:3,4 18:25
  19:2,11,12 21:5,6
  21:19 23:16 24:7
  25:11 26:4,5,12,13
  27:6,9,10,11,12,15
  28:3,4,25 29:1,23
  30:3,20,21 32:3
  34:4,5,25 35:5,14
  35:18 37:16,22,23
  38:6,7,18,21,22
  39:2,5,21 42:17,18
  44:8,14 45:10,16,17
  46:13,14,16,18 49:1
  49:10 50:25 51:8,18
  51:19,22,23 52:1,18
  52:22 53:17 54:5,9
  54:13,14,16,17,22
  54:24 55:13,14,16
  55:20 56:2 57:2,5,6
  57:9,22 58:7,8
  59:17,20 63:1,4,5
  64:14 65:18 67:19
  68:8,14,17,18,20
  69:2,3 70:3,4,17
**corrected** 36:6,10
**correctly** 16:11 17:13
  17:21 18:11 19:24
  23:9 31:2,16 35:24
  36:11 39:12,22
  42:14 44:2 45:12
  50:14
**correspondence**
  42:24
**corresponding** 59:19
**costs** 62:13,25 63:4
  67:3
**counsel** 12:18 40:16
  40:18 46:12 47:15
  48:14,21 49:5 70:1
  74:9,15
**couple** 58:2,15 68:2,9
**course** 22:11,12
**court** 1:1 17:9,21
  18:9,13,18 62:1
  64:8 65:6,20 66:23
**cover** 49:15
**coverage** 62:3

**covered** 50:9,21
  53:16 56:21
**create** 58:4
**created** 58:3,4,10
  59:4,5
**credit** 52:14 65:10,16
**cruel** 61:18
**curtain** 35:22 39:20
  39:24 40:6
**cut** 10:3 22:7

─────────

      **D**
**D** 26:22 73:1
**D-A-R-R-Y-L** 3:11
**D-E-L-V-A-L-L-E**
  36:18
**daily** 26:6,7
**damage** 42:11 44:1
**damages** 14:19,19,20
  14:20,21 15:2,13,17
  16:8,13,13,18,22,23
  18:9,18,25 19:3,9
  45:10 50:21 53:16
  55:1,4,6,7 56:21
  59:16,25 60:1,18,22
  61:8,11 64:4
**date** 7:22 9:4 11:19
  12:5 13:11 23:23
  24:22 27:9,20 28:13
  29:17 32:18 34:20
  37:8 40:2 41:20
  43:12 44:23 45:19
  45:24,25 46:1,3
  49:19 53:7 58:21
  68:7
**dated** 25:8 29:20
  30:20 38:23 44:21
  45:2 49:24 58:19
  59:1 73:20,23
**dates** 68:9
**day** 12:21 72:13
  74:17
**dealt** 11:10
**decided** 57:4
**decision** 20:11 46:4
**declaratory** 3:19
  4:25 12:10 14:1
**defaulted** 41:4 52:20

**defect** 4:11
**defective** 16:9 17:11
  17:11
**defend** 46:15 47:23
  48:14,22
**Defendant** 1:12 2:7
  2:11,16
**defendant's** 7:18,21
  7:25 8:23 9:3,8 13:6
  13:10 14:20 29:12
  29:16 32:12,17
  34:13,19 37:3,7,10
  41:15,19 43:9,11
  44:18,22 49:13,18
  49:21 52:24 53:6
  58:13,19 63:14,17
  70:1 73:8
**Defendants** 1:10
**defended** 49:4
**defense** 46:10,17,23
  47:3,7,16 48:2,3,10
**define** 47:4
**degree** 7:7,8,12
**delay** 14:20
**DelValle** 35:2 36:13
**depending** 66:23
**deposed** 3:15,19 5:13
  10:4
**deposition** 1:12 3:23
  7:20,25 8:16 9:20
  10:1,2,8 12:6,16
  32:7 48:5,7 50:2
  73:9
**depositions** 5:12
**describe** 20:1 22:13
**described** 15:1 26:10
  55:7
**Description** 73:8
**designated** 8:2,7
**detail** 47:18
**developments** 40:16
**DIAZ** 2:16
**Diebel** 44:25
**difference** 70:21
**different** 8:7 57:25
  58:2 60:14 61:11
  63:24 64:25 66:21
  68:9

differently 66:15
differing 9:16
difficulty 20:6
direct 48:9
directed 41:24 52:12
direction 45:4 74:8
directly 14:8 48:25
   74:14
disclosures 32:9,16
   32:21 33:17 73:15
discussed 19:4 57:9
   59:23
discusses 61:2
discussion 13:17
   43:22 56:20 69:5
discussions 44:6
   55:14,22 56:24
   57:11,13,19 63:15
   63:18
dispute 28:11
DISTRICT 1:1,2
DIVISION 1:3
DJ 5:2,2,9,13 6:24
   10:23,25,25 11:6,18
   12:7,9 32:16,21,22
   33:20 49:9,24 62:24
   63:3 73:15
Doctor 7:12
document 7:17,19,24
   13:20,22 15:24
   24:16,23 25:13
   26:14 29:12,18
   32:12,19 34:15,21
   37:3,12 41:16,21
   43:14,16 44:18,24
   49:16,21 53:8,10
   57:18,22,24 58:3,12
   58:16,18 59:4 60:13
   63:19 67:9,11 73:10
   73:23
documented 36:6
documents 8:15,17
   8:22 9:2,11,18,19
   12:16 13:15 22:4,9
   25:1 34:16 37:9
doing 29:2
dollar 65:10 70:15
dollars 64:17

double 21:19
Duces 8:12
due 16:8 52:6
duly 3:2 74:5
duties 26:10 34:6
   52:21
Duval 54:16

E

E 2:1,1 3:1,1 73:1
   74:1,1
e-mail 29:19 30:2,7
   30:20,22 31:5,9,10
   31:18,19 33:23 34:1
   34:21 35:1,2,13
   36:17,21,22 37:13
   37:17 38:17,18,20
   38:21,23 40:2 43:21
   44:5,12 45:5 58:23
e-mailed 31:25
e-mails 35:21 37:16
   42:5 43:17
earlier 19:5 46:2 51:7
   55:6 68:3
earned 22:25 52:3
   64:21
ears 25:21
easier 8:11
educational 7:6
EHRENREICH 2:9
   4:19 8:18,24 12:9
   13:12 14:22 15:14
   17:24 19:1 22:17
   23:13 28:19 31:8,20
   33:1,3 36:24 41:5,9
   42:25 45:23 46:24
   47:4 49:20 51:5,11
   52:10 56:13 59:24
   60:3 62:18 63:9,13
   66:2,6 67:7,20
   69:16,19 71:9,11,13
   72:3,5 73:4
eight 5:22
either 63:17
ELDER 2:2
email 29:15 34:18
   37:6 41:18 43:10
   58:18 73:13,16,17
   73:18,19,23

EMERSON 2:2
employ 74:15
employed 29:22
   30:14 36:16 38:10
   43:2
employee 37:23
employees 30:16
encompassing 15:17
encountering 20:5
entered 11:21 12:3
   51:20 54:1
entirely 61:1
entitled 52:11
entity 23:24 47:14
envelope 16:9 43:24
   44:7 71:22,22
envelope/roofing
   45:8,20
error 61:6
Esq 1:13 2:5,9,14,19
ESQS 2:16
establish 66:13
evaluate 43:25 45:9
event 35:13
eventually 65:4,7
evidence 23:11 31:4
   36:20 40:4 42:19
Examination 3:5
   63:12 67:22 69:23
   71:14 73:2 74:3,11
examine 28:8
examined 3:3
excuse 71:22
exhibit 7:18,21 8:23
   8:24 9:3,8,23 13:6
   13:10 24:16,21
   28:13 29:12,16
   30:12 32:12,17
   33:13,14,24 34:13
   34:19 37:3,7,10
   41:15,19 43:9,11
   44:18,22 49:13,18
   51:12 52:24 53:6
   57:17 58:20 59:4,7
   59:11 60:20 63:16
   68:4,4,7,12,16
exhibits 9:1 73:7
experts 39:18,25 40:5

Explain 70:25
explaining 67:11
extensive 42:11
extent 23:2 24:1
eyes 25:21

F

F 74:1
facilitate 21:14,15
   25:22
fact 47:14
factors 58:2
failing 17:11
fair 13:2 20:21 24:3
   40:3,17 50:1 51:25
   55:18 56:9 70:23
fall 41:1
familiar 3:22 25:2
   30:10 49:20 53:1
   61:20,21 69:1
far 20:15 23:16 28:15
faulty 17:12,23
favor 18:9,14,19
   51:21 54:3,7,11,15
   60:10,15
FCCI 1:8 2:12 3:8
   5:5 47:22,23 48:10
February 12:4 36:4
fee 61:3
feel 6:17 24:17
feeling 4:1 6:17
fees 62:12,25 63:4
   67:3
felt 67:11
field 36:3
figure 60:23,23 61:8
   61:9 70:19,20
figured 6:2
filed 13:25 18:4
filing 10:14,15
filled 49:10
final 10:12 11:21
   12:13 13:9,23 15:5
   15:7 17:3,18 18:2
   18:14,23 19:4,10
   23:15 30:12 50:7,11
   50:13,24 51:4,7,12
   51:16,20,24 53:25
   55:11 56:11,25 57:4

JOEL BEACH, ESQ.

60:7,15 61:6,12
  73:11
**financial** 20:5 21:7
  40:25
**find** 60:18
**finds** 17:9
**fine** 8:20 61:17
**finish** 42:11
**finishes** 45:11
**firm** 13:13 36:18
  37:14
**first** 3:2 5:2,13 6:6,24
  8:25 9:8 10:23,25
  11:17 12:7 21:23
  32:16,21 34:24 49:9
  49:24 52:15 57:17
  58:15 59:7,13 60:6
  62:24 63:15 65:1,13
  66:14 73:15
**fix** 31:15
**Florida** 1:2 2:8,13,18
  6:14 45:7
**follow-up** 69:20,22
  71:12
**following** 37:17
**follows** 3:4
**Forcon** 19:21,22,22
  20:12,21 23:19
  25:15,18,19 26:4
  28:8 30:14,16 35:11
  38:19 39:18 43:20
  44:6,15
**Forcon's** 34:6
**foregoing** 74:3
**forget** 3:14
**forgot** 11:23 12:1
**form** 14:22 15:14
  17:24 19:1 22:17
  23:13 25:2 28:14
  31:8,20,21 36:24
  40:1,8,12 41:5
  42:21,25 49:7 51:5
  52:10 56:13 62:2
  71:24
**forward** 23:5 37:21
  41:12
**found** 17:17 56:11
**four** 11:7 14:23

**Francis** 7:11
**free** 24:17
**fulfill** 52:20
**full** 3:10 39:19
**funds** 22:24
**further** 10:16
**FYI** 37:22

**G**

**G** 27:8
**G-I-R-O-U-X** 58:8
**Gables** 2:8
**gasketing** 30:25 34:3
**general** 11:10 21:4
  56:22 62:5
**generally** 9:24 15:1
  20:1 22:22 63:20
**Giroux** 58:5,6,10,24
  59:4
**give** 65:17
**given** 65:17
**Givens** 37:20,23 38:1
  38:1,5,8,14 43:19
  43:21 45:15
**Givens'** 37:25
**giving** 3:10 49:14
**Glades** 2:17
**glass** 26:15 27:18
  28:5,12,23 39:9,14
**glazing** 26:15 27:18
  28:6,12,23
**go** 3:23 4:10 6:3 7:5
  9:7,13 11:16 22:25
  33:3 46:9 52:19
  59:7 69:7
**goes** 36:2
**going** 4:10 5:1,8 8:21
  9:12 19:15 32:11
  36:3,7 39:24 47:13
**good** 3:7 29:2 35:11
  71:9 72:3
**GOODMAN** 2:11
**gross** 65:15
**group** 9:14 39:7
**guess** 47:10

**H**

**H** 3:1
**habits** 4:18

**half** 64:17 65:10
**hand** 33:1 74:16
**Handing** 33:2 59:9
**handled** 40:21
**handling** 38:3
**happened** 20:24 21:3
**hard** 59:10
**Harden** 39:6,6 45:14
  55:25
**Harden's** 56:9
**HARRIS** 2:19 69:18
  71:10 72:7
**Harvey** 9:25 13:24
  31:25 60:8 61:9
**head** 4:8 10:21
**heading** 8:12 34:24
  35:1 36:21 57:19
**held** 1:14 13:17 17:22
  57:12 69:5 74:4
**Hello** 67:24
**help** 60:16,24
**hereunto** 74:16
**Herman** 41:24
**Hervey** 29:20,22 31:9
  31:11,23 33:6,23
  34:22 35:3,14 36:22
**higher** 55:19
**history** 7:6 36:7
**Hoover** 41:25
**hope** 19:20
**hours** 12:17,22,23,25
  13:3
**hundred** 9:15 27:22
  27:24 28:6
**Huntington** 7:9

**I**

**identification** 7:22
  9:4 13:11 24:21
  29:16 32:18 34:19
  37:7 41:19 43:11
  44:23 49:18 53:7
  58:20
**identified** 36:9
**identify** 7:24 13:22
  29:18 32:19 41:21
  43:16 44:24 49:21
  53:10 57:24

**Illinois** 2:4
**improperly** 31:1 34:3
**in-artfully** 16:20
  17:16
**in-person** 55:24 56:3
  56:8,19
**inaccurate** 9:10
**inadequate** 23:2
**include** 15:20
**included** 35:21 70:16
**including** 41:24 61:3
**Incorporated** 54:12
**indemnification**
  11:13,15
**indemnity** 11:10 14:5
  40:25
**independent** 21:1,10
**indicated** 43:25
**indirectly** 74:14
**individually** 9:13
**industrial** 7:10
**Industries** 1:8 14:4
  28:24 33:8,10 42:17
  54:12
**Industries'** 55:2
**information** 31:4
  36:20 40:4 41:6
  42:19 43:5
**informed** 20:4
**initial** 32:8,16,20
  33:16 73:14
**input** 48:21
**insofar** 25:16
**inspected** 35:17
**installed** 30:25 34:3
**installer** 39:10
**instance** 22:19 34:11
**Institute** 7:16
**insurance** 1:4,5,8,8,9
  1:12 2:7,17 5:5 7:16
  8:1 24:11 32:8,15
  32:20 62:3 67:25,25
  73:14
**insurer** 46:21
**interest** 14:25 15:1,4
  15:5 56:25 57:3
  58:1 59:17 60:2
  63:25 64:1 66:19,20

66:25 67:16 70:16
70:19 71:1
**interested** 74:13
**interests** 63:22
**interim** 11:21
**interior** 16:25 42:11
44:1
**interrelationship**
15:16
**interrogatories** 62:1
**intervene** 61:22,25
62:8
**introduced** 19:19
**intruding** 71:21
**intrusion** 16:10 45:11
71:17
**investigate** 39:24
40:6
**investigating** 20:17
34:7
**investigation** 20:8
39:19
**invoice** 24:24
**involved** 6:20,23,24
10:20 20:2,11 22:16
23:22,25 24:1 25:10
30:17,19 38:3,5,6,9
38:15 39:15 40:23
41:4 42:5 46:4
47:16,19 55:14,16
55:22 57:11,13
**involvement** 7:2 24:5
24:8 25:20 68:13
**involving** 4:11 40:20
40:21 63:23
**issue** 15:4,6 18:22
62:5 66:12
**issued** 13:24 55:12
**issues** 12:1 19:14
24:11 30:23 31:23
32:2 34:1 38:3
40:25,25 43:20 44:9
48:1 62:3
**Istle** 39:9
**item** 26:15 27:20
28:15,21 55:2 59:16
59:22
**items** 14:21 15:10

36:5,10 39:11 54:22
54:24

_____

**J**

**J** 3:1
**J-U-N-I-A-D-A** 7:9
**Jackson** 2:3
**Jan** 37:14
**January** 1:16 74:17
**Jay** 9:25 13:24 50:12
51:3,16 57:3 60:8
61:9
**Jeff** 57:14
**Jeffrey** 58:24
**Jeremy** 2:19 69:16
71:9
**Jim** 68:22,24
**job** 19:16 20:2 25:19
26:4 30:15 34:6
**Joel** 1:13 3:11 72:10
73:3
**join** 36:25 43:1
**judge** 9:24 10:17
13:24 15:4 50:12
51:3,16 57:3 60:8
**judge's** 17:25
**Judges'** 17:5
**judgment** 3:19 5:1
10:7,13 11:3,17,24
12:10,13 13:9,23
14:1 15:7 17:3,19
18:2,15,23 19:4,10
23:15 30:12 50:7,11
50:13,24 51:4,7,13
51:16,16,20,20,24
52:5 53:25 54:3,7,8
54:11,15 55:12 56:6
56:7,12,15 57:1,4
60:7,10,15,19 61:6
61:12 62:14 66:23
66:25 71:1 73:11
**July** 49:25
**June** 59:1
**Juris** 7:12

_____

**K**

**keep** 23:5 40:15
41:12 59:10
**Ken** 37:20,23 38:1,11

43:19 45:14
**Kendrick** 37:14
46:13
**Kim** 10:8
**kind** 29:4 62:21
**Kisler** 41:24
**know** 4:4 18:21 19:14
21:23 22:3,13,18,19
23:21,24 24:2 25:6
26:6 29:9 30:5,7,9
30:10,16,18 32:4
35:7 37:17 38:8
40:15 41:7 43:2,3,7
45:24 46:2 47:1
48:12 55:18 57:16
58:3,5 59:10 61:14
61:16 62:20 68:24
**knowledge** 24:14
36:5 46:20 47:9
48:3,24
**known** 17:12,23
**knows** 23:16

_____

**L**

**L** 2:5 3:1
**L-O-R-E-T-T-O**
7:11
**label** 27:13
**labor** 21:14
**Landmark** 2:17
61:21,24 63:2
**Landmark's** 62:8
**language** 53:23,25
54:3
**large** 9:10,10
**largely** 11:10 56:24
57:12
**larger** 9:14
**late** 20:4
**law** 7:7,13
**leak** 35:22 36:8
**leaks** 30:23,24 34:1,2
34:8 35:17 36:7
39:8 42:9,10 44:10
69:11
**led** 21:13
**left** 15:4
**legal** 46:17

**let's** 59:7,10
**letter** 27:14 41:22
42:1,4,16,20 44:21
44:25 45:4,14,20
73:20
**letterhead** 41:23
42:24 43:4
**Lewis** 1:15 2:6
**liability** 41:2 56:22
**license** 6:8
**licensed** 6:10
**lien** 21:21
**line** 27:20 28:15,21
59:16,22 65:1,17,19
66:19
**lines** 65:13
**list** 8:6,6,13 14:21
15:10 39:11 54:22
54:24
**listed** 33:8
**lists** 50:23
**literally** 68:2
**litigation** 46:24 47:10
47:17 58:2 62:12,25
63:4
**little** 33:4
**LLC** 28:3
**LLP** 1:15 2:6,11
**long** 6:23 12:15,20
28:18 36:6
**longer** 52:20
**look** 8:5 12:2 19:15
26:14 32:8 43:23
44:7 50:4 51:10
58:15 60:24
**looked** 9:24,25 10:6,8
51:7
**looking** 33:6 34:7
70:1
**Loop** 37:14
**LORI** 74:2,20
**lost** 28:17
**lot** 5:11
**loud** 16:6
**Lube** 46:13 57:14
**Lunetta** 19:20 39:1,4
45:2
**LYDECKER** 2:16

JOEL BEACH, ESQ.

## M

**main** 14:18 35:16
**maintain** 25:25
**Maitland** 45:7,7
**making** 21:23 27:23
**manager** 41:23
**managing** 19:23
**Manhattan** 13:15
**manner** 20:11 23:4
**March** 20:10
**mark** 8:19,21
**marked** 7:18,21 9:3
  13:5,10 24:15,20
  29:11,15 32:11,17
  34:12,18 37:2,6
  41:14,18 43:8,10
  44:17,22 49:13,17
  52:24 53:6 58:13,19
**marriage** 74:12
**Master's** 7:10,13
**material** 21:11,18
  22:15
**materials** 21:14
**math** 61:6,19
**matter** 5:8 6:20,25
  22:11,12 33:17 38:6
  38:15 68:1 74:14
**matters** 40:20
**McDonald** 39:10
**McGUFFEY** 2:11
**McLeod** 29:20,20
  31:5,6,10,10 32:1,1
  32:4,4 33:7,7,8,23
  33:24 34:22,23
  36:23,23 41:25
  42:17,20
**McNaughton** 10:9
  12:6 55:16,18,25
**McNaughton's** 57:7
**mean** 10:12 12:17
  15:7 18:21 22:10
  24:18 47:5 66:5
  67:6
**meaning** 63:25
**means** 64:13
**meant** 66:6
**mediations** 56:7
**meet** 12:18,20 23:2

**meeting** 12:25 19:19
  20:18 42:1,6,8,13
  43:6 55:24 56:8
**meetings** 56:3,19
**member** 6:4 39:5
**men** 21:18 22:15
**mention** 10:11
**mentioned** 4:21 5:13
  11:18 12:24 15:21
  66:3
**mentions** 34:1
**Mers** 30:3,5 31:11
**message** 37:19
**met** 20:8,10
**metal** 39:10
**Michael** 37:13,19,20
  40:13,13
**MIDDLE** 1:2
**Mike** 23:18 30:15
  37:22 41:25 43:20
  45:15,15
**million** 11:23 15:20
  64:17 65:1,7,10,24
  70:5,7,15,23,25
  71:1,2,3
**million-dollar** 60:23
  65:9 70:2 71:3
**mind** 16:4 18:6 19:13
  21:25 63:7
**mine** 3:23
**ministerial** 24:10
**misspoke** 10:25
**mistake** 4:24
**Monday** 42:9
**money** 23:3 52:19
  62:21 64:19,20,23
  65:1,6 66:8,12
**monies** 22:25 52:3,6
  52:12,12,15
**morning** 3:7
**motion** 10:17,20
**moving** 23:5
**multiple** 6:12
**murdering** 10:15
**Mutual** 1:5 53:11
  67:25

## N

**N** 2:1 73:1
**name** 3:7,10 30:10,10
**named** 39:14 74:3,5
**National** 1:8 2:12 3:8
  5:5 47:23,23 48:11
**necessary** 21:15
**need** 4:3 8:9 24:10,17
  29:8 31:15 34:14
  63:10
**needed** 66:13 67:11
**needs** 23:2
**negligence** 14:12
**negotiating** 56:10
**negotiations** 56:4
**net** 54:8 59:16,24
  60:1,9 61:9 65:17
  67:16,17
**never** 14:11 31:5
  36:5
**New** 1:16,16,17 3:3
**Nichols** 68:23,24
**nine** 5:22 8:6
**nodding** 4:8
**noncompliance** 36:4
**Notary** 1:17 3:2
  72:15
**note** 30:23
**noted** 36:3 72:8
**Notice** 1:14 7:20,25
  73:9
**notify** 31:22
**November** 54:1
  69:12 71:18,23
**number** 8:5 11:25
  15:24 26:15 28:20
  33:5,7 41:24 58:22
  59:19 60:4,6,13
  61:11 64:1,2,3,4
**numbered** 8:11
**numbers** 27:18 59:16
  64:10
**numerous** 35:20 36:4

## O

**O** 3:1
**object** 14:22 15:14
  17:24 19:1 22:17
  23:13 28:14,16 31:8

  31:20,21 36:24,25
  40:1,8,12 41:5
  42:21,25 49:7 51:5
  52:10 56:13 62:2
**objected** 62:7
**objection** 15:16
**obligation** 21:1,10
**obligations** 21:8,13
**obligee** 52:4
**obvious** 42:9
**occurring** 21:5
**October** 7:1 38:12,14
  68:17
**office** 24:12 57:14
  59:6
**offices** 1:14
**okay** 13:13 15:1 33:6
  33:6 37:21 46:11
  50:5 58:17 60:25
  65:4 71:5,10
**on-site** 42:6 43:5
**once** 22:15 52:20
**one-page** 44:21 73:20
**ones** 8:25
**open** 15:4
**opposed** 10:23 61:8
**order** 9:24 10:6,7,12
  10:14,17 11:17,19
  12:1 15:4,7 18:22
  23:3,5 24:12
**ordered** 51:16 72:6
**original** 19:8 37:19
**Ostrowski** 19:21 30:9
  31:11 35:10 38:19
  39:23 40:5 41:23
  42:23 43:2 45:5
**Ostrowski's** 38:20,23
**outcome** 66:23 74:14
**outside** 41:1
**owed** 52:6 56:25
**owner** 28:3 36:16
**owners** 19:20 34:9
  39:4
**ownership** 39:7

## P

**P** 2:1,1
**P.C** 2:2

JOEL BEACH, ESQ.

**p.m** 72:8
**PA** 3:13
**page** 8:5,11,25 9:8,17
    15:23 16:2 17:6
    18:6,7 19:4,13,18
    23:6 26:14 30:13
    32:25 34:24 43:19
    49:15 51:10 57:17
    58:22 59:7,13,15
    60:20 61:1 63:15
    73:2,8
**pages** 8:6 9:10,15
    58:15
**paid** 21:19 22:24
    52:4 62:23 63:2
    64:23 65:2,4,7,11
    65:15,20,23 66:9,13
    66:16,25 67:18
    70:17,22 71:4
**panel** 39:10
**papers** 9:14
**paragraph** 16:1,8,18
    19:18 20:19 23:6
    30:13,13 36:1 39:8
    39:17 50:4 54:19,21
    54:23 55:8
**parenthetical** 67:15
**parenthetically**
    64:10,12
**Parkway** 2:12 3:13
    45:7
**parse** 5:11
**part** 4:9 12:12,21
    17:8 32:7 34:6 37:9
    39:7 51:24 53:14
    62:11 70:6,14,15
**partial** 18:8
**particular** 22:19
    24:25 41:1
**particularly** 22:21
**parties** 1:14 42:5
    74:13
**Partners** 26:3 28:3
    45:2 53:13
**party** 4:22 74:8
**Paul** 19:20 39:1 45:1
**pay** 21:8,11 22:14
    23:25 24:8,25 25:3

27:21 28:9 56:10
**payment** 21:11,14
    24:20,24 62:10 66:4
    70:3,7,9,15 71:2
    73:12
**payments** 21:17,24
    22:2 23:4 62:12
**PCO** 61:3
**pending** 4:6
**Pennsylvania** 6:4 7:9
    7:11
**people** 41:24 61:19
**percent** 27:15,22,24
    28:6,12 64:1,1,2
**percentage** 27:14
    64:2
**perform** 16:25 45:9
**performance** 14:2
    21:1,12 38:4 47:13
**performed** 35:23
    36:9
**performing** 17:10
**period** 26:24 27:5
    68:13
**permits** 20:15
**permitting** 24:11
**personal** 24:14
**personally** 30:18
**personnel** 23:7,21
    24:4
**Philadelphia** 3:13
**photos** 31:14
**phrase** 16:19
**place** 26:24 27:5 43:6
    74:4
**Plaintiffs** 1:6 2:2
**Plaza** 2:8
**please** 3:24 4:4 7:24
    8:5,8 15:23 17:6
    30:22 35:20 68:5
**plus** 65:1,24
**point** 4:3 5:23 18:1
    38:5 55:24 57:4
**policy** 56:22
**portion** 17:2 58:1
    68:19
**position** 5:20 17:21
    29:25 37:25 38:1

44:4 50:8,19 53:15
    53:24 55:19 56:10
**positive** 10:22 58:9
**possibilities** 63:24
**possibility** 35:9
**possible** 25:24
**post** 56:6,7 66:25
    71:17
**postdated** 69:12
**postdating** 71:23
**potential** 63:21
**predates** 68:17
**preference** 13:7
**prejudgment** 56:6
    59:17 60:2 66:19,20
**preparation** 9:20
    12:12
**prepare** 12:18 48:6
**preparing** 12:16 13:3
    48:5
**presence** 26:8,8
**present** 24:25 68:19
    68:22
**presented** 8:22 9:2
    63:14 73:10
**president** 5:19 45:1
**pretty** 41:6
**previous** 15:15 26:23
    27:2
**previously** 15:21
**primarily** 38:2
**printed** 13:7
**prior** 52:4 62:20
    68:13
**privy** 47:2,4,5
**probable** 66:22
**probably** 9:15
**problem** 36:9
**problems** 31:15
**problems/punch**
    39:11
**process** 22:13
**produced** 22:1,9,10
**Professional** 2:12
**progressed** 26:12
**project** 19:23 20:12
    20:15,22,25 21:2,11
    21:16,24 22:16 23:3

23:5 24:2,6 25:11
    25:21,24 26:1,3,8
    27:19 28:12,24
    30:17 31:24 38:9
    39:15 40:16,18,19
    41:23 46:7 52:21
    64:22 65:23 66:16
    68:14 69:11,11
    71:17,21,23
**projects** 41:3
**promise** 4:16
**provide** 46:17,23
    47:18 48:2 51:2
    70:12
**provided** 46:20 50:2
**Public** 1:17 3:3 72:15
**pull** 68:4
**punch** 14:21 15:9
    54:22,23
**purpose** 31:19,22
    42:1,8
**pursuant** 1:14
**pushing** 41:12
**put** 3:25 43:3

───────────

**Q**

**question** 3:24 4:5
    15:15 18:16 19:7
    28:17 48:16 49:8
    53:18 62:19 64:25
    66:4,8,15
**questions** 46:9 63:7
    66:11 67:21 68:2,4
    69:17
**quite** 47:11

───────────

**R**

**R** 2:1,9 74:1
**raised** 48:2
**range** 58:13
**ranges** 58:1 63:21
**RAP** 4:11,12,14 6:24
    9:25 10:12,22,24
    12:13 13:9,23,25
    14:8 16:9,24 18:3
    18:25 19:16,19,22
    19:22 20:2,12 21:16
    23:7 24:2 25:11,19
    31:23 36:16 38:3

JOEL BEACH, ESQ.

39:5,24 42:5 43:20
44:10 46:10,23 47:3
47:8,24 48:2,10,15
48:22,25 49:5 50:20
51:21 52:7,17 53:13
53:17 54:4,7 55:11
55:25 56:15,21,25
57:1,8 58:6 60:10
60:11,15,15 61:12
61:20,22,25 62:8,11
62:24 63:3,22,23
64:21 66:5,6,7,8,16
67:6,7,8 68:20
69:11 70:3,10,17
71:17,21 73:11
**RAP's** 57:8
**Raton** 2:18
**RDB** 36:17
**RDP** 35:21 36:3
**reached** 55:10
**read** 16:11 17:13
18:11 19:24 23:9
31:2,16 35:18,24
36:11,22 39:12,22
42:14 44:2 45:12
48:18 50:14,16
53:18,20 72:5
**readily** 41:6
**reading** 16:4
**Ready** 41:12
**really** 57:4
**reason** 23:20 28:11
28:16,16 33:9,22
37:1 40:10 60:13
61:10
**recall** 10:5,18,19
11:19,20 12:3,5
22:4 26:7 29:25
30:11 37:9,11 41:7
41:17 43:15 62:6,7
62:9,21 68:3,25
**receipt** 21:21
**receive** 52:12
**received** 7:10 11:2
22:25 51:24 52:13
62:10,19,21
**Recess** 9:6 29:6 41:11
63:11

**recipients** 42:16
**recollection** 24:25
36:15 59:3 62:4
**recommendation**
25:16
**recommendations**
45:9
**reconsideration**
10:16,18,20
**record** 3:25 9:5,7
13:16,18,19 20:14
21:5 28:1 29:7
33:12 48:18 50:12
50:24 51:3 53:20
58:14 59:15 69:4,6
69:8 74:10
**records** 22:1
**recover** 16:24
**reduced** 65:10
**refer** 4:10,14 5:1,8
63:17
**reference** 16:16 22:9
23:17 27:18 35:20
54:21,23,25 55:8
**referenced** 16:23
20:19 36:21 44:12
70:2,7
**references** 16:8 36:17
54:3,7,11,15,18
**referencing** 53:25
**refers** 67:9
**reflect** 60:6
**reflects** 60:4,7,9
**refresh** 59:3
**Regan** 58:24
**Regan's** 57:14
**regarding** 42:5
**regular** 26:8
**relate** 16:18
**related** 3:19 4:25
12:24 14:15,19,20
14:21 15:13 40:18
47:7 52:2 53:17
56:4 62:3,11,12,24
63:2
**relates** 55:2
**relating** 61:7
**relation** 53:13

**relations** 7:10
**Release** 53:11
**releases** 21:21
**relies** 50:12 53:14
**rely** 25:18 53:24
**remained** 20:14 21:4
**remaining** 64:20
70:18
**remedy** 17:11 39:10
**remember** 62:5
70:20
**removing** 16:25
**reoccurring** 35:17
36:7
**repairs** 16:25
**repeat** 48:16,17
**replacing** 17:1
**reporter** 48:19 53:21
**reports** 36:3
**represent** 3:8 11:18
67:24
**representation** 27:21
27:23 28:5
**representative** 8:1
10:5 42:12 49:24
69:9
**represented** 68:12
74:9
**represents** 64:19
**request** 46:22 47:2
47:22 48:9 49:3
**requested** 35:21
**requests** 47:25 48:4
**required** 16:24 21:22
36:8 42:12
**Respective** 1:13
**response** 44:9
**responsible** 38:3
**restate** 18:16
**result** 55:10 56:25
**retain** 25:19 46:4
**retained** 20:12 23:19
40:18 43:23,24 45:6
45:18,21 46:3 48:22
**retaining** 44:6
**retired** 38:11
**review** 8:8 12:12,24
24:17 25:21 26:11

28:8 32:7 34:13
**reviewed** 8:19 9:20
9:22 12:7 20:8 22:5
25:13,15
**reviewing** 12:16
**revolve** 56:24
**ribbon** 30:24 34:2
**right** 4:13 5:2,9,24,25
11:12 13:1 15:8,22
16:17 19:21 21:20
27:3 37:21 38:19
47:11 52:9 55:12
56:1,17 58:11 64:6
64:9,18 65:12,14,22
65:25 66:17 71:19
**rip** 15:18 16:16 17:2
55:7
**Riverside** 26:2 28:2
45:2 53:12
**Road** 2:17
**Robert** 29:20,20,22
30:22 31:5,10,11,23
32:1,4 33:7,24
34:22,22 35:2,13
36:23 41:25 42:16
**Rolland** 36:18
**roofing** 36:4
**rows** 59:17
**rules** 3:22
**ruling** 15:5 17:25
**rush** 24:18
**Ryan** 41:25

**S**

**S** 2:1
**Safe** 72:7
**sake** 70:1
**Sarasota** 2:13
**saving** 13:12
**saw** 63:16
**saying** 19:21
**says** 8:12 26:15,18
27:14 35:20 66:20
**scenarios** 66:21
**schedule** 25:25 26:18
**Schnabel** 19:20 30:15
39:2 44:13 45:15
**School** 7:13

JOEL BEACH, ESQ.

scope 25:20
second 5:9 11:6
  16:23 17:8 32:22
  33:20 38:17 50:2
  58:22 70:14
section 26:23,23 27:8
see 8:13 16:1 25:4
  26:16,20,25 27:4
  30:4,13 31:12 33:6
  37:17,18 54:2 61:5
  68:9
seeing 22:4 41:17
  43:15
seek 48:10
seeking 47:16
seen 7:18 13:20 24:16
  29:12 32:12 34:15
  37:3 41:16 43:14
  44:18 53:8 57:22
self-explanatory
  67:13
send 42:23
sending 28:2 33:23
sensed 29:4
sent 28:7,9 31:5
  34:22 35:13 36:22
  37:14 39:1 40:11,13
  42:20 43:19 44:5
sentence 16:23 17:9
  18:8 23:6,11 36:1
  55:5
separate 11:4
September 23:8,23
  24:4 34:23 38:23
  40:7 42:6,10 43:6
  45:3,5
set 22:23 39:19 74:16
set-off 51:25 52:2
  60:23 71:4
sets 57:25
settlement 50:5,6,7
  50:11,20,23 53:5,11
  53:14,15,23 55:10
  56:5,20 57:9,19
  58:1 62:20 63:15,18
  70:6,7,9,16 71:2
  73:22
seven 12:17,21,23,25

seventh 54:1
severe 20:5
short 29:3 63:8
show 22:2 32:11
showing 7:17 13:5
  24:15 29:11 34:12
  37:2 43:8 44:17
  49:12 52:23 58:12
shown 41:14
shows 42:18
Shumaker 37:14
  46:12 57:14
sides 13:7
signature 25:3,6
signed 24:11 68:10
similar 3:20 41:3
simpler 4:10 5:11
simply 40:15
Sipple 37:15
sir 15:25 16:7 27:7
  43:13 49:11 68:6
sit 22:3 41:7 51:6
  54:2 58:9 61:13
  69:1
site 19:16 20:2 23:8
  24:4,6 25:19 26:4,9
  34:6
six 12:17,21,23,25
Smith 1:15 2:6
sorry 4:23 8:5 10:3
  10:14,24 16:6 17:15
  19:22 21:4 22:7,8
  22:21 28:17 32:22
  32:24 33:2,15 40:14
  42:2 49:14 52:25
  60:20 66:6 67:8
  70:13
sort 22:2
speak 48:6
speaking 16:14
special 62:1
specialist 45:8,20
specific 47:9 48:3
  54:23,25 55:8 62:4
specifically 18:8
  21:25 37:11 44:20
  45:24
specifics 47:20 51:2

62:6
specified 35:22 45:10
spent 12:15,25 13:2
St 7:10
stamped 9:1,9,11,12
  9:12 57:18
stamps 9:17
stands 12:10
start 3:10 18:7 42:2
  64:3
started 21:23
state 1:17 3:3 36:2
stated 16:20
statement 23:15
  51:25
states 1:1 6:12,14
  17:9 18:8 19:18
  23:7 26:22 27:2,5,8
  27:11,14 30:22
  31:14 35:5,16 36:1
  37:19 39:9,17 42:1
  43:21 45:4 63:18
status 25:22 26:11
stenographically
  74:7
Steve 35:16
stored 27:8
Street 1:16
streets 13:15
string 43:17
sub 17:8
subcontract 14:15
  17:10,18,22 64:21
subcontractor 28:24
  48:1
subcontractors 21:8
  21:18,24 22:15
  25:23
subject 43:20
submission 27:21
submissions 24:13
  25:16
submit 62:1
subpart 26:18
Subscribed 72:12
substance 19:2 21:3
  34:10,11 52:22
substituted 52:9

subsumed 70:9,11
subtract 65:16
subtraction 64:13
  67:16
sued 14:4,11
Sugar 23:17,18,18
  30:15 37:19 40:13
  43:20,21 45:15
suing 48:25
suit 4:12 13:25 53:17
Suite 2:3,13,18 3:13
sum 19:2 34:10,11
  52:22
summary 10:7 11:17
supplement 23:3
suppliers 21:11,14
  25:23
support 53:15
sure 4:17 5:3 7:8 11:1
  11:15 12:3 13:8
  18:17 20:4 21:2
  22:1 23:4 24:10
  25:15,25 28:18 29:4
  41:13 58:5 59:8,12
  60:5,17 61:1,15
  63:8 71:13
surety 52:11
surprise 47:25
sworn 72:12 74:5
system 14:20 15:13
  18:24 39:20,25 40:6
systems 16:14 55:1,4

                T
T 23:18 74:1,1
T-A-M-M-Y 58:8
take 4:3,5 8:8 21:7
  24:17 29:3 34:13
  41:9 63:7,9
taken 1:13 9:6 12:7
  29:6 41:11 63:11
  74:7
talked 19:5 55:6
talking 62:15 67:8
Tammy 58:5,8,24
  59:5,6
TAMPA 1:3
tear 15:18 16:16 17:2
  55:7

**Tecum** 8:12
**telephone** 2:20
**tell** 9:22 63:19 64:19
**telling** 39:23
**tenants** 34:9
**term** 16:16 17:2 25:1
**terminology** 4:15
**terms** 16:14 26:1
    27:18 50:8
**test** 35:22
**testified** 3:4
**testify** 8:3
**testimony** 6:18 23:17
    68:22 69:2 74:6,6
**tests** 36:8 45:10
**Thank** 33:21 53:4
    66:7 68:11 69:14
    72:1
**Thanks** 29:10 67:20
**thing** 4:4
**things** 4:8,10 5:11,12
    10:11 11:25 21:8
    23:25 24:8,10,12
    51:2
**think** 4:9 10:1,9,25
    11:4 15:15 20:24
    24:9 28:19 43:18,24
    52:8,25
**third** 39:8 65:17,19
**third-party** 54:12
**thread** 28:17
**three** 3:13 14:18 15:2
    57:25 59:13,17 64:4
    66:20
**time** 3:23 4:16 8:8
    20:9 23:25 24:17
    25:10,14 34:13 38:8
    38:11 40:17 44:4,5
    46:22 47:10 48:9,13
    49:3 56:15 63:9
    66:14 68:13 72:8
    74:4
**timely** 23:4
**times** 5:14
**today** 4:1 5:4 6:18
    8:3,15 9:20 22:3,10
    33:19 34:17 35:17
    37:10 39:18 41:7

51:6 54:2 58:9
    61:13 62:10 68:1,16
    69:1,10
**today's** 48:5,6
**TODD** 2:9
**told** 19:22,22
**top** 10:21 16:1 26:18
    43:19
**topics** 8:3,7,8
**total** 13:2 16:8,13
    27:8 65:23 66:22
    67:17
**totaled** 71:1
**totals** 61:4
**touched** 6:16
**tough** 33:4
**transcribed** 74:8
**transcript** 10:8 74:4
    74:10
**transcripts** 10:1
**transition** 19:16
**travels** 72:7
**trees** 13:12
**trial** 68:19
**Trocke** 37:14,20
    40:11,13,18,21
    45:15
**true** 20:20 23:12
    50:17 68:16 74:10
**trust** 1:8 2:12 3:8 5:6
    23:1 47:23,23 48:11
**try** 59:10
**trying** 19:15 52:8
    60:18,21
**TSG** 1:8 9:1,11,16
    14:4,8,11,14,15
    15:9,12 17:10,10,17
    17:18,22,22,23
    18:10,14,19,24
    19:10 28:24 31:15
    33:8,10,24 42:17,20
    48:14,25 49:4 54:12
    55:2
**TSG's** 14:15
**Tuesday** 42:6
**turn** 15:23 17:6
    32:23
**turning** 18:6 19:13

**TVS** 39:9,14
**twice** 3:19
**two** 9:9,17 37:18 41:8
    63:24 65:13
**two-minute** 41:9
**type** 24:10 25:1
**types** 14:18 15:2
**typically** 4:14 22:18
    22:23

**U**

**uncovered** 50:9,21
    53:16 56:22
**undergraduate** 7:8
**underlying** 4:12,22
    10:23 14:11 46:10
    50:12,24 51:3 56:16
    63:22
**underneath** 64:11,11
**understand** 3:24,25
    5:4 6:3,16 8:2 43:23
**understanding** 14:7
    14:10,13 17:15,17
    27:17 28:23 29:24
    31:18,22 45:18
    59:22 61:24 64:7,15
    65:19 69:10 71:20
**unfortunately** 27:13
**UNITED** 1:1
**University** 7:13,14
**Upside** 33:3
**use** 4:15 70:11
**usually** 64:12

**V**

**value** 26:19
**varying** 9:11
**verbal** 4:7
**verdict** 56:16
**versus** 5:5 10:7
**Vic** 31:14 35:5,7
    38:19
**vice** 5:19
**vico1@cox.net** 30:2
    35:2 38:17
**Victor** 19:21 30:9
    31:11 35:9 38:20
    41:23 45:5

**W**

**W** 2:19
**walk** 22:1
**wall** 35:22 39:20,25
    40:6
**want** 8:19 46:9
**wanted** 19:13 71:5
**wants** 45:24
**WARNING** 2:5 4:21
    28:14 31:21 33:12
    33:15,18,21 36:25
    40:1,8,12 42:21
    43:1 49:7 53:2,4
    62:2 67:23 69:4,7
    69:14 71:12,15 72:1
    73:5
**wasn't** 11:21 15:5
    59:6 60:21
**water** 1:15 16:10
    35:22 44:1 45:11
    71:17,21,21
**way** 6:18
**we've** 43:23
**went** 5:18 7:6 59:8
    67:16
**weren't** 15:3
**West** 2:3,12
**whatnot** 20:15 21:15
    21:22 41:1 47:13
**WHEREOF** 74:16
**Widener** 7:12,14
**Williamson** 45:6,19
    45:21 46:5
**window** 14:19 15:13
    15:17 16:14 18:24
    31:15 39:18,25 40:5
    54:25
**windows** 15:17,19
    17:1 30:24 31:23
    34:2 55:4
**witness** 9:2 28:21
    33:2,14 46:1 53:18
    73:2,10 74:3,5,11
    74:16
**word** 47:11 52:9
    70:11
**words** 10:15 55:4
**work** 6:2 17:11,12,12

JOEL BEACH, ESQ.

17:23 20:7,9,17,23
25:22 26:11,22
27:22 28:12
**worked** 22:20
**world** 61:18 64:12
**wrong** 3:18

### X

**x** 1:4,10 73:1
**xxxxx** 2:21

### Y

**yeah** 15:19 30:14
61:16 67:14 68:10
70:18
**year** 12:4
**years** 5:22
**yell** 4:19
**yesterday** 43:22
**York** 1:16,16,18 3:3

### Z

**zip** 3:14

### 0

### 1

**1** 7:18,21 71:18,23
73:9
**1,062,492** 16:24
**1,999,463** 27:2
**1:06** 72:8
**10** 5:14 19:18 30:13
43:9,11 64:1 73:19
**10:00** 42:7
**10:03** 1:17
**10:14** 9:6
**10:17** 9:6
**100** 27:15 28:12
**103** 2:13
**10th** 29:21 30:20
31:9
**11** 44:18,22 65:1,7,24
70:2,25 73:20
**11,215,084.52** 64:11
66:16
**11,267,515.75** 51:18
54:4
**11:01** 29:6

**11:09** 29:6
**11:35** 41:11
**11:39** 41:11
**12** 13:2 49:13,18,22
73:21
**12:32** 63:11
**12:52** 63:11
**13** 52:25 53:2,6 73:11
73:22
**14** 13:3 23:6 58:13,20
63:17 73:23
**15** 64:2
**1500** 3:13
**16.8** 70:5,7,15 71:2
**17** 25:8 68:7,10
**18** 34:23 49:25
**19** 42:10
**19102** 3:14
**1996** 6:6
**1st** 59:1 69:12

### 2

**2** 2:8 8:23 9:3,8,23
26:14 37:10 57:17
59:4,7 60:23 63:14
64:17 65:9,9 70:1
71:3 73:10
**2,374,285** 26:19
27:11
**2,476,055.03** 61:4
**2.46** 71:3
**20** 9:10 38:23 40:7
**2006** 20:4
**2007** 19:19 20:10,18
23:8,23 24:5 25:8
29:21 30:20 34:23
36:4 38:24 40:7
42:6,10 43:6 45:3,5
68:8,10 69:12 71:18
71:23
**2012** 7:1 38:13,14
68:17
**2015** 59:1
**2018** 49:25
**2019** 12:4
**2020** 1:16 72:13
74:17
**21** 24:24

**2300** 2:17
**235490** 58:14
**235491** 58:23
**235492** 9:9 57:18
59:16 70:2
**2355045** 58:14
**24** 45:5 73:12
**25** 42:6 43:6
**26** 45:3
**26(a)(1)** 32:16,21
73:15
**2603-A** 45:7
**29** 73:13
**2A** 7:15

### 3

**3** 8:6,6 13:6,10 30:12
50:4 51:12 55:2
60:20 73:3,11
**30** 1:16
**30th** 74:17
**32** 73:14
**32751** 45:7
**33134** 2:8
**33413** 2:18
**34** 73:16
**34240** 2:13
**37** 73:17
**374,822** 27:5

### 4

**4** 8:6 24:16,21 28:13
68:4 73:12
**40** 9:10
**41** 73:18
**43** 73:19
**44** 73:20
**440W** 2:18
**45** 15:23 19:4
**49** 73:21

### 5

**5** 8:11 11:23 15:20
29:12,16 33:5,7,13
33:24 64:1 73:13
**5,067,033.01** 16:10
18:10,20 19:11
54:13 55:3
**526** 2:3

**53** 2:3 73:22
**58** 73:23
**5th** 54:1

### 6

**6** 19:13,18 23:6 30:13
32:12,17 33:14
73:14
**6/1/15** 58:19 73:24
**60** 9:15
**60604** 2:4
**62** 61:1
**63** 73:4
**67** 73:5
**6751** 2:12
**69** 73:3
**6926** 24:24

### 7

**7** 34:13,19 73:9,16
**71** 73:5
**77** 1:15

### 8

**8** 37:3,7 70:23 71:1
73:17
**8,739,029.49** 59:20
70:22
**8,791,460.72** 51:22
54:9 60:14
**8:18-cv-03042-SC...**
1:6
**80** 26:15 27:20 28:15
28:22
**82** 17:6 18:7
**83** 18:6
**85** 51:10 60:20
**86** 51:10

### 9

**9** 41:15,19 73:10,18
**9/26/07** 44:21 73:20