UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERISURE INSURANCE COMPANY and
AMERISURE MUTUAL INSURANCE COMPANY,

  Plaintiffs,

vs.                              Case No. 8:18-cv-3042-T-24SPF

FCCI INSURANCE COMPANY, NATIONAL
TRUST INSURANCE COMPANY,
TSG INDUSTRIES, INC., THE AUCHTER
COMPANY, ARCH INSURANCE COMPANY,
and LANDMARK AMERICAN INSURANCE COMPANY,

  Defendants.
_____/

DEPOSITION OF

DERRICK HARRIS, MBA, AIC

CORPORATE REPRESENTATIVE OF

NATIONAL TRUST INSURANCE COMPANY

Taken on Behalf of the Plaintiffs

DATE TAKEN:     February 14, 2020

TIME:           11:02 a.m. - 2:12 p.m. Central

PLACE:          Daniels & Upton Reporting
                1817 Lewis Turner Boulevard, Suite F
                Fort Walton Beach, Florida  32547

_____

EXAMINATION OF THE WITNESS TAKEN BEFORE:

REBECCA DANIELS, RPR
Daniels & Upton Reporting
1817 Lewis Turner Boulevard, Suite F
Fort Walton Beach, Florida  32547
850.864.3376     scheduling@getdepos.com     getdepos.com

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                           Pages 2..5

Page 2

APPEARANCES

On behalf of the Plaintiffs:
ANTHONY N. BALICE
Attorney at Law
Emerson & Elder, P.C.
53 West Jackson Boulevard
Suite 526
Chicago, Illinois  60604
tony@emersonelder.com
On behalf of the Defendant,
    National Trust Insurance Company and Derrick Harris:
CHAD W. BICKERTON
Attorney at Law
Goodman McGuffey, LLP
6751 Professional Parkway West
Suite 103
Sarasota, Florida  34240
cbickerton@gm-llp.com
On behalf of Arch Insurance Company:
BRIAN GOLDENBERG (via teleconference)
Attorney at Law
Lewis Brisbois
2 Alhambra Plaza
Suite 1110
Coral Gables, FL 33134
Brian.Goldenberg@lewisbrisbois.com
On behalf of Landmark American Insurance Company:
JEREMY W. HARRIS (via teleconference)
Attorney at Law
Lydecker Diaz
1221 Brickell Avenue 19th Floor
Miami, Florida 33131
jharris@lydeckerdiaz.com

Page 3

INDEX OF EXHIBITS

|  | | PAGE | LINE |
|---|---|---|---|
| Plaintiffs' Exhibit 1: | Plaintiffs' Amerisure Insurance Company's and Amerisure Mutual Insurance Company's Notice of Taking Deposition Duces Tecum of Fed. R. Civ. Pro. 30(b)(6) Representative of National Trust Insurance Company | 8 | 14 |
| Plaintiffs' Exhibit 2: | Fax from Johnson & Bryan, 09/21/2010; FCCI-009137 through 009153 | 21 | 22 |
| Plaintiffs' Exhibit 3: | Letter from Taylor, Day, Currie, Boyd & Johnson, 08/11/2010; AMERI-00508 and 00509 | 22 | 12 |
| Plaintiffs' Exhibit 4: | Letter from Taylor, Day, Currie, Boyd & Johnson, 08/30/2010; AMERI-005481 | 22 | 12 |
| Plaintiffs' Exhibit 5: | Letter from FCCI Insurance Group, 09/23/2010; AMERI-003323 | 24 | 20 |
| Plaintiffs' Exhibit 6: | Letter from FCCI Insurance Group, 09/23/2010; FCCI-000002 and 000003 | 29 | 25 |
| Plaintiffs' Exhibit 7: | Letter from FCCI Insurance Group, 12/9/2010; FCCI-000004 through 000007 | 32 | 23 |
| Plaintiffs' Exhibit 8: | TSG Industries, Inc., Policy CPP0007689, 11/01/2007 through 11/01/2008 | 41 | 3 |
| Plaintiffs' Exhibit 9: | Letter from Goodman, McGuffey, Lindsey & Johnson, 09/7/2011; FCCI-009957 through 009970 | 46 | 17 |
| Plaintiffs' Exhibit 10: | TSG Industries, Inc. Subcontract Agreement | 49 | 18 |
| Plaintiffs' Exhibit 11: | Defendants' FCCI and NTIC's Answer and Affirmative Defenses to Plaintiffs' Amended Complaint | 58 | 14 |

Page 4

INDEX OF EXHIBITS

|  | | PAGE | LINE |
|---|---|---|---|
| Plaintiffs' Exhibit 12: | TSG Industries, Inc.'s Answer and Affirmative Defenses to the Second Amended Third Party Complaint of Arch Insurance Company and The Auchter Company (amending its prior Affirmative Defenses directed to the Amended Third Party Complaint) | 64 | 14 |
| Plaintiffs' Exhibit 13: | Final Judgment from Non-Jury Trial; FCCI-000121 through 000207 | 69 | 14 |
| Plaintiffs' Exhibit 14: | Amended Complaint, FCCI-000224 through 000301 | 79 | 16 |
| Plaintiffs' Exhibit 15: | Corporate Representative Deposition of FCCI and NTIC - Notes | 91 | 22 |
| Plaintiffs' Exhibit 16: | Certificate of Liability Insurance, FCCI-000368 | 98 | 14 |

Page 5

INDEX OF EXAMINATIONS

|  | PAGE | LINE |
|---|---|---|
| DERRICK HARRIS, MBA, AIC: | | |
| DIRECT EXAMINATION BY MR. BALICE | 8 | 6 |
| DIRECT EXAMINATION BY MR. GOLDENBERG | 104 | 23 |
| CROSS-EXAMINATION BY MR. BICKERTON | 105 | 10 |
| REDIRECT EXAMINATION BY MR. BALICE | 106 | 4 |
| CERTIFICATE OF OATH | 109 | 2 |
| CERTIFICATE OF REPORTER | 110 | 2 |
| CHANGE/REVISION PAGE | 111 | 1 |

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                                    Pages 6..9

Page 6

1
2
CERTIFIED QUESTIONS
                                                      PAGE LINE
3  Can you let me know why they use the term
4     manifestation?  ..........................    28   23
5  Do you know if the term manifestation was being
      used based on the application of Florida
6     law?  ....................................    29    5
7  Do you know if that coverage position was based
      on TSG's coverage position with the use of
8     the word manifestation, was based on the
      possible application of Florida law at the
9     time?  ...................................    29   11
10 Would records of the inspection references --
      referenced in your letter of September
11    23rd, 2010, would that have been included
      in your claim file?  .....................    31    1
12
   Is negligent actions a defined term under that
13    endorsement?  ............................    40   11
14 So do you know, going back to Exhibit 7, do you
      know why this particular adjuster, Mr.
15    Nealy, was using the term "no claims of
      negligence" in this letter?  .............    41   12
16
   But do you know with me that claims of
17    negligence and negligent actions are
      different terms?  ........................    41   19
18
   So is National Trust Insurance Company's
19    position that in order for -- in order to
      have additional insured coverage for
20    Auchter, there had to be a claim of
      negligence?  .............................    78    9
21
   Allegations of deficiencies in construction,
22    would that qualify as a negligent act under
      the National Trust Insurance Company
23    endorsement?  ............................    80   10
24 Would the use of the term defective construction
      qualify as a negligent act under the AI
25    endorsement?  ............................    80   25

Page 7

1                     CONTINUATION OF CERTIFIED QUESTIONS
2                                                    PAGE LINE
   Now, do you agree that claims for faulty
3     workmanship or defective work -- that
      claims for -- do you agree that claims for
4     faulty workmanship or defective work can
      constitute an occurrence under a policy?   ..  90   15
5
   Do you know if there's any -- if there was in
6     place any binding agreement between FCCI
      and Johnson & Bryan at the time that this
7     certificate was issued?  ..................    99    1
   Back to B one, would you agree with me that that
8     -- that that sentence, the first sentence
      that I read, does not require an actual
9     adjudication of negligence?.............. 102    9
10
   Now, similar with sticking to B one, would
11    faulty -- would allegations of faulty work
      be considered a negligent action?  .......   103    7
12
   Do allegations of construction deficiencies,
13    would that constitute a negligent action?  . 103   24
14
15
16
17
18
19
20
21
22
23
24
25

Page 8

1  WHEREUPON,
2              DERRICK HARRIS, MBA, AIC,
3  after having been first duly sworn, was deposed and
4  testified as follows:
5       THE WITNESS:  I do.
6              DIRECT EXAMINATION
7  BY MR. BALICE:
8       Q.   Let the rules reflect that this deposition is
9  being taken pursuant to the Federal Rules of Civil Procedure
10 and applicable local rules.
11      Mr. Harris, let me hand you what I'm going to
12 mark as Exhibit 1.  Have you seen this document before?
13      A.   Yes, I have.
14              (Plaintiffs' Exhibit 1 was marked
15               for identification.)
16      Q.   Okay.  And this is a Notice of Deposition with a
17 Duces Tecum rider.  Let me ask you:  Did you bring any
18 documents today to this deposition?
19      A.   I brought these notes here.
20      Q.   Okay.  And did you use those notes to refresh
21 your recollection?
22      A.   Yes.
23      MR. BALICE:  Okay.  Counsel, I'm making a request
24 pursuant to Rule 612 of the civil procedures for a copy
25 of those notes once the deposition is completed.

Page 9

1       MR. BICKERTON:  Sure.  I have a copy right there.
2       MR. BALICE:  All right.  Great.  Thank you.  All
3  right.
4  BY MR. BALICE:
5       Q.   But you didn't bring the remaining of the
6  documents requested in the notice?
7       A.   I brought these documents only.
8       Q.   Okay.  I'm reserving my rights to take the
9  deposition, to the extent the documents have not -- have not
10 been produced.
11      Mr. Harris, you're here as a corporate designee
12 for National Trust Insurance Company; is that -- is that
13 correct?
14      A.   That is correct.
15      Q.   And you're prepared to testify on behalf of
16 National Trust Insurance Company?
17      A.   That is correct.
18      Q.   If I use NTIC for the deposition, is that -- is
19 that okay, or National?
20      A.   That is fine.
21      Q.   Okay.  Have you served in that capacity prior to
22 this deposition as a corporate representative?
23      A.   I have.
24      Q.   Okay.  And are you prepared to testify on all
25 topics listed in this notice?

Page 10

1     A.    I am.

2     Q.    Okay.  And how many times have you testified as a

3  corporate representative?

4     A.    Twice.

5     Q.    Okay.  Twice for National Trust Insurance Company

6  or just twice?

7     A.    Twice.

8     Q.    Okay.

9     A.    Twice for both.

10    Q.    Twice for both.  You mean twice --

11    A.    Twice as a corporate representative, both times

12  were for National Trust:

13    Q.    Okay.  But you have been deposed previously?

14    A.    Yes.

15    Q.    How many times, roughly?

16    A.    Four.

17    Q.    Okay.  So you're familiar with the rules?

18    A.    Yes, sir.

19    Q.    Okay.  So please let me know if -- if the

20  question is unclear.  I will -- I will repeat them.

21        Also, my understanding is that you had some kind

22  of medical procedure.  So if you want to take a break at any

23  time, just let me know and we'll stop -- and we'll stop the

24  deposition.

25    A.    Okay.

Page 11

1     Q.    Thank you.  Can I have your educational

2  background, starting from college.

3     A.    My first two years of college were at East

4  Tennessee State University in Johnson City, Tennessee.  And

5  then I finished my degree at Middle Tennessee State

6  University in Murfreesboro, Tennessee.  I graduated with a

7  degree in criminal justice with minors in psychology,

8  sociology, and political science.  Subsequent to that, I did

9  post-graduate work at Southeastern Paralegal Institute,

10  which is now called something else.  I received a paralegal

11  certificate.  Then years later in 2007, I started the MBA

12  course and finished my MBA course in 2009.

13    Q.    When did you start working in the insurance

14  industry?

15    A.    1997, September of '97.

16    Q.    And who did you start working for?

17    A.    Safeco.

18    Q.    Safeco?

19    A.    Yes.

20    Q.    And what position were you in at Safeco?

21    A.    I was the casualty claims adjuster.

22    Q.    Okay.  And how long did you work at Safeco?

23    A.    Four years.

24    Q.    Okay.  That's roughly 2001?

25    A.    Yes, sir.

Page 12

1     Q.    And what happened after 2001?

2     A.    In 2001 I went to a -- I went to a company that

3  was a nonstandard auto that unfortunately turned into about

4  two weeks or three weeks of employment; and they immediately

5  reshuffled.  And then I went from there to RISCO, which was

6  a subsidiary at the time of CNA.  And then in my course

7  there, RISCO was absorbed back into and I just became CNA.

8     Q.    Okay.  And what was your title at CNA?

9     A.    I was just a claims rep, claims representative.

10    Q.    Was this -- what kind of line of coverage was

11  that?

12    A.    RISCO was a TPA.

13    Q.    Okay.

14    A.    And we served as the TPA for a restaurant chain

15  in Nashville, and we handled their SIR up to seven hundred

16  and fifty thousand.

17    Q.    So how long did you stay at CNA?

18    A.    Two years.

19    Q.    And what happened after 2003?

20    A.    I went to Harleysville.

21    Q.    Okay.  And what was your position at

22  Harleysville?

23    A.    My initial position was a Claims Rep III.  It was

24  a -- I did auto claims for a specific book of business out

25  in California.  It was -- it was meant to be a temporary

Page 13

1  assignment and it was.  But then when that assignment

2  finished in 2004, they transferred me into the construction

3  defect unit where I became a construction defect specialist.

4     Q.    Okay.  Roughly, can you tell me when you became a

5  construction defect analyst?

6     A.    It would have been probably May of 2004.

7     Q.    Were you assigned any specific states or regions

8  at that time?

9     A.    It was a regional company, and we were

10  responsible for all the states that we had claims in.

11    Q.    Okay.

12    A.    So it was not --

13    Q.    Would Florida have been one of them?

14    A.    Florida was one.

15    Q.    Okay.  Do you recall how many claims you had in

16  Florida?  Was it --

17    A.    Lots of claims.

18    Q.    -- lots of claims?

19    A.    I'm sorry.

20    Q.    But you adjusted claims in Florida?

21    A.    Yes, sir.

22    Q.    Okay.  And how long were you at Harleysville?

23    A.    I was at Harleysville until 2011.

24    Q.    Okay.  And what did you do after 2011?

25    A.    In 2011 I went to work for Fireman's Fund as a

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                            Pages 14..17

Page 14

1  claims representative. ·
2      Q.    And were you --
3      A.    I'm sorry.
4      Q.    I'm sorry.  Go ahead.
5      A.    I think I made a mistake.  When I said my title
6  previously and I said Claims Rep III, that was Fireman's
7  Fund.  Claims representative was . . .
8      Q.    Okay.  And what did that position entail, Claims
9  Rep III?
10     A.    It was construction defects.  Again, anywhere
11  there was a claim, but primarily those claims were in
12  California; but I did have Florida claims during that tenure
13  as well.
14     Q.    When you say "construction defect," I presume
15  you're -- you were handling commercial general liability
16  policies?
17     A.    For the most part, yes.
18     Q.    Okay.  Any umbrella policies or --
19     A.    Umbrella policies as well.
20     Q.    Okay.  So how long did you stay at Fireman's
21  Fund?
22     A.    I stayed at Fireman's Fund until 2017.
23     Q.    All right. ·
24     A.    Which is when I came to FCCI and National Trust.
25     Q.    Okay.  All right.  And what's your position right

Page 15

1  now?
2      A.    I am an MCU specialist.
3      Q.    Major case unit?
4      A.    Yes, sir, specialist.
5      Q.    And is that also for construction defect?
6      A.    Primarily, yes.
7      Q.    Okay.  Okay.  All right.  Are you now just -- are
8  you now primarily adjusting claims in Florida?
9      A.    Primarily.  I wouldn't say primarily, but it
10  makes up a significant number of my pending.
11     Q.    Okay.  Do you have any special licenses?
12     A.    I have licenses in various states.  I can list
13  them, if you wish?
14     Q.    Are you licensed in Florida?
15     A.    I am.
16     Q.    Okay.  Is it in good standing?
17     A.    It is.
18     Q.    Do you have a law degree?
19     A.    I do not.
20     Q.    Okay.  But you were licensed at some point in
21  time as a paralegal?
22     A.    I had a certificate.
23     Q.    Okay.  Do you still have the certificate, or no?
24     A.    It's a certificate.  It's not something you have
25  to renew.

Page 16

1      Q.    Okay.  All right.  Before we get started -- I
2  apologize for being a little inedlicate in this -- are you
3  under any medication right now that would prevent you from
4  truthfully testifying in this matter?
5      A.    I am not.
6      Q.    Okay.  And, again, I apologize for this --
7      A.    You don't have to apologize.  I don't even mind.
8  If you want to know, I can tell you.
9      Q.    No.  I assume you have no felony convictions or
10  anything like that?
11     A.    Oh, no.
12     Q.    All right.  And you are familiar with the
13  National Trust Insurance Company policy that was issued for
14  TSG in this matter?
15     A.    Yes, sir.
16     Q.    Now, in preparation for this deposition, did you
17  review any documents?
18     A.    I did.
19     Q.    Okay.  And which documents did you review?
20     A.    I reviewed numerous documents, all of which are
21  referenced in my notes, as far as the Bates stamps.  But
22  they included the final order.  I reviewed an order in the
23  underlying DJ that was dated 9/27.  I reviewed the hundreds
24  of pages of emails.  I reviewed various depositions.  I
25  reviewed the policies.  I reviewed communications between

Page 17

1  various parties for inspections of water damage and things
2  like that.
3      Q.    Which depositions did you review, if you recall?
4      A.    I reviewed a lot of depositions.  I reviewed -- I
5  know I reviewed the deposition for the Amerisure rep.  I
6  reviewed depositions for -- I apologize.  I don't know if I
7  can name the names right offhand.  If I cited a fact from
8  them, I would have put the Bates stamp.
9      Q.    Okay.
10     A.    The Bates stamp is in here.
11     Q.    All right.  And I presume you met with your
12  attorney during this review process or did you do this by
13  yourself?
14     A.    No.  I met with my attorney.
15     Q.    Okay.  And how long did you meet with him?
16     A.    I had a phone call meeting on Tuesday for about
17  an hour.  I had a second phone call meeting on Wednesday for
18  about three hours.  And then I had an in-person meeting with
19  Mr. Bickerton yesterday for about four hours.
20     Q.    Okay.  All right.  So based on your review of
21  documents, I take it you're familiar with the Evergreen
22  Plaza project?
23     A.    Yes.
24     Q.    Okay.  And when did you become familiar with the
25  project?

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                                    Pages 18..21

Page 18

1    A.    As far as the project at issue here?
2    Q.    Yes.
3    A.    I was familiar with the project, in that I had
4  seen it in the TSG claims file.  I became the assigned
5  adjuster for this file in July of last year.
6    Q.    Do you know the adjuster that was assigned prior
7  to that?
8    A.    I do.
9    Q.    What's his name?
10   A.    Matthew Inman.
11   Q.    All right.  And did you have any conversations
12 with Mr. Inman with respect to the Evergreen Plaza project
13 before it was assigned to you?
14   A.    I have not.
15   Q.    So are you familiar with TSG's work on the --
16 when I say project, I mean the Evergreen project -- on the
17 project?
18   A.    I am.
19   Q.    Okay.  And you became familiar by reviewing the
20 documents in twenty -- in July of 2019?
21        MR. BICKERTON:  Form.  What --
22 BY MR. BALICE:
23   Q.    How did you become familiar with the project?
24   A.    Well, you know, I did a cursory review of the
25 file when it was assigned to me to understand what role my

Page 19

1  insurer played in the loss.
2    Q.    Did you have any conversations with TSG's
3  personnel regarding the project?
4    A.    I did not.
5        MR. BICKERTON:  I'm sorry.  For preparing for
6  this deposition or at any point?
7  BY MR. BALICE:
8    Q.    In July of 2019?
9    A.    I did not.  Sorry.
10   Q.    What about in preparation for this deposition?
11   A.    I did not.
12   Q.    Okay.  Have you ever spoken with anyone from TSG?
13   A.    I have not.
14   Q.    Okay.  Did you have any conversations with
15 anybody from Auchter in July of 2019 with respect to the
16 project?
17   A.    I have not.
18   Q.    Did you have any conversations with Arch in July
19 of 2019 with respect to the project?
20   A.    I have not.
21   Q.    Okay.  Have you had any conversations with either
22 Auchter or Arch personnel regarding this matter?
23   A.    My what?
24   Q.    Regarding the project or the lawsuit?
25   A.    Who?

Page 20

1        MR. BICKERTON:  Form.
2        THE WITNESS:  Oh, you said Auchter?
3  BY MR. BALICE:
4    Q.    Yeah.
5    A.    I apologize.  I have not.
6    Q.    Okay.  Based on your review of the material, do
7  you recall when National Trust Insurance Company received a
8  tender from TSG on this matter?
9        MR. BICKERTON:  Form.
10       MR. BALICE:  Let me rephrase that.  Strike that
11 question.
12 BY MR. BALICE:
13   Q.    Do you recall the initial tender date of the --
14 strike that question again.
15       You're familiar there was a lawsuit filed by RAP,
16 Riverside Avenue Partners, against Auchter and Arch; is that
17 correct?
18   A.    That is correct.
19   Q.    And then there was a third party complaint filed
20 by Auchter and Arch against TSG; are you familiar with that?
21   A.    I am.
22   Q.    Okay.  At some point in time, TSG provided notice
23 to National Trust Insurance Company of their lawsuit.  And
24 for ease of reference, I'm going to say the RAP lawsuit; are
25 you familiar with that?

Page 21

1    A.    I am.
2    Q.    Okay.  Do you know the date of when the first
3  notice was provided?
4    A.    On September 21st, 2010.
5    Q.    At that time, what did -- in response to that
6  tender, what did National Trust Insurance Company do?
7        MR. BICKERTON:  I'm going to object and instruct
8  him not to answer that.  Can you limit it to the facts
9  or the events that took place?
10       MR. BALICE:  Sure.
11       MR. BICKERTON:  I think it's just a little too
12 broad.
13 BY MR. BALICE:
14   Q.    So you testified at -- on 9/21/2010, TSG sent a
15 tender notice, or tendering notice, to National Trust
16 Insurance Company of the RAP lawsuit?
17   A.    No.  On 9/21/2010, we received a fax from TSG's
18 broker for the lawsuit.
19   Q.    Let's mark this as Exhibit 2.  Is that the first
20 notice that you received from TSG or from the broker?
21   A.    This is the earliest notice in the claims file.
22             (Plaintiffs' Exhibit 2 was marked
23                    for identification.)
24   Q.    Okay.  And you said it's from Johnson & Bryan,
25 and who was Johnson & Bryan?

Page 22

1      A.    Johnson & Bryan is the broker.
2      Q.    Okay.  Let's set put that one aside real quick.
3  Let's mark these as Exhibits 3 and 4.
4            Let the record reflect I've given the witness
5  what's marked as Exhibit 3, a letter dated August 11, 2010,
6  from a Taylor Day law firm to TSG Industries, Inc.
7            Exhibit 4 is a letter dated August 30, 2010, from
8  a Taylor Day law firm to TSG Industries, Inc.  Were these
9  two documents present in the claim file?
10           MR. BICKERTON:  I'm going to object and instruct
11  him not to answer.
12                      (Plaintiffs' Exhibits 3 and 4 were
13                       marked for identification.)
14  BY MR. BALICE:
15     Q.    Are you familiar with those letters?
16     A.    I'm familiar with this letter.
17     Q.    That's the -- which one is that?
18     A.    8/11/2010.
19     Q.    Okay.  And how did you become familiar with that
20  letter?
21     A.    It's attached to the claim notice, this letter
22  is.
23     Q.    Which claim notice is that?
24     A.    The claim notice that we got faxed to us.
25     Q.    Okay.  All right.  And your understanding was

Page 23

1  that the Taylor Day law firm was representing Auchter at the
2  time?
3      A.    Well, that's what the letter says.
4      Q.    Okay.  But is your understanding that, at some
5  point in time, National Trust Insurance Company received a
6  copy of that letter, correct?
7      A.    This letter was --
8            MR. BICKERTON:  Form.  Sorry.
9            THE WITNESS:  No.  This letter is in the claims
10  file attached to that notice.
11  BY MR. BALICE:
12     Q.    Okay.  And National Trust Insurance Company
13  received -- received a copy of the original complaint that
14  was attached to the notice, correct?
15     A.    There is a complaint attached to the claim notice
16  in the claims file, but this one had a couple of markings in
17  it that I don't -- I didn't recognize.
18     Q.    It was -- I'm getting there.
19     A.    Okay.
20     Q.    All right.  So the -- the 9/21/2010 facsimile
21  from Johnson & Bryan was the first notice of the pending
22  litigation?
23     A.    That I am aware of, yes.
24     Q.    Okay.  Now, in response -- if you can direct your
25  attention to Exhibit 4, have you seen -- did you see that

Page 24

1  letter before or no?
2      A.    I do not recall seeing this letter.
3      Q.    Okay.  Now if you -- if you look at that letter,
4  it says -- on Exhibit 4 it says there is an inspection that
5  was going to proceed on the property.  Do you see that on
6  the second paragraph, "An inspection of the project has been
7  scheduled for September 9 at 9:00 a.m. starting in the lobby
8  of the building."  Do you see that?
9      A.    I do see that.
10     Q.    Okay.  Do you know if National Trust Insurance
11  Company sent anyone, as part of the inspection process?
12     A.    No.
13     Q.    Okay.  Let's mark this as Exhibit 5.  Before we
14  get to Exhibit 5, if you can go back to the facsimile.  I
15  think that's Exhibit 2.  And the -- on this -- I'm just
16  going to read off the Bates stamp number.  It's Bates Stamp
17  No. FCCI 009141.  It says, "description of occurrence."  Do
18  you see that?
19     A.    Uh-huh.
20                      . (Plaintiffs' Exhibit 5 was marked
21                        for identification.)
22     Q.    Is that something that the insurance agent wrote
23  or was that something from someone from National Trust
24  Insurance Company?
25     A.    I can't testify to who wrote it, other than the

Page 25

1  fact that this is the claim reported to us.  It would not
2  have been FCCI that wrote that.
3      Q.    Okay.  And if you can turn to Bates Stamp No.
4  FCCI 009145, which is paragraph seventeen of -- paragraph
5  seventeen of the complaint.  There's certain markings on --
6  in that paragraph.  Was that somebody at FCCI that did that
7  or somebody else, if you know?
8      A.    I do not know.
9      Q.    Okay.  All right.  Let's turn to Exhibit No. 5.
10  Are you familiar with this letter?
11     A.    I am.
12     Q.    Okay.  And what is this letter?
13     A.    This is a response to a 627 -- what we call a 627
14  request where they request information regarding the policy.
15     Q.    For the record, I've shown a letter to the
16  witness dated September 23rd, 2010.  It appears it's from
17  FCCI Insurance Group.  It's signed by Paul Healy as a
18  general adjuster in casualty.  So this letter would have
19  been sent in response to a request from the -- from Auchter?
20     A.    This letter was sent to Christopher Mueller.
21     Q.    Yeah.  Now, you see three lines down, it says,
22  "Date of Loss:  November 02, 2007," under "RE:"?
23     A.    Oh, yes.
24     Q.    Okay.  And what is -- what is that based on?
25     A.    The system can only capture a claim if it has a

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                                    Pages 26..29

Page 26

1  policy period in place.. And in a situation where you don't
2  know what the date of loss is or the date of loss precedes
3  the policy as it did here, it defaults to the first day of
4  the policy.
5        Q.    And when you said that the "date of loss precedes
6  the policy," what is that based on, your statement?
7        A.    Well, the complaint itself talked about
8  substantial, starting in December 2006.
9        Q.    Was that the complaint attached as --
10       A.    It's the one you just handed me.
11       Q.    It's Exhibit 2?  Exhibit 2?
12       A.    Yes.
13       Q.    Okay.  And you're referring to paragraph
14  seventeen?
15       A.    Yes.
16       Q.    Okay.  But also the complaint alleges other -- if
17  you can go back to -- sorry for jumping around a bit.
18       A.    That's all right.
19             MR. BICKERTON:  I'm sorry.  Did you say
20       seventeen?
21  BY MR. BALICE:
22       Q.    Yeah.  When was the last time that you reviewed
23  this complaint?
24       A.    This complaint?
25       Q.    Yep.

Page 27

1        A.    Wednesday.
2        Q.    Wednesday.  And you would agree with me that
3  there's other allegations besides the December 25, 2006,
4  water event?
5             MR. BICKERTON:  Form.
6             THE WITNESS:  I agree that there's a lot of dates
7        being referenced in a lot of different ways in here.
8        The earliest one that I saw was 2006.
9  BY MR. BALICE:
10       Q.    But there's also -- would you agree with me that
11  there's also allegations of water intrusion in other -- in
12  other periods of time?
13             MR. BICKERTON:  Form.  I'm going to instruct him
14        not to answer that.
15             MR. BALICE:  What's the basis?
16             MR. BICKERTON:  The basis is you're asking him to
17        review this and look at the policy interpretation, and
18        what's the basis for that?
19  BY MR. BALICE:
20       Q.    Let me ask you to go to paragraph twenty-four,
21  it's FCCI 009145.  Do you see that, paragraph twenty-four of
22  the complaint?
23       A.    Yes, sir.
24       Q.    Okay.  Can you please read that to yourself?
25       A.    Yes, sir.

Page 28

1        Q.    Okay.  Would you agree that paragraph states,
2  "Notwithstanding RAP's ability to eventually move tenants
3  into the building, the building continued to have leaks and
4  water intrusion after tenant occupancy.  Water intrusion
5  continues to occur in all areas of the building with
6  significant amounts occurring on the 11th and 12th floors,
7  the location of RAP's largest tenant, Everbank."  Would you
8  agree with me that that paragraph references other water
9  intrusions besides the December 2006 water event?
10       A.    The paragraph speaks for itself.
11       Q.    Okay.  Thank you.  Now let's go back to Exhibit
12  No. 5.  Paragraph four says, "A statement of any policy or
13  coverage defense which such insurer reasonably believes is
14  available to such insurer at the time of the filing such
15  statement:  Manifestation may have occurred outside National
16  Trust's policy term."  Can you tell me why the term
17  "manifestation" is used?
18             MR. BICKERTON:  Objection.  I'm going to instruct
19        him not to answer..
20  BY MR. BALICE:
21       Q.    FCCI wrote the letter, correct?
22       A.    FCCI did write the letter.
23       Q.    Can you let me know why they use the term
24  "manifestation"?
25             MR. BICKERTON:  I'm going to object and instruct

Page 29

1  him not to answer.
2             MR. BALICE:  I'm going to certify the question
3        for the court.
4  BY MR. BALICE:
5        Q.    Do you know if the term "manifestation" was being
6  used based on the application of Florida law?
7             MR. BICKERTON:  I'm going to object and instruct
8        him not to answer.
9             MR. BALICE:  Go ahead and certify the question.
10  BY MR. BALICE:
11       Q.    Do you know if that coverage position was based
12  on TSG's coverage position, with the use of the word
13  manifestation, was based on the possible application of
14  Florida law at the time?
15             MR. BICKERTON:  I'm going to object and instruct
16        him not to answer.
17             MR. BALICE:  I'm going to go ahead and certify
18        the question.
19  BY MR. BALICE:
20       Q.    Let's mark this as Exhibit 6.  Let the record
21  reflect that I have provided the witness a letter dated
22  September 23rd, 2010, from FCCI to the Taylor Day law firm.
23  Have you ever seen this document before?
24       A.    Yes.
25             (Plaintiffs' Exhibit 6 was marked

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                              Pages 30..33

Page 30

1           for identification.)

2      Q.   Okay.  If you look at the second to the last

3  paragraph, it says, "To confirm, a representative of FCCI

4  will attend the inspection along with a representative of

5  FCCI."  Do you know if FCCI attended the inspection?

6      A.   I do not recall.

7      Q.   Do you know if they sent an engineer or anything

8  of the like?

9      A.   I do not recall.

10     Q.   Okay.  Do you know if they sent an independent

11 adjuster?

12     A.   I do not recall any attendance.  I just don't

13 recall at the moment.

14     Q.   Okay.  Do you know if at that inspection anybody

15 from -- anyone from FCCI spoke with anyone from TSG?

16     A.   I do not.

17     Q.   Okay.  Would records of an inspection been

18 included in your claim file?

19          MR. BICKERTON:  Form.  One second.  Can you read

20     that back, please?

21          (WHEREUPON, THE LAST QUESTION WAS READ BACK.)

22          MR. BICKERTON:  I'm going to instruct him not to

23     answer that one.

24          MR. BALICE:  I'm going to rephrase the question.

25 BY MR. BALICE:

Page 31

1      Q.   Would records of the inspection referenced in

2  your letter of September 23rd, 2010, would that have been

3  included in your claim file?

4          MR. BICKERTON:  I'm going to object and instruct

5     him not to answer.

6          MR. BALICE:  Okay.  We'll also certify the

7     question.

8  BY MR. BALICE:

9      Q.   Is it the -- is it the procedure of FCCI to send

10 representatives to inspections such as referenced in this

11 letter?

12     A.   Define procedure.

13     Q.   So this letter states that a representative of

14 FCCI was going to attend an inspection.  Routinely, as a

15 matter of business course, would FCCI, would they send --

16 would they send somebody there?

17          MR. BICKERTON:  I'm going to pose a form

18     objection.  It's outside of the scope of the notice.

19          THE WITNESS:  Answer?

20          MR. BICKERTON:  Yes.

21          THE WITNESS:  There's no requirement that it be

22     done.

23 BY MR. BALICE:

24     Q.   But FCCI wouldn't say to an insured they were

25 going to send someone, or to another party that they were

Page 32

1  going to send someone, for an inspection and then not send

2  that person?

3          MR. BICKERTON:  Objection.  Form.

4          THE WITNESS:  If I say I'm going to do something,

5     I do it.

6  BY MR. BALICE:

7      Q.   Okay.  And you're testifying on behalf of

8  National Trust Insurance Company.  Can you say the same on

9  behalf of National Trust Insurance Company?

10     A.   I can say on behalf of National Trust Insurance

11 Company that --

12          MR. BICKERTON:  I'm sorry.  Objection to the form

13     again.  Go ahead.

14          THE WITNESS:  I can say that on behalf of

15     National Trust Insurance Company, we tell our adjusters

16     that if you say you're going to do something, you do

17     it.

18 BY MR. BALICE:

19     Q.   All right.  Thank you.  Let's mark this as

20 Exhibit No. 7.  Mr. Harris, have you seen that document

21 before?

22     A.   Yes, I have.

23          (Plaintiffs' Exhibit 7 was marked

24          for identification.)

25     Q.   Okay.  And now for the record, I've handed the

Page 33

1  witness a letter from FCCI to a Taylor Day law firm,

2  specifically attorney Christopher Mueller, dated December 9,

3  2010.  The signatory on the letter is Paul Healy, a general

4  adjuster of casualty -- general adjuster of casualty for

5  FCCI.  And what is this document?

6      A.   This is a letter to Mr. Mueller denying Auchter's

7  request to be listed -- to be considered an additional

8  insured under the policy.

9      Q.   Okay.  And when did you become familiar with this

10 document?

11     A.   The first time I read this letter was this week.

12     Q.   It would have been Tuesday or Wednesday of this

13 week?

14     A.   (Witness indicated.)

15     Q.   Was that a yes?

16     A.   Yes.  I apologize.  Yes.

17          MR. BICKERTON:  Remember to make speaking --

18          THE WITNESS:  Yes.  Yes.  The guy on the camera

19     knew I said yes.

20 BY MR. BALICE:

21     Q.   Now, you said this was a denial letter, you said?

22     A.   Yes, sir.

23     Q.   Okay.  And denial letter to who?

24     A.   It was written to Christopher Mueller, and it's

25 in response to a tender by Auchter' to be an additional

**Page 34**

1  insured under TSG's, our insured's, general liability
2  policy.
3       Q.   And do you know if there was any other letters,
4  either prior or after this letter, denying coverage on
5  behalf of Auchter?
6       A.   I know there were other letters discussing
7  Auchter's additional insured tender.
8            MR. BICKERTON:  I'm just going to pose a form
9       objection to that.
10 BY MR. BALICE:
11      Q.   But as far as you know, this is a first denial
12 from National Trust Insurance Company to Auchter?
13           MR. BICKERTON:  Form.
14           THE WITNESS:  I don't recall a prior letter than
15      this one.
16 BY MR. BALICE:
17      Q.   Great.  Okay.  If you can turn to page -- I think
18 it's -- I'm just going to say the Bates number here -- FCCI
19 000006.  It's the second to the last page.  You see halfway
20 through -- halfway through the letter it references two
21 endorsements, CGL 026, "Additional Insured Automatic Status
22 - Owners, Lessees Contractors which applies to ongoing
23 operations." Did I read that correctly?
24      A.   Yes.
25      Q.   Okay.  And then it references a second

**Page 35**

1  endorsement, CGL 055, blanket additional insured - when
2  required in a written contract with an insured. "Who is an
3  insured is amended to include any organization for whom the
4  insured is performing operations when there is an agreement
5  that the organization be listed as an additional insured.
6  Such organization will be an additional insured but only for
7  the negligent actions of the insured, or the insured's subs,
8  which cause liability to be imposed on the organization."
9  Did I read that correctly?
10      A.   Yes.
11      Q.   Okay.  And those are the only two additional
12 insured endorsements referenced in this letter?
13      A.   Yes.
14      Q.   Okay.  And you would agree with me there is no
15 other insurance language addressed in this letter?
16           MR. BICKERTON:  Form.
17           THE WITNESS:  The letter speaks for itself.
18 BY MR. BALICE:
19      Q.   Okay.  But you agree that there's no other
20 reference to any other insurance language in this letter?
21      A.   There doesn't appear to be.
22           MR. BICKERTON:  Form.
23           THE WITNESS:  Yeah.
24 BY MR. BALICE:
25      Q.   I'm sorry.  What was your answer?

**Page 36**

1       A.   There doesn't appear to be.  That's all I see.
2       Q.   Okay.  So the third paragraph -- I guess it's
3  more than the third paragraph.  It's the eighth paragraph
4  down.  It's right below the policy language I just read.  It
5  says, "Since TSG's scope of work was substantially
6  completed, endorsement CGL 026 would not apply." Do you
7  know what that statement is based on?
8            MR. BICKERTON:  Are you asking for the factual
9       basis?
10 BY MR. BALICE:
11      Q.   For the factual determination of that?
12      A.   We rely on the fact that the insured's work
13 appears to have been finished well before the inception of
14 the policy.
15      Q.   And what is that based on, exactly?
16      A.   I apologize.  I thought I had that tabbed.  Give
17 me just one second.
18      Q.   Okay.
19      A.   We rely on the fact that on -- I seem to be
20 missing a page.  I'm missing page ten.  Sir, you might want
21 to check your copy and make sure you have a page ten of the
22 notes I gave you; mine was missing.
23           Okay.  So we rely on the fact that on "5/3/2007
24 subcontractor status report lists TSG's glass and glazing
25 work as fully invoiced, all that remains is a $998.91

**Page 37**

1  balance." And that again on "8/17/2007 application for
2  payment states that the glass and glazing work was 100%
3  complete" by July 31st, 2007.  It also shows that CO14 and
4  PO014, change orders, was 100% completed at that time.
5       Q.   Okay.  Thank you.  All right.  And the next
6  paragraph underneath there says, "Under Schedule F of the
7  subcontract, general insurance information and requirements
8  #3 does require Auchter" -- Auchter is misspelled -- "be
9  added as an AI on GL, auto and excess policies." Did I read
10 that correctly?
11      A.   That's what the letter says.
12      Q.   Okay.  And you agree that the subcontract
13 required, at least in this letter, that FCCI -- that
14 National Trust Insurance Company maintains the position that
15 the contract required Auchter to be added as an AI on its GL
16 policies?
17           MR. BICKERTON:  Form.  I'm going -- again, are
18      you asking for the facts that support that or what
19      FCCI's position is?
20 BY MR. BALICE:
21      Q.   Well, FCCI's position, at least on December 9,
22 2010, was that the subcontract required Auchter to be added
23 in as an AI on the policy; is that correct?
24           MR. BICKERTON:  Form.
25           THE WITNESS:  I can't dispute that's what the

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                    Pages 38..41

Page 38

1    letter says.
2    BY MR. BALICE:
3        Q.   Okay.  The next paragraph says, "However, Auchter
4    will be an AI only for the negligent actions of TSG which
5    cause liability to be imposed on Auchter without fault on
6    the part of Auchter.  They would also be an additional
7    insured if the partial negligence of Auchter combines with
8    the partial negligence of TSG in causing the accident at
9    issue."  Did I read that correctly?
10       A.   You did.
11       Q.   Okay.  And that paragraph, I presume, is
12   referring to the language in the CGL 055 [12/05] blanket
13   additional insurer endorsement?
14            MR. BICKERTON:  Objection.  I'm going to instruct
15       him not to answer.
16   BY MR. BALICE:
17       Q.   Okay.  So what is that paragraph referring to; do
18   you know?
19            MR. BICKERTON:  Again, I'm going to object and
20       instruct him not to answer.  You're asking for the
21       facts FCCI relies on for that statement.
22   BY MR. BALICE:
23       Q.   I'm asking what's the basis for that statement?
24   Are you relying on the policy, on some other -- some other
25   internal guideline?

Page 39

1            MR. BICKERTON:  Again, I'm going to object and
2        instruct him not to answer, to the extent FCCI's legal
3        basis for that is included in the question.
4    BY MR. BALICE:
5        Q.   What is the factual basis for the statement I
6    just read?
7        A.   The factual basis would be that the adjuster is
8    referencing, paraphrasing really, language that is in the
9    endorsement that he didn't actually put in the letter.
10       Q.   You mean that he put in the letter?
11       A.   Well, the author of this letter wrote that
12   statement, obviously.  The statement speaks for itself of
13   what he said.  The letter -- the language that is used in
14   this statement appears to be similar to the language that
15   would be contained in the endorsement.
16       Q.   All right.  Now, it says in -- the next statement
17   says, No claims of negligence -- that's in the letter.  "No
18   claims of negligence have been made against TSG and the
19   insured is not party to a lawsuit.  Since there are no
20   claims of negligence, Auchter cannot be held vicariously
21   liable and therefore they would not be an additional insured
22   under CG 055 or under CGL 026."  Are you familiar with those
23   two additionally insured endorsements?
24       A.   I am.
25       Q.   Okay.  Specifically to CG 055, does it contain

Page 40

1    language stating claims of negligence?
2        A.   It does.
3        Q.   It says claims of negligence?
4        A.   It says -- I apologize.  No.  It does not say
5    that.
6        Q.   Okay.  What does it say?
7        A.   It says your negligent actions.
8        Q.   But it doesn't say the claims of negligence,
9    correct?
10       A.   No.
11       Q.   Okay.  Is negligent actions a defined term under
12   that endorsement?
13            MR. BICKERTON:  I'm going to object and instruct
14       him not to answer.
15            MR. BALICE:  I'm going to certify that question.
16   BY MR. BALICE:
17       Q.   You agree that there is no definition sections in
18   the endorsement CGL 55, correct?
19            MR. BICKERTON:  Do you have a copy of the policy?
20            MR. BALICE:  Yeah.  Let's mark this as Exhibit 8.
21            MR. BICKERTON:  I'm sorry.  Do you mind reading
22       back the last question?
23            THE WITNESS:  Oh, I apologize.  Are you waiting
24       on me?  I'm sorry.  I thought you were going to --
25            MR. BALICE:  No.  Go ahead.

Page 41

1            (WHEREUPON, THE LAST QUESTION WAS READ BACK.)
2            THE WITNESS:  I do agree with that.
3                      (Plaintiffs' Exhibit 8 was marked
4                      for identification.)
5    BY MR. BALICE:
6        Q.   Okay.  So would you agree that negligent action
7    is an undefined term?
8            MR. BICKERTON:  Form.
9            THE WITNESS:  That specific term is undefined,
10       yes.
11   BY MR. BALICE:
12       Q.   Okay.  So do you know -- going back to Exhibit 7,
13   do you know why this particular adjuster, Mr. Healy, was
14   using the term "no claims of negligence" in this letter?
15            MR. BICKERTON:  I'm going to object and instruct
16       him not to answer.
17            MR. BALICE:  I'm going to certify the question.
18   BY MR. BALICE:
19       Q.   But do you agree with me that claims of
20   negligence and negligent actions are different terms?
21            MR. BICKERTON:  I'm going to object and instruct
22       him not to answer that.
23            MR. BALICE:  I'm going to go ahead and certify
24       that question.
25   BY MR. BALICE:

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020
Pages 42..45

Page 42

1    Q.   Now, the second part of this, still pointing on
2  paragraph -- in the paragraph that I was reading before on
3  FCCI 000006, it says, "No claims of negligence have been
4  made against TSG and the insured is not a party to a
5  lawsuit." I just presume that this -- that this letter was
6  sent before the third party complaint was filed against TSG;
7  do you know?
8    A.   Do you have a copy of the third party complaint?
9    Q.   I'll go ahead and actually withdraw that
10 question.
11        Now, at some point -- at some point in time, are
12 you aware if National Trust Insurance Company agreed to
13 defend TSG?
14    A.   Yes.
15    Q.   Okay. Do you recall when they accepted the
16 defense of TSG?
17    A.   That would have been sometime around
18 November 7th, 2010.
19    Q.   Did they appoint -- did National Trust Insurance
20 Company issue a reservation of rights letter to TSG when
21 they accepted the defense?
22    A.   If they had, it would have been produced.
23    Q.   Okay.
24    A.   I'm suddenly drawing a complete blank. I'm
25 sorry.

Page 43

1        MR. BALICE:  Off the record.
2        (WHEREUPON, AN OFF-THE-RECORD DISCUSSION WAS HAD.)
3  BY MR. BALICE:
4    Q.   Mr. Harris, do you know if TSG issued a
5  reservation of rights when they agreed to defend TSG in the
6  RAP lawsuit?
7    A.   Do you mean if -- not TSG, but NTIC?
8    Q.   That's right. That's right.
9    A.   I can't recall the moment, sitting here.
10   Q.   Okay. Do you know if a reservation of rights
11 letter has been produced in this case?
12   A.   I can't recall.
13       MR. BALICE:  I'm making a request on the record
14   for a copy of that letter.
15 BY MR. BALICE:
16   Q.   Are you aware of any of the defenses that were
17 raised by National Trust Insurance Company when they agreed
18 to defend TSG?
19   A.   At the moment, like I said, I'm just -- I can't
20 recall reviewing a reservation of rights letter.
21   Q.   Do you know if a reservation of rights letter was
22 ever issued?
23   A.   I do not.
24   Q.   You do not know or you do not --
25   A.   I don't recall reviewing one -- that's why I'm

Page 44

1  trying to go through my head -- of all the documents I
2  reviewed.
3    Q.   And if a reservation of rights letter was issued,
4  it would have been in the material that you have reviewed?
5        MR. BICKERTON:  Form. If you know?
6        THE WITNESS:  I would think. I don't know.
7  BY MR. BALICE:
8    Q.   Do you know the reason why -- the reason or basis
9  that National Trust Insurance Company agreed to defend TSG?
10   A.   Repeat the question.
11   Q.   Do you recall the basis that -- do you recall the
12 reason why National Trust Insurance Company agreed to defend
13 TSG?
14       MR. BICKERTON:  Form.
15       THE WITNESS:  No.
16 BY MR. BALICE:
17   Q.   Did you recall if they relied on the allegation
18 of the complaint to determine if -- when they agreed to
19 defend them?
20       MR. BICKERTON:  Form.
21       THE WITNESS:  No, I don't.
22 BY MR. BALICE:
23   Q.   Okay. Do you recall if they agreed to defend
24 them based on extrinsic evidence?
25       MR. BICKERTON:  Form.

Page 45

1        THE WITNESS:  No.
2  BY MR. BALICE:
3    Q.   When I say "them," I meant TSG. Do you recall if
4  National Trust Insurance Company appointed a defense counsel
5  to defend TSG?
6    A.   I do not.
7    Q.   Is it a custom and practice of National Trust
8  Insurance Company to appoint defense counsel when they agree
9  to defend an insured?
10       MR. BICKERTON:  Objection. Form.
11       THE WITNESS:  Yes. It's . . .
12 BY MR. BALICE:
13   Q.   Okay. So would it have been likely, in this
14 scenario, if National Trust -- would it have been like --
15 would have been like -- strike that.
16       Now, at some point in time, National Trust
17 Insurance Company withdrew from the defense; is that -- is
18 that your understanding?
19   A.   That is correct.
20   Q.   Okay.
21       MR. BICKERTON:  I'm sorry. Of who?
22       MR. BALICE:  Of TSG.
23       MR. BICKERTON:  Okay.
24       THE WITNESS:  Sorry. Yes.
25       MR. BICKERTON:  I know you're eager, just give me

**Page 46**

1   a second.
2           MR. BALICE:  I'm trying to find the actual -- the
3   -- let's go off the record for a second.
4   (WHEREUPON, AN OFF-THE-RECORD DISCUSSION WAS HAD.)
5   BY MR. BALICE:
6       Q.   Let the record reflect that I'm handing the
7   witness a letter that's been marked -- that's dated
8   September 7, 2011, from the Goodman, McGuffey, Lindsey &
9   Johson law firm to TSG Industries, Inc.  And the letter is
10  signed by Robert Darroch, and it's -- the Bates Stamp
11  numbers are FCCI 9957 to 9970.
12          MR. BICKERTON:  I'm just going to make an
13  objection on the record, to the extent it's been
14  highlighted or marked.
15          MR. BALICE:  That's right.  It's just -- it's
16  just the date.
17              (Plaintiffs' Exhibit 9 was marked
18              for identification.)
19  BY MR. BALICE:
20      Q.   Now, what -- are you familiar with this letter?
21      A.   Yes, sir.
22      Q.   And what is it?
23      A.   This is the letter that we -- that was issued to
24  TSG on September 7, 2011, withdrawing from the defense of
25  TSG for the underlying lawsuit.

**Page 47**

1       Q.   And when you withdrew from the defense, do you
2   recall -- do you know whether appointed counsel also
3   withdrew from the defense of TSG?
4       A.   I do not know -- you asked if it was customary
5   and usual that we appoint defense.  And I said yes.  But
6   that doesn't mean it's in every case.  I do not know that we
7   appointed counsel in this case.  I know that they were being
8   defended by Landmark as well, and I'm not sure who appointed
9   counsel.
10      Q.   Okay.
11      A.   It is not a -- it's a custom that we appoint, but
12  it's not every single time.
13      Q.   Do you know if National Trust Insurance Company
14  paid for a portion of the attorney's fees for the defense of
15  TSG?
16          MR. BICKERTON:  Form.
17          THE WITNESS:  There were attorney fees that were
18  paid.
19          MR. BICKERTON:  Do you need a break at all, or
20  are you good?
21          THE WITNESS:  I might be good for a few more
22  minutes.
23          MR. BALICE:  You want to take a break or --
24          THE WITNESS:  I'm good for a few more minutes.
25          MR. BALICE:  We're on ten, right?

**Page 48**

1           MR. BICKERTON:  Correct.
2           THE WITNESS:  Can I slightly modify my last
3   answer?  I want to change that from attorney fees to
4   legal fees.
5   BY MR. BALICE:
6       Q.   Okay.
7       A.   Because as I'm thinking, I know that there were
8   legal fees paid; but I can't sit here under oath and say
9   that they were paid to an attorney.
10      Q.   Do you know approximately how much -- what the
11  amount of legal fees were paid?
12          MR. BICKERTON:  Form.
13          THE WITNESS:  I don't have that -- sorry, I don't
14  have that good of a memory.
15  BY MR. BALICE:
16      Q.   Okay.  During that time that National Trust
17  Insurance Company was defending TSG, do you recall if
18  whoever was the claim adjuster at that time was receiving
19  reports, defense reports, from TSG?
20          MR. BICKERTON:  Form.
21          THE WITNESS:  I do not know that.
22  BY MR. BALICE:
23      Q.   Okay.  Does the claim file have any indication as
24  to whether National Trust Insurance Company was receiving
25  any updates in regards to the RAP litigation?

**Page 49**

1           MR. BICKERTON:  I'm going to object and instruct
2   him not to answer.
3           MR. BALICE:  I'll rephrase it.
4   BY MR. BALICE:
5       Q.   Do you know -- do you have any knowledge whether
6   National Trust Insurance Company's records have any
7   indication that National Trust Insurance Company was
8   receiving updates or status reports or the like from the
9   attorneys defending TSG in regards to the RAP lawsuit?
10          MR. BICKERTON:  Form.
11          THE WITNESS:  I do not know.
12  BY MR. BALICE:
13      Q.   Okay.  Let's go to Exhibit 10.  I've handed you a
14  copy of what's been marked as Exhibit 10, which is the TSG
15  and Auchter subcontract agreement.  Have you reviewed the
16  document?
17      A.   Yes.
18              (Plaintiffs' Exhibit 10 was marked
19              for identification.)
20      Q.   All right.  Have you ever seen this document
21  before?
22      A.   It looks like the subcontract agreement that I
23  reviewed.  Yes.
24      Q.   Okay.  And this would have been the agreement
25  that you reviewed on -- earlier this week?

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                                    Pages 50..53

Page 50

1    A.    Like, Wednesday.
2    Q.    Okay.  If you can turn to -- and you agree this
3  is a subcontract for the curtain wall entered between TSG
4  and Auchter?
5          MR. BICKERTON:  Form.
6          THE WITNESS:  I agree the document speaks for
7    itself.
8  BY MR. BALICE:
9    Q.    Okay.  If you will turn to the last page of this
10 agreement, it's Schedule F; do you see that on top?
11   A.    Yes, sir.
12   Q.    Okay.  I'm going to read the first -- the first
13 paragraph of that -- of the contract.  It states the
14 "subcontractor shall purchase and maintain at the
15 subcontractor's expense the following types and amounts
16 insurance coverage for the life of the subcontract.
17 Subcontractor shall require each of his subcontractors to
18 likewise purchase and maintain at their expense insurance
19 coverage meeting the same limits and requirements as the
20 subcontractors insurance."  Did I read that correctly?
21   A.    You did.
22   Q.    Okay.  And the next paragraph says, "The limits
23 of this insurance shall not be less than the following
24 limits."  And it has, "Commercial General Liability
25 Insurance:  Each occurrence limit $1,000,000."  Did I read

Page 51

1  that correctly?
2    A.    Yes, sir.
3    Q.    Okay.  And then it says toward -- in the same
4  indent.  The paragraph says, "General Aggregate Limit (other
5  than products & completed operations) Applies Per Project."
6  Did I read that correctly?
7    A.    Yes, sir.
8    Q.    Okay.  And it also has a line just on top of that
9  it says, "Products & Completed Operations Aggregate Limit
10 $2,000,000."  Did I read that correctly?
11   A.    Yes, sir.
12   Q.    Okay.  Now, is National Trust Insurance Company
13 contesting that TSG -- let me rephrase that.  Strike that.
14         National Trust Insurance Company is not
15 contesting that TSG was required to procure insurance as
16 referenced in this Schedule F, at least the portion that I
17 read?
18         MR. BICKERTON:  Form.
19         THE WITNESS:  No.  I'm not contesting that.
20 BY MR. BALICE:
21   Q.    Okay.
22   A.    We are not contesting that.
23   Q.    Okay.  So National Trust Insurance Company is not
24 contesting that TSG was required to provide any commercial
25 general liability insurance, correct?

Page 52

1          MR. BICKERTON:  Form.
2          THE WITNESS:  National Trust is not contesting
3    that TSG was required to obtain for itself this
4    insurance.
5  BY MR. BALICE:
6    Q.    That's right.
7    A.    Yeah.
8    Q.    Okay.  Now, the next reference down it says
9  General Information and Requirements; do you see that?
10   A.    Yes, sir.
11   Q.    Okay.  It says, (As Read) Certificates of
12 insurance acceptable to the owner and the subcontractor's
13 insurance must be received within five (5) days of
14 notification of selection and at time of signing subcontract
15 agreement.  All certificates of insurance must contain the
16 following:  coverage afforded under the policies should not
17 be canceled or allowed to expire for thirty -- for at least
18 thirty days prior to the notice being given to Auchter.
19         And number two says -- actually, I'm reading
20 number three.  "General-liability, auto liability, and
21 excess liability shall name the Auchter company as
22 additional insured for all Auchter projects, including
23 complete operations (Form CG2010 1185 edition or
24 equivalent)."  Is that correct?  Did I read that correctly?
25   A.    You did read that correct.  Yes.

Page 53

1    Q.    Okay.  All right.  Is National Trust Insurance
2  Company contesting that TSG was not contractually required
3  to name Auchter as an additional insured?
4          MR. BICKERTON:  I'm going to object.  Can you
5    read that back, please?
6          (WHEREUPON, THE LAST QUESTION WAS READ BACK.)
7          MR. BALICE:  I'm going to rephrase that question.
8    I'm going to strike that question.
9  BY MR. BALICE:
10   Q.    Under the part of this -- of the agreement that I
11 just -- that I just read, National Trust Insurance Company,
12 are they -- is it maintaining in this deposition -- the
13 deposition that TSG was not contractually required to name
14 Auchter as an additional insured?
15         MR. BICKERTON:  I'm going to object and instruct
16   him not to answer.  Are you asking for the full basis,
17   both the factual and legal basis?
18 BY MR. BALICE:
19   Q.    No.  I'm asking what is National Trust's position
20 on whether Auchter qualifies as an additional insured?
21         Is National Trust Insurance Company disputing
22 that under the terms of the contract, TSG was required to
23 provide additional insured coverage to Auchter?
24         MR. BICKERTON:  I think if that is limited to the
25   factual basis that FCCI relies on, that's fine.

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                         Pages 54..57

Page 54

1   Otherwise, I'm going to object and instruct him not to
2   answer.
3        MR. BALICE:  Yes.  It's limited to the factual
4   basis.
5        THE WITNESS:  National Trust is relying on the
6   fact that the subcontractor only requires that TSG
7   provide a certificate of insurance to Auchter, not that
8   it name Auchter as an additional insured on the policy.
9   BY MR. BALICE:
10       Q.   Okay.
11       THE WITNESS:  And with that -- would this be an
12  okay place to take a break or do you want to finish?
13       MR. BALICE:  No.  Let's go ahead and take a
14  break.
15  (WHEREUPON, A BREAK WAS TAKEN FROM 12:14 P.M. TO 12:25 P.M.)
16  BY MR. BALICE:
17       Q.   Going back to Exhibit No. 10, Schedule F, the
18  second to the last paragraph says, "All of the above
19  referenced insurance coverage is required to remain in force
20  for the duration of this subcontract and for the duration of
21  the warranty period."  Did I read that correctly?  Do you
22  see that toward the last --
23       A.   Yes.
24       Q.   Okay.  So is it National Trust's position that
25  even with the language included in the subcontract, there

Page 55

1   was only a requirement to provide a certificate of
2   insurance?
3        MR. BICKERTON:  Form.
4        THE WITNESS:  We rely on -- we rely on the fact
5   that the subcontract requires only that TSG provide
6   certificates of insurance to Auchter.
7   BY MR. BALICE:
8        Q.   Okay.  But you have no opinion one way or the
9   other as to the application of that language that I just
10  read?
11       MR. BICKERTON:  Form.  I'm going -- objection.
12  I'm going to instruct him not to answer.
13       MR. BALICE:  And what's the basis for the -- for
14  the instruction?  Are you claiming some type of
15  privilege?
16       MR. BICKERTON:  It is outside the scope of the
17  notice.  It also conflicts with the order that was
18  entered in this case about the scope of this
19  deposition.  His opinion isn't relevant, particularly
20  in terms of interpreting the policy or the basis of the
21  policy interpretation; the facts that FCCI relies on is
22  appropriate.
23  BY MR. BALICE:
24       Q.   All right.  So let me ask you this:  In making
25  the determination that the National Trust Insurance

Page 56

1   Company's position is that the subcontract only requires a
2   certificate of insurance naming Auchter as an additional
3   insured, did it take into consideration the statements
4   contained in Schedule F stating all of the above referenced
5   insurance coverages required to remain in force for the
6   duration of the subcontract and for the duration of the
7   warranty period?
8        MR. BICKERTON:  Form.
9        THE WITNESS:  The contract says what it says.  We
10  rely on the fact that the subcontract only requires
11  that TSG provide a certificate of insurance to Auchter,
12  not that it name Auchter as an additional insured on
13  the primary or any other basis.
14  BY MR. BALICE:
15       Q.   Are you aware that the district court, in a case
16  styled Amerisure v. Arch, Case No. 3:16-cv-407, found that
17  the TSG subcontract, which is Exhibit 10, in fact did
18  require TSG to be named as an additional insured on TSG's
19  policy and that such coverage was the primary and
20  noncontributory?
21       MR. BICKERTON:  Form.
22       THE WITNESS:  I'm familiar with that lawsuit, but
23  we weren't a party to that lawsuit.
24  BY MR. BALICE:
25       Q.   Okay.  But you're familiar an order was entered

Page 57

1   to that effect?
2        A.   I'm familiar with the lawsuit.  I've --
3        Q.   Okay.
4        A.   I'm not aware of an order being entered.
5        Q.   Okay.  I want to go back to Exhibit 7, which is
6   the December 9, 2010, letter from Paul Healy.
7        MR. BICKERTON:  It's probably this one.  Yep.
8   BY MR. BALICE:
9        Q.   Okay.  I reference to FCCI's 000006.  It's the
10  second to the last page.  If I can just direct your
11  attention to the middle of the page, the paragraph starting,
12  "Under Schedule F of the subcontract, general insurance
13  information and requirements, #3 does require Auchter to be
14  added as an AI on GL, auto and excess policies."  Did I read
15  that correctly?
16       A.   Yes.
17       Q.   Okay.  Now, on December 9, 2010, is it a fair
18  statement to say that the National Trust Insurance Company
19  was taking the position that Schedule F did, in fact,
20  require Auchter to be added as an AI on a GL auto and excess
21  policies?
22       MR. BICKERTON:  Form.
23       THE WITNESS:  On September 2010, this letter was
24  written and that's what the letter says.
25  BY MR. BALICE:

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                    Pages 58..61

Page 58

1    Q.   Okay.  Do you know what changed between December
2    9, 2010, and National Trust Insurance Company's current
3    position in this matter?
4         MR. BICKERTON:  Form.
5         THE WITNESS:  Specifically, no.
6    BY MR. BALICE:
7    Q.   Okay.  All right.  Let's mark this as eleven.
8    Let the record reflect that I've given the witness a copy of
9    Defendants' FCCI and National Trust Insurance Company Answer
10   and Affirmative Defenses to Plaintiffs' Amended Complaint,
11   which has been marked as Exhibit 11 to this deposition.
12   Have you ever seen this document before?
13   A.   I have.
14                    (Plaintiffs' Exhibit 11 was marked
15                    for identification.)
16   Q.   Okay.  And when is the first time you saw this
17   document?
18   A.   This week.
19   Q.   Okay.  Did you have any involvement in the
20   preparation of the affirmative defenses?
21   A.   I did not.
22   Q.   Okay.  And who -- was another individual in
23   National Trust Insurance Company involved in preparing the
24   affirmative defenses?  .
25        MR. BICKERTON:  Form.

Page 59

1         THE WITNESS:  I don't have the knowledge of who
2    that would be.
3    BY MR. BALICE:
4    Q.   Okay.  So your testimony is that someone at
5    National Trust Insurance Company reviewed this document
6    before it was filed?
7         MR. BICKERTON:  Form.
8         THE WITNESS:  I don't have that knowledge.
9    BY MR. BALICE:
10   Q.   Okay.  Was this document filed without National
11   Trust Insurance Company's authorization?
12        MR. BICKERTON:  Form.
13        THE WITNESS:  No.
14   BY MR. BALICE:
15   Q.   Okay.  Did National Trust Insurance Company
16   approve of the filing of the affirmative defenses?
17        MR. BICKERTON:  Form.
18        THE WITNESS:  I don't have personal knowledge of
19        who would have approved it.  It is a customary
20        practice, in adjusting claims, to have these approved
21        before they're filed.
22   BY MR. BALICE:
23   Q.   Okay.  All right.  Let me -- if you can just turn
24   to page twelve of the affirmative defenses -- twelve of the
25   document.  Are you familiar with the first affirmative

Page 60

1    defenses raised in -- raised in this document?
2    A.   Yes, sir.
3    Q.   Okay.  And that's -- for the record, that's
4    affirmative defense -- I'm just going to read the first few
5    sentences.  Paragraph number one, "The National Trust
6    Insurance Company policy and the FCCI policy afford no
7    coverage to Auchter for this matter.  Auchter does not
8    qualify as an additional insured on either policy pursuant
9    to additional insured endorsement CG 55 12 05."  Did I read
10   that correctly -- partial -- my partial recitation of the
11   affirmative defenses?
12   A.   Your partial recitation.  That's correct.
13   Q.   Okay.  And what facts is National Trust Insurance
14   Company is relying to support its affirmative defense?
15   A.   The entirety of the paragraph?
16   Q.   Yes.  The entirety of the paragraph?
17   A.   Well, it goes on to, "TSG was not performing
18   operations."  As we previously discussed, we relied on the
19   fact that the operations were completed before the policy
20   incepted.
21   Q.   If I could just stop you right there.  So with
22   respect to performing operations, you're not disputing that
23   National Trust Insurance Company is not disputing that at
24   some point in time TSG was actually on the project and
25   performing operations?

Page 61

1    A.   No.
2    Q.   Okay.  Go ahead.
3    A.   The "liability was not imposed on Auchter without
4    fault of Auchter for TSG's negligence in the underlying
5    action."  We rely on the facts and the findings set forth in
6    the final judgment for that.
7    Q.   If I may, I'm going to jump in and ask you more
8    questions.  Okay.  So this paragraph B of your affirmative
9    defense number one, paragraph B, says, "liability was not
10   imposed on Auchter without fault of Auchter for TSG's
11   negligence in the underlying action."  Did I read that
12   correctly?
13   A.   Yes.
14   Q.   Okay.  And what was the factual basis for that?
15   A.   Well, the final judgment stated that Auchter
16   "failed to consistently use the specified factory gaskets,"
17   or its subcontractors.  "Auchter had failed to apply any
18   paint although the contract documents required."  Auchter
19   had failed to do ductwork repairs.  "Auchter failed to
20   provide this necessary documentation when it stopped
21   working on the project.  Auchter failed to depict or
22   otherwise describe in its schedule updates how actual events
23   affected the critical path...Importantly, Auchter failed to
24   maintain the daily reports on the project for the first
25   fourteen months.  Auchter and Arch failed to comply with the

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                              Pages 62..65

Page 62

1  contract requirements for the lower canopies, the crowns and
2  medallions and the EFIS panels."
3      Q.   Now, looking -- looking at this -- looking at
4  this paragraph, it says TSG's -- "TSG's negligence."
5  Scratch that question.
6           Is this paragraph referring to TSG's liability or
7  Auchter's liability for the window system or for other
8  portions of the project?
9      A.   I read that this was -- that no fault -- that
10 fault was found on Auchter.  That there was -- that
11 "liability was not imposed on Auchter without fault of
12 Auchter."
13     Q.   Okay.  And you said you're familiar with the
14 final judgment; is that correct?
15     A.   I am.
16     Q.   Okay.  And you are aware that RAP, in the
17 underlying lawsuit, or the RAP litigations, the claims with
18 respect to Auchter and TSG, focus on the window system,
19 correct?
20          MR. BICKERTON:  Form.
21          THE WITNESS:  As I recall reading the final
22     judgment, they talked about more than just the window
23     systems.
24 BY MR. BALICE:
25     Q.   Okay.  But in disputing this action in the

Page 63

1  coverage action between Amerisure and FCCI right now, the
2  issue is really the window system, correct?
3          MR. BICKERTON:  Form.
4          THE WITNESS:  I don't think I quite follow the
5     question.
6  BY MR. BALICE:
7      Q.   Okay.  You're aware that as part of the final
8  judgment, there was an award for the window system entered
9  against Arch and Auchter?
10     A.   I am.
11     Q.   Okay.  And then there were pass-through damages
12 -- do you understand the term pass-through damages?
13     A.   I do.
14     Q.   Okay.
15          -- awarded against TSG for the same amount for
16 the window system.
17     A.   I do.
18     Q.   So when you're -- in your response when you're
19 referring to whatever your notes said about the crowning or
20 other matters, those are outside of the window system; is
21 that -- is that a fair assumption?
22          MR. BICKERTON:  Form.
23          THE WITNESS:  Some are, and some are not.
24 BY MR. BALICE:
25     Q.   Okay.  Which ones are --

Page 64

1      A.   Well, anything talking about the gaskets.  I
2  believe some of the painting issues were related to some of
3  the surrounding window issues.
4      Q.   Okay.  Are you familiar with TSG's affirmative
5  defenses in the RAP underlying litigation?
6      A.   I would not say I'm fully familiar with those.
7      Q.   Okay.  Do you recall ever reviewing them?  I want
8  to mark as Exhibit -- what is that -- 12.
9      A.   If I could see it?
10     Q.   Yes.  I'm going to give it to you right now.
11 This is marked as Exhibit 12.
12     A.   I can't say with certainty that I've read this
13 document.
14          (Plaintiffs' Exhibit 12 was marked
15           for identification.)
16     Q.   Okay.  But are you aware that TSG raised
17 affirmative defenses in the RAP underlying lawsuit?
18     A.   Well, certainly I am, as I read this document.
19     Q.   Okay.  All right.  So I'm -- I want to read
20 verbatim and just let me know if I -- if I read them
21 correctly.
22          "Second Affirmative Defense:  The third party
23 plaintiffs" -- which are Arch Insurance Company and Auchter
24 Company -- "are barred from recovery herein, as to the
25 extent that there is any liability to the plaintiff, same

Page 65

1  would exist because of the fault of Arch/Auchter, in the
2  coordination of the trades, the integration of the design
3  with the work of the subcontractors, or other independent
4  fault of these entities, or their appointed servants or
5  agents, rather than the fault of the third party defendant."
6  Did I read that correctly?
7      A.   I believe so.  You actually started before I got
8  to it but . . .
9      Q.   Can you say I read that correctly?
10     A.   You got started before I got to it.
11     Q.   Okay.
12     A.   What I heard at the end seemed to be along with
13 what this says.  Yes.
14     Q.   Okay.  So based on what I read, would you agree
15 that the position of TSG, with respect to this affirmative
16 defense, was that Arch and Auchter were at fault for the
17 damages being alleged against TSG?
18          MR. BICKERTON:  Form.
19          THE WITNESS:  Isn't that a legal conclusion?
20          MR. BICKERTON:  I'm not instructing you not to
21     answer.
22          THE WITNESS:  The affirmative defense speaks for
23     itself.
24 BY MR. BALICE:
25     Q.   Okay.

Page 66

1    A.    They are saying what they say.
2    Q.    Okay.  So TSG was saying that they were not at
3  fault for the damages being alleged?
4    A.    No.
5    Q.    Okay.
6    A.    They said the third party plaintiffs are barred
7  from recovery.
8    Q.    Okay.
9    A.    To the extent that there's any liability to the
10  plaintiff, the same would exist because of the fault of Arch
11  and Auchter.
12    Q.    Now, the third affirmative defense says, (As
13  Read) "The third party plaintiffs are barred from recovery
14  herein, as to the extent that there is any fault of any
15  party, same is not the fault of the third party defendant,
16  but rather, of the other parties in this lawsuit, namely the
17  plaintiffs, Auchter and Arch, or the other third party
18  defendants, that is, plaintiffs' lack of maintenance or
19  improper use of the building components installed by the
20  third party defendant, and/or defects in the design of the
21  building and/or defects in the work of Arch/Auchter and
22  their subcontractors, their inspectors, employees, agents,
23  and other representatives which resulted in the damages
24  claimed by the defendants."  Did I read that correctly?
25    A.    It's "and/or" other representatives, but other

Page 67

1  than that, yes.
2    Q.    Okay.  Thank you.  All right.  So is it your
3  understanding also, based on this affirmative defense, that
4  TSG was arguing that it was not at fault for the damages
5  being alleged in the RAP litigation?
6         MR. BICKERTON:  Form.
7         THE WITNESS:  That is not what TSG is arguing at
8  all.
9  BY MR. BALICE:
10    Q.    All right.
11    A.    TSG is just simply saying that they're barred
12  from recovery because of these acts.
13    Q.    Because of the faults of the other party; is that
14  correct?
15    A.    Correct.  That the third party plaintiffs are
16  barred from recovery.
17    Q.    Thank you.  Now, National Trust Insurance Company
18  is not contesting -- strike that.
19         Now, are you aware if the final judgment
20  addressed TSG's affirmative defenses?
21    A.    Okay.  Could you reread the question one more
22  time?
23         MR. BALICE:  Can you read it?
24         (WHEREUPON, THE LAST QUESTION WAS READ BACK.)
25         THE WITNESS:  The final judgment stated, and we

Page 68

1  rely on the fact that it stated that Arch and Auchter
2  sued TSG for contractual indemnity and breach of
3  contract on the grounds that that scope of work was
4  implicated in RAP's claims.  We also rely on the fact
5  that it says the breach of contract claims are not
6  based on the concept of fault but rather are based on
7  whether the defendant has met its contractual
8  obligations.  Both counsel allege a specific breach of
9  contractual duties that arise from a different theory
10  of damages; and that Arch is entitled to compensatory
11  damages for the breaches of the TSG subcontract as
12  described; and that TSG should have known its work was
13  faulty.
14  BY MR. BALICE:
15    Q.    You said you're familiar with the -- with the
16  final judgment; is that correct?
17    A.    Yes.
18    Q.    Okay.  Are you familiar with TSG's position
19  during the trial that the window system did not leak?  Let's
20  do it this way.  I think it's clearer.
21         MR. BICKERTON:  I'm sorry.  Are you asking him if
22  he knows about the final judgment --
23         MR. BALICE:  Yeah.  If he knows about the final
24  judgment that TSG's --
25         MR. BICKERTON:  -- and then about the trial?

Page 69

1         MR. BALICE:  Yes.
2         MR. BICKERTON:  Okay.  Those are different
3  things.
4  BY MR. BALICE:
5    Q.    Let's go to page thirty-nine of the final
6  judgment.
7         MR. BICKERTON:  Do you want to mark this?
8         THE WITNESS:  Was this Exhibit 13?
9         MR. BALICE:  Yes.
10        MR. BICKERTON:  Yes.
11        THE WITNESS:  Was that pin marking the spot that
12  I was supposed to be turning to?
13        MR. BICKERTON:  It's page thirty-nine.
14        (Plaintiffs' Exhibit 13 was marked
15        for identification.)
16  BY MR. BALICE:
17    Q.    All right.  If I can direct your attention to the
18  second full paragraph, "As to the water intrusion,
19  defendants' fact and expert witnesses claimed that IBA's
20  testing was inappropriate and not indicative of true water
21  penetration.  TSG's witnesses went further and claimed that
22  the windows did not leak because the water intrusion was
23  caused by other sources such as the roof."  Did I read that
24  correctly?
25    A.    Yes.

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                              Pages 70..73

Page 70

1    Q.    Okay.  So is National Trust Insurance Company
2  disputing that TSG argued at trial that there were other
3  sources for the water intrusion?
4          MR. BICKERTON:  Form.
5          THE WITNESS:  National Trust was not a party to
6  this.
7  BY MR. BALICE:
8    Q.    Okay.
9    A.    National Trust can -- I am familiar with this
10 document; and we accept that the document speaks for itself.
11 So if the document says TSG said that then --
12   Q.    Okay.
13   A.    -- we accept that they did.
14   Q.    But you have no other -- no other information,
15 other than the final judgment, disputing TSG's position at
16 trial?
17         MR. BICKERTON:  Form.
18         THE WITNESS:  No.  We rely on the final judgment.
19 BY MR. BALICE:
20   Q.    All right.  If you can turn to page eighty-one of
21 the -- of the final judgment.  I want to read from the first
22 full paragraph.  "Further, TSG argued, in its second
23 affirmative defense, that the damages alleged were the fault
24 of Arch or Auchter in coordination of the trades/integration
25 of design with the work of subcontractors or resulted from

Page 71

1  other independent fault of these entities or their agents.
2  TSG also alleged, in its third affirmative defense, that the
3  damages were the fault of others, including RAP's lack of
4  maintenance or improper use of the building components, or
5  defects in design, or defects in the work of Arch or Auchter
6  and their subcontractors, inspectors or agents."  Did I read
7  that correctly?
8    A.    Yes.
9    Q.    Okay.  So other than the language in the -- in
10 this final judgment -- strike that first part.
11         Is National Trust Insurance Company disputing
12 that the -- that the trial, according to the final judgment,
13 addressed the second affirmative defense and the third
14 affirmative defense of TSG?
15         MR. BICKERTON:  Form.
16         THE WITNESS:  No.  We're not disputing.
17 BY MR. BALICE:
18   Q.    Okay.  And National Trust Insurance Company is
19 not disputing the fact that fault was raised as an
20 affirmative defense on the part of TSG to these claims -- to
21 the claims being alleged in the RAP lawsuit?
22         MR. BICKERTON:  Form.
23         THE WITNESS:  I'm not disputing to the fact that
24 that -- their affirmative defenses speaks for
25 themselves and they raise what they raise.

Page 72

1  BY MR. BALICE:
2    Q.    All right.  Now, the second part of that
3  paragraph says, "It is important to remember that RAP's
4  claim for future remedial repairs with the glazing" --
5    A.    I'm sorry.
6    Q.    Did I lose you?
7    A.    You did.
8    Q.    It's still the same paragraph, the next sentence.
9    A.    I've got it.  Down here.  All right.  Go ahead.
10   Q.    "It's important to remember that RAP's claim for
11 future remedial repairs with the glazing systems is focused
12 on the faulty workmanship of TSG.  As set forth in Florida
13 law, breach of contract claims are not based upon the tort
14 concept of fault, but rather, are based upon whether a
15 defendant has met its contractual obligations.  Regardless,
16 as factually set forth above, the Court finds that the
17 glazing defects were caused by multiple deficiencies in
18 TSG's work."  Did I read that correctly?
19   A.    Yes.
20   Q.    Okay.  Now, is National Trust Insurance Company
21 contesting the trial court's position that regardless of the
22 theory of recovery, as stated in this paragraph, TSG was at
23 fault?
24         MR. BICKERTON:  Form.
25         THE WITNESS:  I don't think it's saying

Page 73

1  regardless of theory of recovery.
2  BY MR. BALICE:
3    Q.    It says, "Regardless, as factually set forth
4  above"?
5    A.    I see that, but I don't see that as saying
6  regardless as to the theory of recovery they're guilty.  In
7  fact, they seem to me to be making a distinction of the fact
8  that this is a contract claim and only a contract claim and,
9  therefore, tort concepts of law don't apply.
10   Q.    But it's your understanding that TSG was arguing
11 fault concepts in the final judgment at trial?
12   A.    It was.
13         MR. BICKERTON:  Form.
14         THE WITNESS:  Sorry.
15 BY MR. BALICE:
16   Q.    And National Trust Insurance Company is not
17 contesting that the trial court found that the window
18 system, as constructed, was defective?
19         MR. BICKERTON:  Form.
20         THE WITNESS:  National Trust says that the final
21 judgment speaks for itself, and it says what it says.
22 BY MR. BALICE:
23   Q.    Read the next page, paragraph eighty-two -- page
24 eighty-two.  I'm sorry.  Section C, (As Read) "Findings of
25 the Court:  Based on the Court's lengthy findings of fact --

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                                   Pages 74..77

Page 74

1  fully set forth above -- TSG is liable to Arch and Auchter
2  for breach of the TSG subcontract, as amended.  TSG failed
3  to properly complete the work referenced in the TSG's
4  subcontract, which resulted in a breach of contract (Count
5  II).  Furthermore, TSG has failed to indemnify and hold
6  Auchter harmless from the liability arising from the acts or
7  omissions of TSG -- this is a separate claim under Article
8  6."  I'm going to skip down a bit.  Did I read that
9  correctly?
10     A.   No.  "This is a separate breach of the terms of
11 Article 6," not a claim.
12     Q.   Sorry.  "This is a separate breach of the terms
13 of Article 6 of the TSG subcontract," correct?
14     A.   Correct.
15     Q.   I'll skip to one sentence down.  "Moreover,
16 pursuant to the subcontract, TSG was required to perform
17 curtain wall work in a workmanlike manner, work that was
18 free from defects.  Additionally, the Court finds that TSG
19 breached the TSG subcontract by performing defective work
20 and by failing to remedy the defective work when it should
21 have known the work was faulty.  These breaches caused the
22 damages set forth below."  Did I read that correctly?
23     A.   Yes.
24     Q.   Okay.  Now, do you agree that, based on this
25 language, the final judgment imposed liability on Arch and

Page 75

1  Auchter for the actions of TSG?
2          MR. BICKERTON:  Form.
3          THE WITNESS:  The final judgment talks about
4      TSG's liabilities, and it says what it says.
5  BY MR. BALICE:
6      Q.   But you don't have any other additional
7  information to dispute that statement, any additional facts
8  to dispute that statement?
9          MR. BICKERTON:  Form.
10         THE WITNESS:  I have no other facts to dispute
11     that statement.
12 BY MR. BALICE:
13     Q.   Okay.
14     A.   We are relying on the final judgment as written.
15     Q.   I'm going to read the next paragraph down.
16 "Therefore, Arch is entitled to compensatory damages for the
17 breaches of the TSG subcontract, as described in the second
18 amended third party complaint."  And he has a citation to a
19 case.  And it says, "Specifically, the Court awards damages"
20 -- on page eighty-three -- "in favor of Arch and against TSG
21 in the amount of $5,067,033.01.  These pass-through damages
22 include the expenses to repair the building envelope, the
23 monies needed to perform interior repairs in connection with
24 removing and replacing the windows and the sums paid to IBA
25 and other consultants to determine the cause of the water

Page 76

1  intrusion.  All of these items of damages are within the
2  scope of the work of TSG's on the project."  Did I read that
3  correctly?
4      A.   Yes.
5      Q.   Okay.  National Trust Insurance Company is not
6  contesting that Arch and Auchter claimed pass-through
7  damages claims against TSG; is that correct?
8          MR. BICKERTON:  Form.
9          THE WITNESS:  We are not objecting -- we are not
10     -- repeat the question.
11 BY MR. BALICE:
12     Q.   You're not contesting?
13     A.   We are not contesting.  No.
14     Q.   Okay.  And National Trust Insurance Company is
15 not contesting that Arch and Auchter were awarded
16 pass-through damages for the window system?
17         MR. BICKERTON:  Form.
18 BY MR. BALICE:
19     Q.   Correct?
20     A.   We are not contesting.
21     Q.   Okay.  All right.  Now, going back to the
22 affirmative defenses number one, it says here, "liability
23 was not imposed on Auchter without fault of Auchter for
24 TSG's negligence."  The use of the term "negligence," is
25 that referring to CG 55 12 05?

Page 77

1          MR. BICKERTON:  I'm going to object and instruct
2      him not to answer.
3          MR. BALICE:  Okay.  What's the basis for your
4      objection?  I mean, what's the -- is it attorney-client
5      or --
6          MR. BICKERTON:  It falls within the language of
7      the order stating that inquiry into the interpretation
8      of the policy, or the basis for the interpretation of
9      the policies, are not relevant to this case.  If you
10     rephrase it as the facts that FCCI relies on for that
11     statement, I think that that would be fair.
12 BY MR. BALICE:
13     Q.   What facts is National Trust Insurance Company
14 using to -- in reference to the specific use of the term
15 "negligence"?
16     A.   The facts that I've previously read related to
17 the final judgment that talk about this is a breach of
18 contract claim.  We're not talking about fault.  The fact
19 that Arch and Auchter argued in their post-trial briefs that
20 this action involves only contractual liability.  The fact,
21 again, that the final judgment references this is a breach
22 of contract claim.  The fact that there was no vicarious
23 liability claim against TSG or Auchter that Arch and Auchter
24 were sued for declaratory judgment, breach of contract, and
25 breach of performance bond.  The fact that in evaluating the

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                            Pages 78..81

Page 78

1   claims under its policy, Amerisure argued that there was no
2   negligent act under its policy in the underlying action.
3           I beg your indulgence.  I'm going through a lot
4   of notes.
5           Again, relying on the fact that Arch and Auchter
6   were sued for declaratory judgment, breach of contract, and
7   breach of performance bond.  There was no negligence claim
8   against either.
9       Q.   So is National Trust Insurance Company's position
10  that in order for -- in order to have additional insured
11  coverage for Auchter, there had to be a claim of negligence?
12          MR. BICKERTON:  I'm going to object and instruct
13      him not to answer.
14          MR. BALICE:  I'm going to go ahead and certify
15      that question.  And what's the specific basis you're
16      not -- are you asking him not to answer?
17          MR. BICKERTON:  You're again asking him for the
18      basis for FCCI's policy positions in the case and their
19      interpretation of the policies.  He just provided you
20      with some of the facts that FCCI relies on for that.
21          MR. BALICE:  Okay.
22          MR. BICKERTON:  You're free to inquire into those
23      facts.
24  BY MR. BALICE:
25      Q.   Okay.  Mr. Harris, have you reviewed the amended

Page 79

1   complaint filed in the RAP litigation; do you recall seeing
2   it as a part of your review process?
3       A.   No.  I reviewed the final order.
4       Q.   Okay.  You didn't review the amended complaint
5   filed by RAP against -- against Auchter and Arch?
6       A.   May I see it?
7       Q.   Sure.
8       A.   Yes.  I did review this document.
9       Q.   Okay.  Let me -- so is it based on your
10  recollection?
11          MR. BICKERTON:  Sorry, would you like to mark it
12      as an exhibit?
13          MR. BALICE:  Yeah.  Let's mark it as an exhibit.
14      I'm sorry.
15          MR. BICKERTON:  And that would be fourteen.
16              (Plaintiffs' Exhibit 14 was marked
17              for identification.)
18  BY MR. BALICE:
19      Q.   Do you agree that the amended complaint contains
20  allegations of defective construction?
21          MR. BICKERTON:  I'm going to object and instruct
22      him not to answer.
23          MR. BALICE:  All right.
24          MR. BICKERTON:  Can you point him to --
25          MR. BALICE:  Yeah.

Page 80

1           MR. BICKERTON:  Okay.
2   BY MR. BALICE:
3       Q.   Let's go to page four, FCCI 227.  Paragraph
4   sixteen says, "The water damage would not have occurred but
5   for Auchter's delays and deficiencies in constructing the
6   building."  Did I read that correctly?
7       A.   Yes.
8       Q.   Okay.  So deficiency in constructing the building
9   envelope -- I'm sorry.
10          Allegations of deficiencies in construction,
11  would that qualify as a negligent act under the National
12  Trust Insurance Company endorsement?
13          MR. BICKERTON:  I'm going to object and instruct
14      him not to answer.
15          MR. BALICE:  I'm going to go ahead and certify
16      the question.
17  BY MR. BALICE:
18      Q.   On paragraph twenty-two, I'm going to go ahead
19  and read it in the record.  "After Auchter finally completed
20  the building envelope and many tenants had assumed
21  occupancy, the project experienced additional leaks and
22  water intrusion due to defective construction."  Did I read
23  that correctly?
24      A.   You did.
25      Q.   Would the use of the term "defective

Page 81

1   construction" qualify as a negligent act under the AI
2   endorsement?
3           MR. BICKERTON:  I'm going to object and instruct
4       him not to answer.
5           MR. BALICE:  Go ahead and certify that question
6       too.
7   BY MR. BALICE:
8       Q.   All right.  Now going back to affirmative
9   defense, number one, toward Subparagraph F, it says,
10  "Auchter is not an additional insured for the
11  products-completed operations hazard because the duration
12  outlined by the Agreement to Insured had expired."  What's
13  the factual basis for that defense?
14      A.   The factual basis for that defense would be found
15  in the subcontract.
16      Q.   Now, when it says, "because the duration outlined
17  by the Agreement to Insure had expired," what's National
18  Trust Insurance Company's position as to when the agreement
19  expired?
20          MR. BICKERTON:  I'm going to object and instruct
21      him not to answer, to the extent that calls for a legal
22      basis.
23          MR. BALICE:  I'm asking for a factual basis as to
24      when -- what time --
25          MR. BICKERTON:  If you want to phrase the

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                    Pages 82..85

Page 82

1    question that way.
2    BY MR. BALICE:
3        Q.   What is National Trust Insurance Company's
4    position, factual basis, as to when the agreement to insure
5    expired?
6        A.   Can I have the --
7             MR. BICKERTON:  Are you looking for the
8    subcontract?
9             THE WITNESS:  The subcontract.  I'm sorry.
10            MR. BICKERTON:  It's right there.
11            THE WITNESS:  All right.  So the subcontract
12   states that the insurance should be purchased and
13   maintained at their expense for the life of the
14   subcontract.  And then you pointed out that, down
15   below, the duration of the subcontract and for the
16   duration of the warranty period.  FCCI is unaware of
17   any warranty being issued and the duration of the
18   subcontract was fulfilled prior to the inception of our
19   policy, as per what we talked about earlier.
20            MR. BALICE:  Let's take a quick break.
21   (WHEREUPON, A BREAK WAS TAKEN FROM 2:11 P.M. TO 2:16 P.M.)
22   BY MR. BALICE:
23       Q.   What's the factual basis for TSG's position that
24   no warranty was provided?
25       A.   TSG or National Trust?

Page 83

1        Q.   National Trust Insurance?
2        A.   I've not seen any indication that a warranty has
3    been provided.
4        Q.   Can I direct your attention to -- this is still
5    the subcontract you have in front of you.  Let's go to
6    paragraph -- it's page seven.  It's seven of sixteen.  It's
7    Schedule B, "Description of Work & Material."  It's
8    Schedule B.  Okay.  Turn to the next page.  It says,
9    "Provide warranty as follows."  Do you see that paragraph
10   seven?
11       A.   Yes.
12       Q.   And it says, "Aluminum storefronts & entrances 3.
13   Automatic door equipment 5 years on motor.  Metal panels
14   System Warranty.  Glazing; 10 years on sealed glass, 10
15   years on de-lamination, 10 years on reflective coating, 10
16   years on moisture on insulated."  Did I read that correctly?
17       A.   You did.
18       Q.   Okay.  So is it -- is it National Trust Insurance
19   Company that would not qualify it as a warranty?
20            MR. BICKERTON:  I'm going to object.  I'm going
21       to object.  Are you asking him for a legal conclusion
22       that it's a warranty?
23   BY MR. BALICE:
24       Q.   I'm asking does that -- he testified that
25   National Trust Insurance Company was unaware that the

Page 84

1    warranty was provided.  Now I just read that to you.  And
2    does that satisfy -- does that -- is that additional -- is
3    this an additional fact for National Trust Insurance Company
4    to consider whether a warranty was provided on this matter?
5             MR. BICKERTON:  I would still object to the form.
6             THE WITNESS:  Okay.  No.  I -- National Trust
7        acknowledges that it was required in the contract; but
8        we have seen no indication that a warranty was actually
9        issued upon the completion of the work.
10   BY MR. BALICE:
11       Q.   Okay.  But you don't dispute that this agreement
12   required that a ten-year warranty be issued; is that
13   correct?
14            MR. BICKERTON:  Form.
15            THE WITNESS:  The contract speaks for itself.
16   BY MR. BALICE:
17       Q.   Okay.  Let's go to the second affirmative
18   defense.  What is the factual basis for the second
19   affirmative defense?  When I say second, I mean paragraph
20   two.
21       A.   The bases for paragraph two, affirmative defense
22   two, are very similar to that in paragraph one.  So the same
23   facts that we relied on for those, that would be the same --
24   would also be the same.  One thing that -- I mean, it is
25   referenced -- I'm trying to find the difference.  I mean,

Page 85

1    whereas like in the first one we said TSG was not performing
2    operations for Auchter; but in the second affirmative
3    defense where it says TSG's operations for Auchter were not
4    ongoing, that's the same factual basis.  Even though those
5    were worded differently, it's the same factual basis.  That
6    it's clear that TSG was not performing operations at the
7    inception of the policy.  The liability not imposed on
8    Auchter without the fault of Auchter, we've already went
9    through that.  It would basically be the same that we relied
10   on in paragraph one.  And then the E exclusion, those
11   exclusions are specific to the CGL 026 CG -- I apologize --
12   CG 026 endorsement.  And that, again, it's clear that they
13   were put to us as an intended use by any personal
14   organization, other than another contractor, in that we
15   relied on the facts that they had tenants moving in well
16   before our policy period incepted.
17       Q.   Now, what is the -- going down a bit, what's the
18   affirmative defense number four, "National Trust Insurance
19   Company policy and the FCCI policy afford no coverage to
20   Auchter for this matter as there is no property damage as
21   defined in the policies in the underlying action.  The
22   damages awarded in the final judgment in the underlying
23   action are only for repair or replacement of TSG's work and
24   do not meet the definition of property damage as defined in
25   the policies."  Did I read that correctly?

Page 86

1    A.    Honestly, I flipped my eyes over for a second;
2  but it sounded like you did; but I didn't follow you word
3  for word.
4    Q.    What is the factual basis for that affirmative
5  defense?
6    A.    We first rely on the fact that the final judgment
7  states -- and I can read this -- "RAP shall recover
8  $3,762,821 to repair the building envelope, which includes a
9  total of $375,000 to conduct necessary testing and to obtain
10  the required product approvals.  RAP shall also recover
11  $1,062,492 as the amount required to perform interior
12  repairs in connection with removing and replacing the
13  windows.  Additionally, RAP shall recover $241,720.01 for
14  the sums previously paid to IBA and other consultants to
15  determine the cause of water intrusion.  The total damages
16  due to RAP in connection with the defective building
17  envelope and water intrusion are $5,067,033.01."
18          We also rely on the fact that the final judgment
19  states that "RAP is entitled to three different categories
20  of damages:  Repairs to the building envelope; repairs or
21  completion to deficiency items or to items on the punch
22  list; and damages for delay."
23          We further rely on the fact that the final
24  judgment says that "Arch and Auchter asserted damages
25  against TSG for the proposed repair and replacement of the

Page 87

1  window systems as a pass-through claim in the event the
2  Court awarded such damages against Arch and Auchter."
3          We further rely on the fact that "the Court
4  awards damages in favor of Arch and against TSG in the
5  amount of $5,067,033.01.  These pass-through damages include
6  the expenses to repair the building envelope, the monies
7  needed to perform interior repairs in connection with
8  removing and replacing the windows and the sums paid to IBA
9  and other consultants to determine the cause of the water
10  intrusion."
11          We rely on the fact that "RAP's amended complaint
12  in the underlying action did not seek damages for personal
13  property, ceiling tiles, carpet, drywall, or other
14  non-defective property."
15          We rely on the fact that "RAP's damages summary
16  used as an exhibit in the underlying action did not seek
17  damages for personal property, carpet, drywall, or other
18  non-defective property."
19          We rely on the fact that "RAP representative Paul
20  Lunetta testified at the trial in the underlying action that
21  RAP was not seeking damages for carpet or ceiling tiles
22  alleged to have been damaged by water."
23    Q.    Are you aware that the District Court in the case
24  styled 3:16-cv-407 rejected a same or similar position?
25          MR. BICKERTON:  Form.

Page 88

1          THE WITNESS:  I'm aware that FCCI was not a party
2    to that loss -- or to that lawsuit.
3  BY MR. BALICE:
4    Q.    Okay.  But are you aware that similar arguments
5  were made in that litigation and the Court found that there
6  was coverage under the CGL policies?
7          MR. BICKERTON:  Form.
8          THE WITNESS:  I am aware of the litigation.  I am
9    aware that we were not parties to it.  I am not
10    familiar with the findings of that litigation.
11  BY MR. BALICE:
12    Q.    Okay.  Let's go with affirmative defense number
13  five, no occurrence.  What was the factual basis for that
14  affirmative defense?  What page is that?
15    A.    Eighteen.
16    Q.    Eighteen, thank you.
17    A.    You want me to read it, or we could just say this
18  is eighteen.
19    Q.    Just go ahead and read it, if you like -- you
20  want -- go ahead and read it.
21    A.    We rely on the fact that (As Read) "Arch and
22  Auchter filed third party complaints against TSG only for
23  contractual indemnity and breach of contract only."
24          We rely on the fact that "Arch and Auchter argued
25  in post-trial briefs that:  This action involves only

Page 89

1  contractual indemnity; TSG appears to confuse the 'without
2  fault' element of a cause of action for common law indemnity
3  with this action which involves only contractual indemnity."
4          That Arch and Auchter argued in their post-trial
5  briefs that "if the Court ultimately rules in favor of RAP
6  on the issue of defects purportedly arising from the failure
7  of TSG to perform its work in a workmanlike manner, then the
8  Court must find that TSG breached the TSG subcontract."
9          That Arch and Auchter argued in post-trial briefs
10  that the "Breach of contract claims are not based upon the
11  tort concept of fault but based purely upon whether a
12  defendant has met its contractual obligations.  Whether
13  Auchter or Arch or any other parties are actively or
14  passively negligent or otherwise 'at fault' is not relevant
15  to the claims."
16          We further rely on the fact that "the final
17  judgment states -- "the final judgment in the underlying
18  action states:  Arch and Auchter sued TSG Industries for
19  contractual indemnity and breach of contract on the grounds
20  that the scope of work under TSG's subcontract was
21  implicated in RAP's claims.  Breach of contract claims are
22  not based upon the concept of fault, but rather, are based
23  upon whether a defendant has met its contractual
24  obligations.  Both counts allege breach of specific
25  contractual duties that arise from a different theory of

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                                    Pages 90..93

Page 90

1  damages."
2          That we rely on the fact that "Arch is entitled
3  to compensatory damages for the breaches of the TSG
4  subcontract as described in the second amended third party
5  complaint."
6          And that the final judgment in the underlying
7  action stated that "TSG should have known work was faulty."
8          Arch and Auchter were sued for declaratory
9  judgment, breach of contract, and breach of performance in
10  the underlying action as reflected in the final judgment.
11      Q.   Now, it's the occurrence that's the -- I presume
12  it's the occurrence definition contained in the National
13  Trust Insurance Company policy?
14      A.   Yes, sir.
15      Q.   Okay.  Now, do you agree that claims for faulty
16  workmanship or defective work -- that claims for -- do you
17  agree that claims for faulty workmanship or defective work
18  can constitute an occurrence under a policy?
19          MR. BICKERTON:  I'm going to object and instruct
20  him not to answer.
21          MR. BALICE:  And the basis for the objection, for
22  the instruction?
23          MR. BICKERTON:  It's an inquiry purely into
24  FCCI's interpretation of its insurance policies.
25          MR. BALICE:  Let's go ahead and certify the

Page 91

1  question.
2  BY MR. BALICE:
3      Q.   Now, with affirmative defense number six, known
4  loss.  What is the factual support for that position?
5      A.   Page one of the notes you were given.
6      Q.   I'm sorry.  What?
7      A.   Page one of the notes you were given.
8      Q.   Oh, thank you.  We can just admit it in the
9  record.
10          MR. BICKERTON:  We can make it an exhibit.  Let's
11  make this into an exhibit.
12  BY MR. BALICE:
13      Q.   Let me rephrase that.  You rely on all the
14  information listed on page one, page two, page three, and
15  page four of Exhibit 15?
16      A.   We rely on that information and information that
17  may exist in the documents that are referenced.  So at the
18  edge you'll see behind each fact is a document that's
19  referenced as the source of that fact.  So we rely on the
20  information of those facts, plus the documents that they --
21  that they referenced.
22          (Plaintiffs' Exhibit 15 was marked
23              for identification.)
24      Q.   Now, has National Trust Insurance Company spoken
25  with anyone from TSG to support the position set forth in

Page 92

1  affirmative defense number six?
2          MR. BICKERTON:  One second.
3          (WHEREUPON, THE LAST QUESTION WAS READ BACK.)
4          MR. BALICE:  To support their position.
5          MR. BICKERTON:  To support the factual position?
6          MR. BALICE:  Yep, the factual position.
7          MR. BICKERTON:  I'm going to object to the form,
8  to the extent you know.
9          THE WITNESS:  To the extent I know, there have
10  been discussions with --
11          MR. BICKERTON:  I'm sorry.  Was it anyone at
12  FCCI?
13          THE WITNESS:  Yeah.  I'm sorry.  Let me -- go
14  ahead.  No.  Or maybe just restate the question.  I
15  apologize.  I just want to make sure I understand what
16  you're asking.
17  BY MR. BALICE:
18      Q.   Has National Trust Company spoken with anyone
19  from TSG to support the position and defenses set forth in
20  -- factual position and defenses set forth in affirmative
21  defense number six?
22          MR. BICKERTON:  I'm going to object to form.  Is
23  it at any point in time?
24  BY MR. BALICE:
25      Q.   Yeah.  At any point in time?

Page 93

1      A.   In the investigation -- I have no personal -- I
2  have no specific recollection of when the conversations took
3  place or with whom.  I've reviewed a lot of documents, that
4  document and email communications back and forth.  I have
5  not reviewed any transcripts of interviews between FCCI,
6  National Trust personnel, and TSG personnel.
7      Q.   Do you know if there are any interviews available
8  between National Trust Insurance Company and TSG personnel
9  concerning the window system?
10      A.   I do not know that.
11          MR. BICKERTON:  I'm going to object to the form
12  of the question.
13          THE WITNESS:  Sorry.
14  BY MR. BALICE:
15      Q.   Do you have any -- does National Trust Insurance
16  Company have in its possession any transcripts of any
17  depositions or interviews made between National Trust
18  Insurance Company personnel and TSG's personnel concerning
19  the issue of when TSG became aware of property damage on the
20  project?
21          MR. BICKERTON:  I'm going to object to the form
22  of the question.
23          THE WITNESS:  I don't know the answer to that
24  question.
25  BY MR. BALICE:

Page 94

1    Q.   Would that information have been included in your
2  claims file or claim notes?
3        MR. BICKERTON:  I'm going to object and instruct
4    him not to answer.
5  BY MR. BALICE:
6    Q.   Do you know if at any point in time, did National
7  Trust Insurance Company either interview or -- interview Jim
8  Nichols from TSG with respect to -- to the installation of
9  the window system?
10       MR. BICKERTON:  I'm going to object to the
11    question as outside of the scope of notice, to the
12    extent you know.
13       THE WITNESS:  And I don't.  I don't know.
14  BY MR. BALICE:
15    Q.   Okay.  With respect to affirmative defense number
16  seven, the application of the expected or intended
17  exclusion, can you let me know which evidence -- which
18  factual evidence are you relying on?  What's the factual
19  support?
20    A.   I'm going to refer you back to page eighteen,
21  which we discussed about the occurrence.  We're relying on
22  those same facts as to expected intended.
23    Q.   All right.  How about -- scratch that.
24       With respect to affirmative defense number eight,
25  can you please let us know what is the factual support for

Page 95

1  National Trust Insurance Company's position to the
2  application of -- as to the application of contractual
3  liability exclusion?
4    A.   I'll refer you to page twenty of Exhibit 15.  Do
5  you want me to read it?
6    Q.   No.  Let's just put it in the record.
7    A.   Okay.
8    Q.   And with respect to affirmative defense number
9  fourteen, I'll read this into the record.  (As Read)
10  "National Trust Insurance Company policy and the FCCI policy
11  afford no coverage to Auchter for this matter as the damages
12  awarded in the final judgment in the underlying action
13  against TSG and/or Auchter were known to TSG and/or Auchter
14  prior to the issuance of the National Trust Insurance
15  Company policy and the FCCI policy and the known loss or
16  fortuity doctrine, as well as public policy, would prohibit
17  insurance...for such damages."  Did I read that correctly?
18    A.   You missed a word or two.  Would it prohibit
19  insurance coverage for such damages.
20    Q.   Did I read that correctly?  I apologize.
21    A.   Yeah, other than that.
22    Q.   Yeah.  And what facts are you relying on to
23  support that position?
24    A.   I'll refer back to page one that is titled "Known
25  Loss/Fortuity" of the exhibit, pages one through four.  We

Page 96

1  rely on those facts and the documents that they source.
2       MR. BICKERTON:  Just so the record is clear,
3    that's Exhibit 15, right?
4       MR. BALICE:  That's correct.
5       MR. BICKERTON:  Okay.
6  BY MR. BALICE:
7    Q.   Now, are you aware of Robert McLeod's testimony
8  at trial with respect to -- as to when the water intrusion
9  started?
10       MR. BICKERTON:  In the underlying case?
11       MR. BALICE:  Yes.
12       THE WITNESS:  No.
13  BY MR. BALICE:
14    Q.   Have you reviewed his trial testimony?
15    A.   I have not.
16    Q.   What about Jim Nichol's trial testimony; have you
17  reviewed that?
18    A.   No.
19    Q.   Okay.  So you have no knowledge as to their -- to
20  the statements made at trial with respect to when water
21  intrusion started and when TSG became aware of potential
22  claims?
23       MR. BICKERTON:  Form.
24       THE WITNESS:  I have no knowledge of what they
25    testified to at trial.

Page 97

1  BY MR. BALICE:
2    Q.   Okay.  Jumping to affirmative defense number
3  fifteen, it states, "The NTIC policy and the FCCI policy
4  afford no coverage to Auchter for this matter as the NTIC
5  policy and the FCCI policy do not owe a primary indemnity
6  obligation to Auchter.  The subcontract between TSG and
7  Auchter specifically requires that TSG provide Auchter with
8  certificates and the certificates of insurance must contain
9  the following provisions:  All policies, except workers'
10  compensation, are primary and non-contributory.
11  Certificates of insurance are not part of the National Trust
12  Insurance Company policy and the FCCI policy, do not change
13  the coverage provided under them, and a contractual
14  requirement to provide certificates of insurance is not the
15  same as a contractual requirement to name a policy of
16  insurance as primary.  Further, the National Trust Insurance
17  policy and the FCCI policy contain Endorsement CGL 025 04 03
18  and CGL 055 12 05 which make the National Trust Insurance
19  Company policy and the FCCI policy excess over the policies
20  issued by plaintiffs."  What's the factual position for
21  that?
22    A.   The factual position is as stated in the -- I
23  mean, it kind of states its factual position in the -- what
24  you just read.
25    Q.   Okay.  So is that based on the -- on the terms of

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                          Pages 98..101

Page 98

1  the subcontract?

2      A.    Well, it cites the terms of the subcontract that

3  it's referencing.  And it states, "certificates of insurance

4  are not part of the NTIC policy and the FCCI policy, do not

5  change the coverage provided under them, and a contractual

6  requirement to provide certificates of insurance is not the

7  same as a contractual requirement to name a policy of

8  insurance as primary."  That's the -- that is the factual

9  basis of which we're relying on to support that affirmative

10  defense.

11     Q.    All right.  Thank you.  Let's mark this as

12  Exhibit 16.  Have you ever seen this document before?

13     A.    I have seen this document before.

14                   (Plaintiffs' Exhibit 16 was marked

15                   for identification.)

16     Q.    Okay.  And this is a certificate of insurance; is

17  that correct?

18     A.    Certificate of liability insurance.

19     Q.    Certificate of liability insurance?

20     A.    Yes, sir.

21     Q.    And the date that it was issued was 9/22/2008; is

22  that correct?

23     A.    Yes, sir.

24     Q.    Okay.  And who is Johnson & Bryan, Inc.?

25     A.    That's -- they're the brokers for TSG.

Page 99

1      Q.    Okay.  Do you know if there's any -- if there was

2  in place any binding agreement between FCCI and Johnson &

3  Bryan at the time that this certificate was issued?

4            MR. BICKERTON:  I'm going to object and instruct

5       him not to answer.

6            MR. BALICE:  I'm going to go ahead and certify

7       that question.

8  BY MR. BALICE:

9      Q.    And under the descriptions of operations on the

10  bottom of the certificate it states, "Riverside Avenue

11  Partners - Riverside Avenue & Forest Street project.  The

12  Auchter Company, Inc.; Riverside Avenue Partners, LLC; Arch

13  Insurance Company; and Forcon International Corp are

14  included as additional insured as the general liability as

15  required by written contract."  Did I read that correctly?

16     A.    Yes.

17     Q.    Okay.  Do you know if it was the custom and

18  practice of Johnson & Bryan to send certificates of insurance

19  to FCCI after they were issued?

20            MR. BICKERTON:  Form.

21            THE WITNESS:  I have no idea what Johnson &

22       Bryan's standard practice was.

23  BY MR. BALICE:

24     Q.    Okay.  Let's go to affirmative defense number

25  sixteen.  It says, "National Trust Insurance Company policy

Page 100

1  and the FCCI policy afford no coverage to Auchter for this

2  matter as Arch and Auchter, in settling their claims with

3  RAP, failed to allocate any damages between covered and

4  uncovered amounts.  This means anybody seeking to prove

5  coverage under the National Trust Insurance Company policy

6  and the FCCI policy, including the plaintiffs, would fail to

7  meet that burden."  And he has a citation to J.B.D.

8  Construction v. Mid-Continent Casualty Company.  And it

9  cites to Bradfield v. Mid-Continent Casualty Company.

10  Keller Industries Inc. v. Employers Mutual Liability

11  Insurance Company case.  Other than referencing the case

12  numbers and so forth, did I read that paragraph correctly?

13     A.    Yes.

14     Q.    Okay.  Now, is National Trust Insurance Company

15  taking the position that Florida law applies for the purpose

16  of allocation?

17            MR. BICKERTON:  I'm going to object.  I'm going

18       to object to that.

19            THE WITNESS:  FCCI is relying on its counsel for

20       legal questions.

21            MR. BALICE:  Off the record.

22  (WHEREUPON, A BREAK WAS TAKEN FROM 2:46 P.M. TO 2:58 P.M.)

23  BY MR. BALICE:

24     Q.    I have just got some follow-up questions on

25  endorsement CGL 055 12 06 [sic].  Is it correct that you

Page 101

1  raise this endorsement that -- that National Trust Insurance

2  Company raised this endorsement as part of the affirmative

3  defenses number one?

4      A.    CGL 55?

5      Q.    Yes.

6      A.    12 05 is how it's listed in the affirmative

7  defense.

8      Q.    But -- I'm not trying to trick you or anything.

9      A.    I'm not trying to trick you either.  I'm just

10  saying that I need to see the policy, but I believe it is

11  CGL 55, not CG.

12     Q.    It is CGL 055.

13     A.    But I need to see the policy.  I apologize.  And

14  it's 12 05, not 12 06 I believe you said.

15     Q.    I said 12 05.

16     A.    Then I apologize.  But, yes.  FCCI's position is

17  that this is the endorsement that we're referring to in

18  affirmative defense number one.

19     Q.    Okay.  So paragraph B of the endorsement says,

20  "Such person or organization is an additional insured but

21  only with respect to:  (1) your negligent actions, or that

22  of your subcontractors, which cause liability to be imposed

23  on such person or organization without fault on the part of

24  said person or organization."  Did I read that correctly?

25     A.    You did.

Page 102

1    Q.   Okay.  And number two, "the partial negligence of
2  the additional insured which combines with your partial
3  negligence or that of the subcontractors hired by you in
4  causing the accident at issue.  This insurance does not
5  cover the sole negligence of the additional insured,"
6  irrespective of the terms of the agreement to insure."  Did
7  I read that correctly?
8    A.   You did.
9    Q.   Back to B(1), would you agree with me that that
10  -- that that sentence, the first sentence that I read, does
11  not require an actual adjudication of negligence?
12       MR. BICKERTON:  I am going to object and instruct
13  him not to answer.
14       MR. BALICE:  Okay.  Is your objection based on
15  attorney-client privilege or work product?
16       MR. BICKERTON:  No.
17       MR. BALICE:  Okay.
18       MR. BICKERTON:  It is based on the order that was
19  entered in this case related to the inquiry, and the
20  scope of the inquiry for this deposition.
21       MR. BALICE:  Okay.  I dispute that the order
22  states what you stated.  National Trust Insurance
23  Company filed a motion for protective order that was
24  denied.  The topic was listed on the -- on the 30(b)(6)
25  notice; and can we please certify that question for the

Page 103

1  Court.
2       MR. BICKERTON:  I'll just say the topic is
3  specifically limited to facts, and we can leave it at
4  that.
5       MR. BALICE:  And we dispute that position.
6  BY MR. BALICE:
7    Q.   Now, similar with sticking to B(1), would faulty
8  -- would allegations of faulty work be considered a
9  negligent action?
10       MR. BICKERTON:  I'm going to object and instruct
11  him not to answer for the same basis as outlined
12  before.
13       MR. BALICE:  Is that objection based on
14  attorney-client privilege or work product?
15       MR. BICKERTON:  It is based on the -- as I said
16  earlier, the order entered in this case related to the
17  scope of this deposition, as well as the topics
18  enumerated in the deposition.
19       MR. BALICE:  Okay.  Amerisure disputes National
20  Trust Insurance Company.  We believe that it is within
21  the scope of the order and within the 30(b)(6) notice
22  that was issued.  How about -- scratch that.
23  BY MR. BALICE:
24    Q.   Do allegations of construction deficiencies,
25  would that constitute a negligent action?

Page 104

1       MR. BICKERTON:  Again, I'm going to object and
2  instruct him not to answer with the basis being the
3  order and the scope of this notice.
4       MR. BALICE:  Okay.  Same objection on the part of
5  Amerisure; that it is within the scope of the order and
6  within the 30(b)(6) notice.  I would like that question
7  certified for the Court.  I would like to certify the
8  last three questions.  All right.  This concludes the
9  National Trust Insurance Company corporate deposition.
10       MR. BICKERTON:  Maybe your -- maybe your direct
11  examination?
12       MR. BALICE:  That's correct.  That's correct.
13       MR. BICKERTON:  I would like to reserve any
14  cross.  I think it would -- would it -- I think it
15  would be better just for you to go ahead on the FCCI
16  part.
17       MR. BALICE:  Well, let's see if -- Jeremy -- I
18  think let's do it all at once.
19       MR. BICKERTON:  Jeremy is shaking his head.
20  Brian, do you have any questions?
21       MR. BALICE:  Brian?
22       MR. GOLDENBERG:  Yeah.  Just one very quickly.
23              DIRECT EXAMINATION
24  BY MR. GOLDENBERG:
25    Q.   With respect to your affirmative defense number

Page 105

1  eighteen, what are your factual bases for the statement that
2  the FCCI policy and the NCIC policy were issued and
3  delivered to a Georgia insured in Georgia?
4    A.   Our factual basis would be the policy itself.  It
5  contains the address upon which it was delivered.
6       MR. GOLDENBERG:  That's all for me.  Thank you.
7       MR. BALICE:  You want to reserve signature?
8       MR. BICKERTON:  Well -- well, I just have some
9  very, very quick cross.
10              CROSS-EXAMINATION
11  BY MR. BICKERTON:
12    Q.   Mr. Harris, can you look at Exhibit 15, your
13  notes that you brought with you to this deposition?  I think
14  actually you might have it, Tony, or -- well, that's not the
15  one that's been marked.
16       MR. BALICE:  Can I make a copy of this?  Let's go
17  off the record.
18       (WHEREUPON, AN OFF-THE-RECORD DISCUSSION WAS HAD.)
19  BY MR. BICKERTON:
20    Q.   Mr. Harris, you brought with you today notes that
21  have been marked as Exhibit 15; is that correct?
22    A.   That is correct.
23    Q.   To the extent that you were asked about the
24  factual basis for an issue contained in those notes, would
25  you rely on each of the facts set forth in those notes?

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                    Pages 106..109

Page 106

1    A.   Yes.
2         MR. BICKERTON:  Okay.  That is all I have.
3         MR. BALICE:  I just have one follow-up question.
4              REDIRECT EXAMINATION
5    BY MR. BALICE:
6    Q.   Mr. Harris, are you relying on other facts not
7    listed in Exhibit No. 15 to support any of your testimony in
8    this matter?
9    A.   As I said before -- I'm sorry.
10        MR. BICKERTON:  I'm going to -- I'm going to say
11   form.  If you want to limit it to the factual bases.
12   BY MR. BALICE:
13   Q.   To the factual bases?
14   A.   As I said before, I'm relying on these facts.
15   And each of these facts are sourced to a document.  And I'm
16   relying on the facts in those documents as well.
17   Q.   Okay.  Are you relying on any documents not
18   listed in Exhibit No. 15?
19        MR. BICKERTON:  I'm sorry.  For the factual
20   basis?
21   BY MR. BALICE:
22   Q.   For the factual basis?
23   A.   I don't recall if -- I know we -- I know -- I
24   know I put policy language in here.  I know there's policy
25   language in here.  I can't recall whether one of these Bates

Page 107

1    stamps was our policy or not; but if it's not, I'm relying
2    on the policies as well.
3    Q.   Okay.
4    A.   And that's -- yes.  I'm relying on this document
5    and the documents that are referenced herein; and if it's
6    not referenced herein, I'm also relying on the policy --
7    Q.   Okay.
8    A.   -- policies.
9    Q.   Are you relying on any portion of your claim
10   notes or claim files to support -- to support your factual
11   testimony in this matter today?
12   A.   Yes.  I'm relying on two log notes.
13   Q.   I'm sorry.  What page is that?
14   A.   I apologize.  It's on page twenty-three of
15   Exhibit 15.
16   Q.   Okay.
17   A.   And as noted on that page, slide your finger down
18   to 12/3/2010 and 12/9/2010.  There's reference to two
19   different log notes that reference that "National Trust
20   Insurance will be denying Auchter's tender of defense and
21   indemnification."  And then in the subsequent note, "I have
22   issued a denial to Auchter's tender.  Letter sent to
23   Christopher Mueller today."
24   Q.   Okay.
25   A.   Those are the only two notes.

Page 108

1         MR. BALICE:  Okay.  All right.
2         MR. BICKERTON:  And we'll -- we'll read.
3         MR. BALICE:  Brian and Seth, do you guys -- I
4    mean, sorry.  Brian and Jeremy, do you guys have any
5    more questions?
6         MR. GOLDENBERG:  This is Brian.  No.
7         MR. BICKERTON:  Jeremy is not even there so --
8         MR. BALICE:  We'll take that as a no.  All right.
9    Go ahead.  You want to reserve?
10        MR. BICKERTON:  Yeah.  We'll read.
11        (WHEREUPON, THE DEPOSITION WAS CONCLUDED.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 109

1
2              CERTIFICATE OF OATH
3
4    STATE OF FLORIDA)
5    COUNTY OF OKALOOSA)
6
7         I, the undersigned authority, certify that Derrick
8    Harris, MBA, AIC, personally appeared before me on the 14th
9    day of February 2020, and was duly sworn.
10
11        WITNESS my hand and official seal this 17th day of
12   February 2020.
13
14
15
16
17
18
19   REBECCA S. DANIELS
     Notary Public - State of Florida
20   My Commission No. GG 079297
     Expires:  June 29, 2021
21
22
23
24
25

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                                    Pages 110..111

Page 110

```
 1
 2                    CERTIFICATE OF REPORTER
 3
 4
       STATE OF FLORIDA)
 5
 6     COUNTY OF OKALOOSA)
 7
 8
 9         I, Rebecca S. Daniels, Registered Professional
10     Reporter, certify that I was authorized to and did
       stenographically report the deposition of Derrick Harris,
11     MBA, AIC; that a review of the transcript was requested; and
12     that that transcript is a true and complete record of my
13     stenographic notes.
14
15         I further certify that I am not a relative, employee,
16     attorney, or counsel of any of the parties, nor am I a
17     relative or employee of any of the parties' attorneys or
18     counsel connected with the action, nor am I financially
19     interested in this action.
20
21
22
23                         REBECCA S. DANIELS
                           REGISTERED PROFESSIONAL REPORTER
24
25
```

Page 111

```
 1                                          CHANGE/REVISION SHEET
 2
       IN RE:  AMERISURE INSURANCE COMPANY
 3                        DATE TAKEN: 2/14/20
                vs.              Case No. 8:18-cv-3042-T-24SPF
 4
       FCCI INSURANCE COMPANY, NATIONAL TRUST INSURANCE
 5     COMPANY, TSG INDUSTRIES, INC., THE AUCHTER COMPANY,
       ARCH INSURANCE COMPANY, and LANDMARK AMERICAN
 6     INSURANCE COMPANY
                                  * * *
 7
       PAGE   LINE                      CHANGE/REVISION
 8     _____
 9     _____
10     _____
11     _____
12     _____
13     _____
14     _____
15     _____
16     _____
17     _____
18     _____
19     _____
20     _____
21
22     Under penalties of perjury, I declare that I have read the
       foregoing document and that the facts stated in it are true.
23     _____
24
25     DATE                    DERRICK HARRIS, MBA, AIC
```

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                          Index: #3..5

**Exhibits**

**Exhibit 1** 3:2 8:12,14

**Exhibit 2** 3:5 21:19,22 24:15 26:11

**Exhibit 3** 3:7 22:5

**Exhibit 4** 3:9 22:7 23:25 24:4

**Exhibit 5** 3:11 24:13,14,20 25:9 28:11,12

**Exhibit 6** 3:12 29:20,25

**Exhibit 7** 3:14 6:14 32:20,23 41:12 57:5

**Exhibit 8** 3:16 40:20 41:3

**Exhibit 9** 3:18 46:17

**Exhibit 10** 3:20 49:13,14,18 54:17 56:17

**Exhibit 11** 3:22 58:11,14

**Exhibit 12** 4:2 64:11,14

**Exhibit 13** 4:6 69:8,14

**Exhibit 14** 4:8 79:16

**Exhibit 15** 4:9 91:15,22 95:4 96:3 105:12,21 106:7,18 107:15

**Exhibit 16** 4:11 98:12,14

---

**#**

**#3** 37:8 57:13

---

**$**

**$1,000,000** 50:25

**$1,062,492** 86:11

**$2,000,000** 51:10

**$241,720.01** 86:13

**$3,762,821** 86:8

**$375,000** 86:9

**$5,067,033.01** 75:21 86:17 87:5

**$998.91** 36:25

---

**(**

**(1)** 101:21

**(5)** 52:13

---

**0**

**000006** 34:19 42:3 57:9

**009141** 24:17

**009145** 25:4 27:21

**02** 25:22

**025** 97:17

**026** 34:21 36:6 39:22 85:11,12

**03** 97:17

**04** 97:17

**05** 60:9 76:25 97:18 101:6,14,15

**055** 35:1 38:12 39:22,25 97:18 100:25 101:12

**06** 100:25 101:14

---

**1**

**1** 8:12,14

**10** 49:13,14,18 54:17 56:17 83:14,15

**100%** 37:2,4

**11** 22:5 58:11,14

**1185** 52:23

**11th** 28:6

**12** 60:9 64:8,11,14 76:25 97:18 100:25 101:6,14,15

**12/05** 38:12

**12:14** 54:15

**12:25** 54:15

**12th** 28:6

**13** 69:8,14

**14** 79:16

**15** 91:15,22 95:4 96:3 105:12,21

**16** 98:12,14

---

**1997** 11:15

---

**2**

**2** 21:19,22 24:15 26:11

**2001** 11:24 12:1,2

**2003** 12:19

**2004** 13:2,6

**2006** 26:8 27:3,8 28:9

**2007** 11:11 25:22 37:3

**2009** 11:12

**2010** 21:4 22:5,7 25:16 29:22 31:2 33:3 37:22 42:18 57:6,17,23 58:2

**2011** 13:23,24,25 46:8,24

**2017** 14:22

**2019** 18:20 19:8,15,19

**21st** 21:4

**227** 80:3

**23rd** 25:16 29:22 31:2

**25** 27:3

**2:11** 82:21

**2:16** 82:21

**2:46** 100:22

**2:58** 100:22

---

**3**

**3** 22:3,5,12 83:12

**30** 22:7

**30(b)(6)** 102:24 103:21 104:6

**31st** 37:3

**3:16-cv-407** 56:16 87:24

---

**4**

**4** 22:3,7,12 23:25 24:4

---

**5**

**5** 24:13,14,20 25:9 28:12 83:13

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020

**5/3/2007** 36:23

**55** 40:18 60:9 76:25 101:4,11

---

**6**

**6** 29:20,25 74:8,11,13

**612** 8:24

**627** 25:13

---

**7**

**7** 32:20,23 41:12 46:8,24 57:5

**7th** 42:18

---

**8**

**8** 40:20 41:3

**8/11/2010** 22:18

**8/17/2007** 37:1

---

**9**

**9** 24:7 33:2 37:21 46:17 57:6,17 58:2

**9/21/2010** 21:14,17 23:20

**9/22/2008** 98:21

**9/27** 16:23

**97** 11:15

**9957** 46:11

**9970** 46:11

**9:00** 24:7

---

**A**

**a.m.** 24:7

**ability** 28:2

**absorbed** 12:7

**accept** 70:10,13

**acceptable** 52:12

**accepted** 42:15,21

**accident** 38:8 102:4

**acknowledges** 84:7

**act** 78:2 80:11 81:1

**action** 41:6 61:5,11 62:25 63:1 77:20 78:2 85:21,23 87:12,16,20 88:25 89:2,3,18 90:7,10 95:12 103:9,25

**actions** 35:7 38:4 40:7,11 41:20 75:1 101:21

**actively** 89:13

**acts** 67:12 74:6

**actual** 46:2 61:22 102:11

**added** 37:9,15,22 57:14,20

**additional** 33:7,25 34:7,21 35:1, 5,6,11 38:6,13 39:21 52:22 53:3, 14,20,23 54:8 56:2,12,18 60:8,9 75:6,7 78:10 80:21 81:10 84:2,3 99:14 101:20 102:2,5

**additionally** 39:23 74:18 86:13

**address** 105:5

**addressed** 35:15 67:20 71:13

**adjudication** 102:11

**adjusted** 13:20

**adjuster** 11:21 18:5,6 25:18 30:11 33:4 39:7 41:13 48:18

**adjusters** 32:15

**adjusting** 15:8 59:20

**admit** 91:8

**affected** 61:23

**affirmative** 58:10,20,24 59:16, 24,25 60:4,11,14 61:8 64:4,17,22 65:15,22 66:12 67:3,20 70:23 71:2,13,14,20,24 76:22 81:8 84:17,19,21 85:2,18 86:4 88:12, 14 91:3 92:1,20 94:15,24 95:8 97:2 98:9 99:24 101:2,6,18 104:25

**afford** 60:6 85:19 95:11 97:4 100:1

**afforded** 52:16

**agent** 24:22

**agents** 65:5 66:22 71:1,6

**Aggregate** 51:4,9

**agree** 27:2,6,10 28:1,8 35:14,19 37:12 40:17 41:2,6,19 45:8 50:2, 6 65:14 74:24 79:19 90:15,17 102:9

**agreed** 42:12 43:5,17 44:9,12, 18,23

**agreement** 35:4 49:15,22,24 50:10 52:15 53:10 81:12,17,18 82:4 84:11 99:2 102:6

**ahead** 14:4 29:9,17 32:13 40:25 41:23 42:9 54:13 61:2 72:9 78:14 80:15,18 81:5 88:19,20 90:25 92:14 99:6 104:15

**AI** 37:9,15,23 38:4 57:14,20 81:1

**AIC** 8:2

**allegation** 44:17

**allegations** 27:3,11 79:20 80:10 103:8,24

**allege** 68:8 89:24

**alleged** 65:17 66:3 67:5 70:23 71:2,21 87:22

**alleges** 26:16

**allocate** 100:3

**allocation** 100:16

**allowed** 52:17

**Aluminum** 83:12

**amended** 35:3 58:10 74:2 75:18 78:25 79:4,19 87:11 90:4

**Amerisure** 17:5 56:16 63:1 78:1 103:19 104:5

**amount** 48:11 63:15 75:21 86:11 87:5

**amounts** 28:6 50:15 100:4

**analyst** 13:5

**and/or** 66:20,21,25 95:13

**apologize** 16:2,6,7 17:6 20:5 33:16 36:16 40:4,23 85:11 92:15 95:20 101:13,16

**appears** 25:16 36:13 39:14 89:1

**applicable** 8:10

**application** 29:6,13 37:1 55:9 94:16 95:2

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                    Index: applies..Bickerton

**applies** 34:22 51:5 100:15

**apply** 36:6 61:17 73:9

**appoint** 42:19 45:8 47:5,11

**appointed** 45:4 47:2,7,8 65:4

**approvals** 86:10

**approve** 59:16

**approved** 59:19,20

**approximately** 48:10

**Arch** 19:18,22 20:16,20 56:16
61:25 63:9 64:23 65:16 66:10,17
68:1,10 70:24 71:5 74:1,25
75:16,20 76:6,15 77:19,23 78:5
79:5 86:24 87:2,4 88:21,24 89:4,
9,13,18 90:2,8 99:12 100:2

**Arch/auchter** 65:1 66:21

**areas** 28:5

**argued** 70:2,22 77:19 78:1 88:24
89:4,9

**arguing** 67:4,7 73:10

**arguments** 88:4

**arise** 68:9 89:25

**arising** 74:6 89:6

**Article** 74:7,11,13

**asserted** 86:24

**assigned** 13:7 18:4,6,13,25

**assignment** 13:1

**assume** 16:9

**assumed** 80:20

**assumption** 63:21

**attached** 22:21 23:10,14,15 26:9

**attend** 30:4 31:14

**attendance** 30:12

**attended** 30:5

**attention** 23:25 57:11 69:17
83:4

**attorney** 17:12,14 33:2 47:17
48:3,9

**attorney's** 47:14

**attorney-client** 77:4 102:15
103:14

**attorneys** 49:9

**Auchter** 19:15,22 20:2,16,20
23:1 25:19 33:25 34:5,12 37:8,
15,22 38:3,5,6,7 39:20 49:15
50:4 52:18,21,22 53:3,14,20,23
54:7,8 55:6 56:2,11,12 57:13,20
60:7 61:3,4,10,15,17,18,19,21,
23,25 62:10,11,12,18 63:9 64:23
65:16 66:11,17 68:1 70:24 71:5
74:1,6 75:1 76:6,15,23 77:19,23
78:5,11 79:5 80:19 81:10 85:2,3,
8,20 86:24 87:2 88:22,24 89:4,9,
13,18 90:8 95:11,13 97:4,6,7
99:12 100:1,2

**Auchter's** 33:6 34:7 62:7 80:5

**August** 22:5,7

**author** 39:11

**authorization** 59:11

**auto** 12:3,24 37:9 52:20 57:14,20

**Automatic** 34:21 83:13

**Avenue** 20:16 99:10,11,12

**award** 63:8

**awarded** 63:15 76:15 85:22 87:2
95:12

**awards** 75:19 87:4

**aware** 23:23 42:12 43:16 56:15
57:4 62:16 63:7 64:16 67:19
87:23 88:1,4,8,9 93:19 96:7,21

---

**B**

---

**B(1)** 102:9 103:7

**back** 12:7 24:14 26:17 28:11
30:20,21 40:22 41:1,12 53:5,6
54:17 57:5 67:24 76:21 81:8 92:3
93:4 94:20 95:24 102:9

**background** 11:2

**balance** 37:1

**BALICE** 8:7,23 9:2,4 18:22 19:7
20:3,10,12 21:10,13 22:14 23:11
26:21 27:9,15,19 28:20 29:2,4,9,
10,17,19 30:24,25 31:6,8,23
32:6,18 33:20 34:10,16 35:18,24
36:10 37:20 38:2,16,22 39:4
40:15,16,20,25 41:5,11,17,18,23,
25 43:1,3,13,15 44:7,16,22 45:2,
12,22 46:2,5,15,19 47:23,25

48:5,15,22 49:3,4,12 50:8 51:20
52:5 53:7,9,18 54:3,9,13,16 55:7,
13,23 56:14,24 57:8,25 58:6
59:3,9,14,22 62:24 63:6,24 65:24
67:9,23 68:14,23 69:1,4,9,16
70:7,19 71:17 72:1 73:2,15,22
75:5,12 76:11,18 77:3,12 78:14,
21,24 79:13,18,23,25 80:2,15,17
81:5,7,23 82:2,20,22 83:23
84:10,16 88:3,11 90:21,25 91:2,
12 92:4,6,17,24 93:14,25 94:5,14
96:4,6,11,13 97:1 99:6,8,23
100:21,23 102:14,17,21 103:5,6,
13,19,23 104:4,12,17,21 105:7,
16

**barred** 64:24 66:6,13 67:11,16

**based** 17:20 20:6 25:24 26:6
29:6,11,13 36:7,15 44:24 65:14
67:3 68:6 72:13,14 73:25 74:24
79:9 89:10,11,22 97:25 102:14,
18 103:13,15

**bases** 84:21 105:1

**basically** 85:9

**basis** 27:15,16,18 36:9 38:23
39:3,5,7 44:8,11 53:16,17,25
54:4 55:13,20 56:13 61:14 77:3,8
78:15,18 81:13,14,22,23 82:4,23
84:18 85:4,5 86:4 88:13 90:21
98:9 103:11 104:2 105:4,24

**Bates** 16:21 17:8,10 24:16 25:3
34:18 46:10

**beg** 78:3

**behalf** 9:15 32:7,9,10,14 34:5

**believes** 28:13

**Bickerton** 9:1 17:19 18:21 19:5
20:1,9 21:7,11 22:10 23:8 26:19
27:5,13,16 28:18,25 29:7,15
30:19,22 31:4,17,20 32:3,12
33:17 34:8,13 35:16,22 36:8
37:17,24 38:14,19 39:1 40:13,19,
21 41:8,15,21 44:5,14,20,25
45:10,21,23,25 46:12 47:16,19
48:1,12,20 49:1,10 50:5 51:18
52:1 53:4,15,24 55:3,11,16 56:8,
21 57:7,22 58:4,25 59:7,12,17
62:20 63:3,22 65:18,20 67:6
68:21,25 69:2,7,10,13 70:4,17
71:15,22 72:24 73:13,19 75:2,9
76:8,17 77:1,6 78:12,17,22
79:11,15,21,24 80:1,13 81:3,20,
25 82:7,10 83:20 84:5,14 87:25

88:7 90:19,23 91:10 92:2,5,7,11,
22 93:11,21 94:3,10 96:2,5,10,23
99:4,20 100:17 102:12,16,18
103:2,10,15 104:1,10,13,19
105:8,11,19

**binding** 99:2

**bit** 26:17 74:8 85:17

**blank** 42:24

**blanket** 35:1 38:12

**bond** 77:25 78:7

**book** 12:24

**bottom** 99:10

**Bradfield** 100:9

**breach** 68:2,5,8 72:13 74:2,4,10,
12 77:17,21,24,25 78:6,7 88:23
89:10,19,21,24 90:9

**breached** 74:19 89:8

**breaches** 68:11 74:21 75:17
90:3

**break** 10:22 47:19,23 54:12,14,
15 82:20,21 100:22

**Brian** 104:20,21

**briefs** 77:19 88:25 89:5,9

**bring** 8:17 9:5

**broad** 21:12

**broker** 21:18,20 22:1

**brokers** 98:25

**brought** 8:19 9:7 105:13,20

**Bryan** 21:24,25 22:1 23:21 98:24
99:3,18

**Bryan's** 99:22

**building** 24:8 28:3,5 66:19,21
71:4 75:22 80:6,8,20 86:8,16,20
87:6

**burden** 100:7

**business** 12:24 31:15

———————————
C
———————————

**California** 12:25 14:12

**call** 17:16,17 25:13

**called** 11:10

**calls** 81:21

**camera** 33:18

**canceled** 52:17

**canopies** 62:1

**capacity** 9:21

**capture** 25:25

**carpet** 87:13,17,21

**case** 15:3 43:11 47:6,7 55:18
56:15,16 75:19 77:9 78:18 87:23
96:10 100:11 102:19 103:16

**casualty** 11:21 25:18 33:4
100:8,9

**categories** 86:19

**caused** 69:23 72:17 74:21

**causing** 38:8 102:4

**ceiling** 87:13,21

**certainty** 64:12

**certificate** 11:11 15:22,23,24
54:7 55:1 56:2,11 98:16,18,19
99:3,10

**certificates** 52:11,15 55:6 97:8,
11,14 98:3,6 99:18

**certified** 104:7

**certify** 29:2,9,17 31:6 40:15
41:17,23 78:14 80:15 81:5 90:25
99:6 102:25 104:7

**CG** 39:22,25 60:9 76:25 85:11,12
101:11

**CG2010** 52:23

**CGL** 34:21 35:1 36:6 38:12 39:22
40:18 85:11 88:6 97:17,18
100:25 101:4,11,12

**chain** 12:14

**change** 37:4 48:3 97:12 98:5

**changed** 58:1

**check** 36:21

**Christopher** 25:20 33:2,24

**citation** 75:18 100:7

**cited** 17:7

**cites** 98:2 100:9

**City** 11:4

**civil** 8:9,24

**claim** 14:11 22:9,21,23,24 23:15
25:1,25 30:18 31:3 48:18,23
72:4,10 73:8 74:7,11 77:18,22,23
78:7,11 87:1 94:2

**claimed** 66:24 69:19,21 76:6

**claiming** 55:14

**claims** 11:21 12:9,23,24 13:10,
15,17,18,20 14:1,6,7,8,11,12
15:8 18:4 21:21 23:9,16 39:17,
18,20 40:1,3,8 41:14,19 42:3
59:20 62:17 68:4,5 71:20,21
72:13 76:7 78:1 89:10,15,21
90:15,16,17 94:2 96:22 100:2

**clear** 85:6,12 96:2

**clearer** 68:20

**CNA** 12:6,7,8,17

**CO14** 37:3

**coating** 83:15

**college** 11:2,3

**combines** 38:7 102:2

**commercial** 14:15 50:24 51:24

**common** 89:2

**communications** 16:25 93:4

**company** 9:12,16 10:5 12:2
13:9 16:13 20:7,23 21:6,16 23:5,
12 24:11,24 32:8,9,11,15 34:12
37:14 42:12,20 43:17 44:9,12
45:4,8,17 47:13 48:17,24 49:7
51:12,14,23 52:21 53:2,11,21
57:18 58:9,23 59:5,15 60:6,14,23
64:23,24 67:17 70:1 71:11,18
72:20 73:16 76:5,14 77:13 80:12
83:19,25 84:3 85:19 90:13 91:24
92:18 93:8,16,18 94:7 95:10,15
97:12,19 99:12,13,25 100:5,8,9,
11,14 101:2 102:23 103:20 104:9

**Company's** 49:6 56:1 58:2
59:11 78:9 81:18 82:3 95:1

**compensation** 97:10

**compensatory** 68:10 75:16
90:3

**complaint** 20:19 23:13,15 25:5

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                    Index: complaints..defective

26:7,9,16,23,24 27:22 42:6,8
44:18 58:10 75:18 79:1,4,19
87:11 90:5

**complaints** 88:22

**complete** 37:3 42:24 52:23 74:3

**completed** 8:25 36:6 37:4 51:5,
9 60:19 80:19

**completion** 84:9 86:21

**comply** 61:25

**components** 66:19 71:4

**concept** 68:6 72:14 89:11,22

**concepts** 73:9,11

**concludes** 104:8

**conclusion** 65:19 83:21

**conduct** 86:9

**confirm** 30:3

**conflicts** 55:17

**confuse** 89:1

**connection** 75:23 86:12,16 87:7

**consideration** 56:3

**considered** 33:7 103:8

**consistently** 61:16

**constitute** 90:18 103:25

**constructed** 73:18

**constructing** 80:5,8

**construction** 13:2,3,5 14:10,14
15:5 79:20 80:10,22 81:1 100:8
103:24

**consultants** 75:25 86:14 87:9

**contained** 39:15 56:4 90:12
105:24

**contesting** 51:13,15,19,22,24
52:2 53:2 67:18 72:21 73:17
76:6,12,13,15,20

**continued** 28:3

**continues** 28:5

**contract** 35:2 37:15 50:13 53:22
56:9 61:18 62:1 68:3,5 72:13
73:8 74:4 77:18,22,24 78:6 84:7,
15 88:23 89:10,19,21 90:9 99:15

**contractor** 85:14

**Contractors** 34:22

**contractual** 68:2,7,9 72:15
77:20 88:23 89:1,3,12,19,23,25
95:2 97:13,15 98:5,7

**contractually** 53:2,13

**conversations** 18:11 19:2,14,
18,21 93:2

**convictions** 16:9

**coordination** 65:2 70:24

**copy** 8:24 9:1 23:6,13 36:21
40:19 42:8 43:14 49:14 58:8
105:16

**Corp** 99:13

**corporate** 9:11,22 10:3,11 104:9

**correct** 9:13,14,17 20:17,18
23:6,14 28:21 37:23 40:9,18
45:19 48:1 51:25 52:24,25 60:12
62:14,19 63:2 67:14,15 68:16
74:13,14 76:7,19 84:13 96:4
98:17,22 100:25 104:12 105:21,
22

**correctly** 34:23 35:9 37:10 38:9
50:20 51:1,6,10 52:24 54:21
57:15 60:10 61:12 64:21 65:6,9
66:24 69:24 71:7 72:18 74:9,22
76:3 80:6,23 83:16 85:25 95:17,
20 99:15 100:12 101:24 102:7

**counsel** 8:23 45:4,8 47:2,7,9
68:8 100:19

**count** 74:4

**counts** 89:24

**couple** 23:16

**court** 29:3 56:15 72:16 73:17,25
74:18 75:19 87:2,3,23 88:5 89:5,
8 103:1 104:7

**court's** 72:21 73:25

**cover** 102:5

**coverage** 12:10 28:13 29:11,12
34:4 50:16,19 52:16 53:23 54:19
56:19 60:7 63:1 78:11 85:19 88:6
95:11,19 97:4,13 98:5 100:1,5

**coverages** 56:5

**covered** 100:3

**criminal** 11:7

**critical** 61:23

**cross** 104:14 105:9

**CROSS-EXAMINATION**
105:10

**crowning** 63:19

**crowns** 62:1

**current** 58:2

**cursory** 18:24

**curtain** 50:3 74:17

**custom** 45:7 47:11 99:17

**customary** 47:4 59:19

### D

**daily** 61:24

**damage** 17:1 80:4 85:20,24
93:19

**damaged** 87:22

**damages** 63:11,12 65:17 66:3,
23 67:4 68:10,11 70:23 71:3
74:22 75:16,19,21 76:1,7,16
85:22 86:15,20,22,24 87:2,4,5,
12,15,17,21 90:1,3 95:11,17,19
100:3

**Darroch** 46:10

**date** 20:13 21:2 25:22 26:2,5
46:16 98:21

**dated** 16:23 22:5,7 25:16 29:21
33:2 46:7

**dates** 27:6

**day** 22:6,8 23:1 26:3 29:22 33:1

**days** 52:13,18

**de-lamination** 83:15

**December** 26:8 27:3 28:9 33:2
37:21 57:6,17 58:1

**declaratory** 77:24 78:6 90:8

**defaults** 26:3

**defect** 13:3,5 14:14 15:5

**defective** 73:18 74:19,20 79:20
80:22,25 86:16 90:16,17

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                        Index: defects..entered

**defects** 14:10 66:20,21 71:5 72:17 74:18 89:6

**defend** 42:13 43:5,18 44:9,12, 19,23 45:5,9

**defendant** 65:5 66:15,20 68:7 72:15 89:12,23

**defendants** 66:18,24

**defendants'** 58:9 69:19

**defended** 47:8

**defending** 48:17 49:9

**defense** 28:13 42:16,21 45:4,8, 17 46:24 47:1,3,5,14 48:19 60:4, 14 61:9 64:22 65:16,22 66:12 67:3 70:23 71:2,13,14,20 81:9, 13,14 84:18,19,21 85:3,18 86:5 88:12,14 91:3 92:1,21 94:15,24 95:8 97:2 98:10 99:24 101:7,18 104:25

**defenses** 43:16 58:10,20,24 59:16,24 60:1,11 64:5,17 67:20 71:24 76:22 92:19,20 101:3

**deficiencies** 72:17 80:5,10 103:24

**deficiency** 80:8 86:21

**Define** 31:12

**defined** 40:11 85:21,24

**definition** 40:17 85:24 90:12

**degree** 11:5,7 15:18

**delay** 86:22

**delays** 80:5

**delivered** 105:3,5

**denial** 33:21,23 34:11

**denied** 102:24

**denying** 33:6 34:4

**depict** 61:21

**deposed** 8:3 10:13

**deposition** 8:8,16,18,25 9:9,18, 22 10:24 16:16 17:5 19:6,10 53:12,13 55:19 58:11·102:20 103:17,18 104:9 105:13

**depositions** 16:24 17:3,4,6 93:17

**DERRICK** 8:2

**describe** 61:22

**description** 24:17 83:7

**descriptions** 99:9

**design** 65:2 66:20 70:25 71:5

**designee** 9:11

**determination** 36:11 55:25

**determine** 44:18 75:25 86:15 87:9

**difference** 84:25

**differently** 85:5

**direct** 8:6 23:24 57:10 69:17 83:4 104:10,23

**discussed** 60:18 94:21

**discussing** 34:6

**DISCUSSION** 43:2 46:4 105:18

**discussions** 92:10

**dispute** 37:25 75:7,8,10 84:11 102:21 103:5

**disputes** 103:19

**disputing** 53:21 60:22,23 62:25 70:2,15 71:11,16,19,23

**distinction** 73:7

**district** 56:15 87:23

**DJ** 16:23

**doctrine** 95:16

**document** 8:12 29:23 32:20 33:5,10 49:16,20 50:6 58:12,17 59:5,10,25 60:1 64:13,18 70:10, 11 79:8 91:18 93:4 98:12,13

**documentation** 61:20

**documents** 8:18 9:6,7,9 16:17, 19,20 17:21 18:20 22:9 44:1 61:18 91:17,20 93:3 96:1

**door** 83:13

**drawing** 42:24

**drywall** 87:13,17

**Duces** 8:17

**ductwork** 61:19

**due** 80:22 86:16

**duly** 8:3

**duration** 54:20 56:6 81:11,16 82:15,16,17

**duties** 68:9 89:25

---

**E**

**eager** 45:25

**earlier** 49:25 82:19 103:16

**earliest** 21:21 27:8

**ease** 20:24

**East** 11:3

**edge** 91:18

**edition** 52:23

**educational** 11:1

**effect** 57:1

**EFIS** 62:2

**eighteen** 88:15,16,18 94:20 105:1

**eighth** 36:3

**eighty-one** 70:20

**eighty-three** 75:20

**eighty-two** 73:23,24

**element** 89:2

**eleven** 58:7

**email** 93:4

**emails** 16:24

**employees** 66:22

**Employers** 100:10

**employment** 12:4

**end** 65:12

**endorsement** 35:1 36:6 38:13 39:9,15 40:12,18 60:9 80:12 81:2 85:12 97:17 100:25 101:1,2,17, 19

**endorsements** 34:21 35:12 39:23

**engineer** 30:7

**entail** 14:8

**entered** 50:3 55:18 56:25 57:4

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020
Index: entirety..Florida

63:8 102:19 103:16

**entirety** 60:15,16

**entities** 65:4 71:1

**entitled** 68:10 75:16 86:19 90:2

**entrances** 83:12

**enumerated** 103:18

**envelope** 75:22 80:9,20 86:8,17, 20 87:6

**equipment** 83:13

**equivalent** 52:24

**evaluating** 77:25

**event** 27:4 28:9 87:1

**events** 21:9 61:22

**eventually** 28:2

**Everbank** 28:7

**Evergreen** 17:21 18:12,16

**evidence** 44:24 94:17,18

**examination** 8:6 104:11,23

**excess** 37:9 52:21 57:14,20 97:19

**exclusion** 85:10 94:17 95:3

**exclusions** 85:11

**exhibit** 8:12,14 21:19,22 22:5,7 23:25 24:4,13,14,15,20 25:9 26:11 28:11 29:20,25 32:20,23 40:20 41:3,12 46:17 49:13,14,18 54:17 56:17 57:5 58:11,14 64:8, 11,14 69:8,14 79:12,13,16 87:16 91:10,11,15,22 95:4,25 96:3 98:12,14 105:12,21

**Exhibits** 22:3,12

**exist** 65:1 66:10 91:17

**expected** 94:16,22

**expense** 50:15,18 82:13

**expenses** 75:22 87:6

**experienced** 80:21

**expert** 69:19

**expire** 52:17

**expired** 81:12,17,19 82:5

**extent** 9:9 39:2 46:13 64:25

66:9,14 81:21 92:8,9 94:12 105:23

**extrinsic** 44:24

**eyes** 86:1

F

**facsimile** 23:20 24:14

**fact** 17:7 25:1 36:12,19,23 54:6 55:4 56:10,17 57:19 60:19 68:1,4 69:19 71:19,23 73:7,25 77:18,20, 22,25 78:5 84:3 86:6,18,23 87:3, 11,15,19 88:21,24 89:16 90:2 91:18,19

**factory** 61:16

**facts** 21:8 37:18 38:21 55:21 60:13 61:5 75:7,10 77:10,13,16 78:20,23 84:23 85:15 91:20 94:22 95:22 96:1 103:3 105:25

**factual** 36:8,11 39:5,7 53:17,25 54:3 61:14 81:13,14,23 82:4,23 84:18 85:4,5 86:4 88:13 91:4 92:5,6,20 94:18,25 97:20,22,23 98:8 105:1,4,24

**factually** 72:16 73:3

**fail** 100:6

**failed** 61:16,17,19,21,23,25 74:2, 5 100:3

**failing** 74:20

**failure** 89:6

**fair** 57:17 63:21 77:11

**falls** 77:6

**familiar** 10:17 16:12 17:21,24 18:3,15,19,23 20:15,20,25 22:15, 16,19 25:10 33:9 39:22 46:20 56:22,25 57:2 59:25 62:13 64:4,6 68:15,18 70:9 88:10

**fault** 38:5 61:4,10 62:9,10,11 65:1,4,5,16 66:3,10,14,15 67:4 68:6 70:23 71:1,3,19 72:14,23 73:11 76:23 77:18 85:8 89:11,14, 22 101:23

**fault'** 89:2

**faults** 67:13

**faulty** 68:13 72:12 74:21 90:7, 15,17 103:7,8

**favor** 75:20 87:4 89:5

**fax** 21:17

**faxed** 22:24

**FCCI** 14:24 24:17 25:2,4,6,17 27:21 28:21,22 29:22 30:3,5,15 31:9,14,15,24 33:1,5 34:18 37:13 38:21 42:3 46:11 53:25 55:21 58:9 60:6 63:1 77:10 78:20 80:3 82:16 85:19 88:1 92:12 93:5 95:10,15 97:3,5,12,17,19 98:4 99:2,19 100:1,6,19 104:15 105:2

**FCCI's** 37:19,21 39:2 57:9 78:18 90:24 101:16

**Federal** 8:9

**fees** 47:14,17 48:3,4,8,11

**felony** 16:9

**fifteen** 97:3

**fifty** 12:16

**file** 18:4,5,25 21:21 22:9 23:10, 16 30:18 31:3 48:23 94:2

**filed** 20:15,19 42:6 59:6,10,21 79:1,5 88:22 102:23

**filing** 28:14 59:16

**final** 16:22 61:6,15 62:14,21 63:7 67:19,25 68:16,22,23 69:5 70:15, 18,21 71:10,12 73:11,20 74:25 75:3,14 77:17,21 79:3 85:22 86:6,18,23 89:16,17 90:6,10 95:12

**finally** 80:19

**find** 46:2 84:25 89:8

**findings** 61:5 73:24,25 88:10

**finds** 72:16 74:18

**fine** 9:20 53:25

**finish** 54:12

**finished** 11:5,12 13:2 36:13

**Fireman's** 13:25 14:6,20,22

**firm** 22:6,8 23:1 29:22 33:1 46:9

**flipped** 86:1

**floors** 28:6

**Florida** 13:13,14,16,20 14:12 15:8,14 29:6,14 72:12 100:15

focus 62:18

focused 72:11

follow 63:4 86:2

follow-up 100:24

force 54:19 56:5

Forcon 99:13

Forest 99:11

form 18:21 20:1,9 23:8 27:5,13 30:19 31:17 32:3,12 34:8,13 35:16,22 37:17,24 41:8 44:5,14, 20,25 45:10 47:16 48:12,20 49:10 50:5 51:18 52:1,23 55:3,11 56:8,21 57:22 58:4,25 59:7,12,17 62:20 63:3,22 65:18 67:6 70:4,17 71:15,22 72:24 73:13,19 75:2,9 76:8,17 84:5,14 87:25 88:7 92:7, 22 93:11,21 96:23 99:20

fortuity 95:16

found 56:16 62:10 73:17 81:14 88:5

fourteen 61:25 79:15 95:9

free 74:18 78:22

front 83:5

fulfilled 82:18

full 53:16 69:18 70:22

fully 36:25 64:6 74:1

Fund 13:25 14:7,21,22

future 72:4,11

---

**G**

gaskets 61:16 64:1

gave 36:22

general 14:15 25:18 33:3,4 34:1 37:7 50:24 51:4,25 52:9,20 57:12 99:14

Georgia 105:3

give 36:16 45:25 64:10

GL 37:9,15 57:14,20

glass 36:24 37:2 83:14

glazing 36:24 37:2 72:4,11,17 83:14

GOLDENBERG 104:22,24 105:6

good 15:16 47:20,21,24 48:14

Goodman 46:8

graduated 11:6

Great 9:2 34:17

grounds 68:3 89:19

Group 25:17

guess 36:2

guideline 38:25

guilty 73:6

guy 33:18

---

**H**

halfway 34:19,20

hand 8:11

handed 26:10 32:25 49:13

handing 46:6

handled 12:15

handling 14:15

happened 12:1,19

Harleysville 12:20,22 13:22,23

harmless 74:6

Harris 8:2,11 9:11 32:20 43:4 78:25 105:12,20

hazard 81:11

head 44:1 104:19

Healy 25:17 33:3 41:13 57:6

heard 65:12

held 39:20

highlighted 46:14

hired 102:3

hold 74:5

Honestly 86:1

hour 17:17

hours 17:18,19

hundred 12:15

hundreds 16:23

---

**I**

IBA 75:24 86:14 87:8

IBA's 69:19

idea 99:21

identification 8:15 21:23 22:13 24:21 30:1 32:24 41:4 46:18 49:19 58:15 64:15 69:15 79:17 91:23 98:15

II 74:5

III 12:23 14:6,9

immediately 12:4

implicated 68:4 89:21

important 72:3,10

imposed 35:8 38:5 61:3,10 62:11 74:25 76:23 85:7 101:22

improper 66:19 71:4

in-person 17:18

inappropriate 69:20

incepted 60:20 85:16

inception 36:13 82:18 85:7

include 35:3 75:22 87:5

included 16:22 30:18 31:3 39:3 54:25 94:1 99:14

includes 86:8

including 52:22 71:3 100:6

indelicate 16:2

indemnify 74:5

indemnity 68:2 88:23 89:1,2,3, 19 97:5

indent 51:4

independent 30:10 65:3 71:1

indication 48:23 49:7 83:2 84:8

indicative 69:20

individual 58:22

indulgence 78:3

Industries 22:6,8 46:9 89:18 100:10

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                    Index: industry..letter

**industry** 11:14

**information** 25:14 37:7 52:9 57:13 70:14 75:7 91:14,16,20 94:1

**initial** 12:23 20:13

**Inman** 18:10,12

**inquire** 78:22

**inquiry** 77:7 90:23 102:19,20

**inspection** 24:4,6,11 30:4,5,14, 17 31:1,14 32:1

**inspections** 17:1 31:10

**inspectors** 66:22 71:6

**installation** 94:8

**installed** 66:19

**Institute** 11:9

**instruct** 21:7 22:10 27:13 28:18, 25 29:7,15 30:22 31:4 38:14,20 39:2 40:13 41:15,21 49:1 53:15 54:1 55:12 77:1 78:12 79:21 80:13 81:3,20 90:19 94:3 99:4 102:12 103:10 104:2

**instructing** 65:20

**instruction** 55:14 90:22

**insulated** 83:16

**insurance** 9:12,16 10:5 11:13 16:13 20:7,23 21:6,16 23:5,12 24:10,22,24 25:17 32:8,9,10,15 34:12 35:15,20 37:7,14 42:12,19 43:17 44:9,12 45:4,8,17 47:13 48:17,24 49:6,7 50:16,18,20,23, 25 51:12,14,15,23,25 52:4,12,13, 15 53:1,11,21 54:7,19 55:2,6,25 56:2,5,11 57:12,18 58:2,9,23 59:5,11,15 60:6,13,23 64:23 67:17 70:1 71:11,18 72:20 73:16 76:5,14 77:13 78:9 80:12 81:18 82:3,12 83:1,18,25 84:3 85:18 90:13,24 91:24 93:8,15,18 94:7 95:1,10,14,19 97:8,11,12,14,16, 18 98:3,6,8,16,18,19 99:13,18,25 100:5,11,14 101:1 102:4,22 103:20 104:9

**insurance...for** 95:17

**insure** 81:17 82:4 102:6

**insured** 31:24 33:8 34:1,7,21 35:1,2,3,4,5,6,7,12 38:7 39:19,

21,23 42:4 45:9 52:22 53:3,14, 20,23 54:8 56:3,12,18 60:8,9 78:10 81:10,12 99:14 101:20 102:2,5 105:3

**insured's** 34:1 35:7 36:12

**insurer** 19:1 28:13,14 38:13

**integration** 65:2

**intended** 85:13 94:16,22

**interior** 75:23 86:11 87:7

**internal** 38:25

**International** 99:13

**interpretation** 27:17 55:21 77:7,8 78:19 90:24

**interpreting** 55:20

**interview** 94:7

**interviews** 93:5,7,17

**intrusion** 27:11 28:4 69:18,22 70:3 76:1 80:22 86:15,17 87:10 96:8,21

**intrusions** 28:9

**investigation** 93:1

**invoiced** 36:25

**involved** 58:23

**involvement** 58:19

**involves** 77:20 88:25 89:3

**irrespective** 102:6

**issuance** 95:14

**issue** 18:1 38:9 42:20 63:2 89:6 93:19 102:4 105:24

**issued** 16:13 43:4,22 44:3 46:23 82:17 84:9,12 97:20 98:21 99:3, 19 103:22 105:2

**issues** 64:2,3

**items** 76:1 86:21

---

**J**

**J.B.D.** 100:7

**Jeremy** 104:17,19

**Jim** 94:7 96:16

**Johnson** 11:4 21:24,25 22:1

23:21 98:24 99:2,21

**Johnson** 46:9 99:18

**judgment** 61:6,15 62:14,22 63:8 67:19,25 68:16,22,24 69:6 70:15, 18,21 71:10,12 73:11,21 74:25 75:3,14 77:17,21,24 78:6 85:22 86:6,18,24 89:17 90:6,9,10 95:12

**July** 18:5,20 19:8,15,18 37:3

**jump** 61:7

**jumping** 26:17 97:2

**justice** 11:7

---

**K**

**Keller** 100:10

**kind** 10:21 12:10 97:23

**knew** 33:19

**knowledge** 49:5 59:1,8,18 96:19,24

---

**L**

**lack** 66:18 71:3

**Landmark** 47:8

**language** 35:15,20 36:4 38:12 39:8,13,14 40:1 54:25 55:9 71:9 74:25 77:6

**largest** 28:7

**law** 15:18 22:6,8 23:1 29:6,14,22 33:1 46:9 72:13 73:9 89:2 100:15

**lawsuit** 19:24 20:15,23,24 21:16,18 39:19 42:5 43:6 46:25 49:9 56:22,23 57:2 62:17 64:17 66:16 71:21 88:2

**leak** 68:19 69:22

**leaks** 28:3 80:21

**leave** 103:3

**legal** 39:2 48:4,8,11 53:17 65:19 81:21 83:21 100:20

**lengthy** 73:25

**Lessees** 34:22

**letter** 22:5,7,16,20,21 23:3,6,7,9 24:1,2,3 25:10,12,15,18,20

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                    Index: letters..names

28:21,22 29:21 31:2,11,13 33:1, 3,6,11,21,23 34:4,14,20 35:12, 15,17,20 37:11,13 38:1 39:9,10, 11,13,17 41:14 42:5,20 43:11,14, 20,21 44:3 46:7,9,20,23 57:6,23, 24

**letters** 22:15 34:3,6

**liabilities** 75:4

**liability** 14:15 34:1 35:8 38:5 50:24 51:25 52:20,21 61:3,9 62:6,7,11 64:25 66:9 74:6,25 76:22 77:20,23 85:7 95:3 98:18, 19 99:14 100:10 101:22

**liable** 39:21 74:1

**licensed** 15:14,20

**licenses** 15:11,12

**life** 50:16 82:13

**likewise** 50:18

**limit** 21:8 50:25 51:4,9

**limited** 53:24 54:3 103:3

**limits** 50:19,22,24

**Lindsey** 46:8

**lines** 25:21

**list** 15:12 86:22

**listed** 9:25 33:7 35:5 91:14 101:6 102:24

**lists** 36:24

**litigation** 23:22 48:25 64:5 67:5 79:1 88:5,8,10

**litigations** 62:17

**lobby** 24:7

**local** 8:10

**location** 28:7

**long** 11:22 12:17 13:22 14:20 17:15

**lose** 72:6

**loss** 19:1 25:22 26:2,5 88:2 91:4 95:15

**Loss/fortuity** 95:25

**lot** 17:4 27:6,7 78:3 93:3

**lots** 13:17,18

**lower** 62:1

**Lunetta** 87:20

**M**

**made** 14:5 39:18 42:4 88:5 93:17 96:20

**maintain** 50:14,18 61:24

**maintained** 82:13

**maintaining** 53:12

**maintains** 37:14

**maintenance** 66:18 71:4

**Major** 15:3

**make** 33:17 36:21 46:12 91:10, 11 92:15 97:18 105:16

**makes** 15:10

**making** 8:23 43:13 55:24 73:7

**manifestation** 28:15,17,24 29:5,13

**manner** 74:17 89:7

**mark** 8:12 21:19 22:3 24:13 29:20 32:19 40:20 58:7 64:8 69:7 79:11,13 98:11

**marked** 8:14 21:22 22:5,13 24:20 29:25 32:23 41:3 46:7,14, 17 49:14,18 58:11,14 64:11,14 69:14 79:16 91:22 98:14 105:15, 21

**marking** 69:11

**markings** 23:16 25:5

**material** 20:6 44:4 83:7

**matter** 16:4,14 19:22 20:8 31:15 58:3 60:7 84:4 85:20 95:11 97:4 100:2

**matters** 63:20

**Matthew** 18:10

**MBA** 8:2 11:11,12

**Mcguffey** 46:8

**Mcleod's** 96:7

**MCU** 15:2

**means** 100:4

**meant** 12:25 45:3

**medallions** 62:2

**medical** 10:22

**medication** 16:3

**meet** 17:15 85:24 100:7

**meeting** 17:16,17,18 50:19

**memory** 48:14

**met** 17:11,14 68:7 72:15 89:12, 23

**Metal** 83:13

**Mid-continent** 100:8,9

**middle** 11:5 57:11

**mind** 16:7 40:21

**mine** 36:22

**minors** 11:7

**minutes** 47:22,24

**missed** 95:18

**missing** 36:20,22

**misspelled** 37:8

**mistake** 14:5

**modify** 48:2

**moisture** 83:16

**moment** 30:13 43:9,19

**monies** 75:23 87:6

**months** 61:25

**motion** 102:23

**motor** 83:13

**move** 28:2

**moving** 85:15

**Mueller** 25:20 33:2,6,24

**multiple** 72:17

**Murfreesboro** 11:6

**Mutual** 100:10

**N**

**named** 56:18

**names** 17:7

**naming** 56:2

**Nashville** 12:15

**National** 9:12,16,19 10:5,12 14:24 16:13 20:7,23 21:6,15 23:5,12 24:10,23 28:15 32:8,9, 10,15 34:12 37:14 42:12,19 43:17 44:9,12 45:4,7,14,16 47:13 48:16,24 49:6,7 51:12,14,23 52:2 53:1,11,19,21 54:5,24 55:25 57:18 58:2,9,23 59:5,10,15 60:5, 13,23 67:17 70:1,5,9 71:11,18 72:20 73:16,20 76:5,14 77:13 78:9 80:11 81:17 82:3,25 83:1, 18,25 84:3,6 85:18 90:12 91:24 92:18 93:6,8,15,17 94:6 95:1,10, 14 97:11,16,18 99:25 100:5,14 101:1 102:22 103:19 104:9

**NCIC** 105:2

**needed** 75:23 87:7

**negligence** 38:7,8 39:17,18,20 40:1,3,8 41:14,20 42:3 61:4,11 62:4 76:24 77:15 78:7,11 102:1, 3,5,11

**negligent** 35:7 38:4 40:7,11 41:6,20 78:2 80:11 81:1 89:14 101:21 103:9,25

**Nichol's** 96:16

**Nichols** 94:8

**non-contributory** 97:10

**non-defective** 87:14,18

**noncontributory** 56:20

**nonstandard** 12:3

**notes** 8:19,20,25 16:21 36:22 63:19 78:4 91:5,7 94:2 105:13, 20,24,25

**notice** 8:16 9:6,25 20:22 21:3, 15,20,21 22:21,23,24 23:10,14, 15,21 31:18 52:18 55:17 94:11 102:25 103:21 104:3,6

**notification** 52:14

**Notwithstanding** 28:2

**November** 25:22 42:18

**NTIC** 9:18 43:7 97:3,4 98:4

**number** 15:10 24:16 34:18 52:19,20 60:5 61:9 76:22 81:9 85:18 88:12 91:3 92:1,21 94:15,

24 95:8 97:2 99:24 101:3,18 102:1 104:25

**numbers** 46:11 100:12

**numerous** 16:20

**O**

**oath** 48:8

**object** 21:7 22:10 28:25 29:7,15 31:4 38:19 39:1 40:13 41:15,21 49:1 53:4,15 54:1 77:1 78:12 79:21 80:13 81:3,20 83:20,21 84:5 90:19 92:7,22 93:11,21 94:3,10 99:4 100:17,18 102:12 103:10 104:1

**objecting** 76:9

**objection** 28:18 31:18 32:3,12 34:9 38:14 45:10 46:13 55:11 77:4 90:21 102:14 103:13 104:4

**obligation** 97:6

**obligations** 68:8 72:15 89:12,24

**obtain** 52:3 86:9

**occupancy** 28:4 80:21

**occur** 28:5

**occurred** 28:15 80:4

**occurrence** 24:17 50:25 88:13 90:11,12,18 94:21

**occurring** 28:6

**OFF-THE-RECORD** 43:2 46:4 105:18

**offhand** 17:7

**omissions** 74:7

**ongoing** 34:22 85:4

**operations** 34:23 35:4 51:5,9 52:23 60:18,19,22,25 81:11 85:2, 3,6 99:9

**opinion** 55:8,19

**order** 16:22 55:17 56:25 57:4 77:7 78:10 79:3 102:18,21,23 103:16,21 104:3,5

**orders** 37:4

**organization** 35:3,5,6,8 85:14 101:20,23,24

**original** 23:13

**outlined** 81:12,16 103:11

**owe** 97:5

**owner** 52:12

**Owners** 34:22

**P**

**P.M.** 54:15 82:21 100:22

**pages** 16:24 95:25

**paid** 47:14,18 48:8,9,11 75:24 86:14 87:8

**paint** 61:18

**painting** 64:2

**panels** 62:2 83:13

**paragraph** 24:6 25:4,6 26:13 27:20,21 28:1,8,10,12 30:3 36:2, 3 37:6 38:3,11,17 42:2 50:13,22 51:4 54:18 57:11 60:5,15,16 61:8,9 62:4,6 69:18 70:22 72:3,8, 22 73:23 75:15 80:3,18 83:6,9 84:19,21,22 85:10 100:12 101:19

**paralegal** 11:9,10 15:21

**paraphrasing** 39:8

**part** 14:17 24:11 38:6 42:1 53:10 63:7 71:10,20 72:2 79:2 97:11 98:4 101:2,23 104:4,16

**partial** 38:7,8 60:10,12 102:1,2

**parties** 17:1 66:16 88:9 89:13

**Partners** 20:16 99:11,12

**party** 20:19 31:25 39:19 42:4,6,8 56:23 64:22 65:5 66:6,13,15,17, 20 67:13,15 70:5 75:18 88:1,22 90:4

**pass-through** 63:11,12 75:21 76:6,16 87:1,5

**passively** 89:14

**path...importantly** 61:23

**Paul** 25:17 33:3 57:6 87:19

**payment** 37:2

**PCO14** 37:4

**pending** 15:10 23:21

**penetration** 69:21

**perform** 74:16 75:23 86:11 87:7 89:7

**performance** 77:25 78:7 90:9

**performing** 35:4 60:17,22,25 74:19 85:1,6

**period** 26:1 54:21 56:7 82:16 85:16

**periods** 27:12

**person** 32:2 101:20,23,24

**personal** 59:18 85:13 87:12,17 93:1

**personnel** 19:3,22 93:6,8,18

**phone** 17:16,17

**phrase** 81:25

**pin** 69:11

**place** 21:9 26:1 54:12 93:3 99:2

**plaintiff** 64:25 66:10

**plaintiffs** 64:23 66:6,13,17 67:15 97:20 100:6

**plaintiffs'** 8:14 21:22 22:12 24:20 29:25 32:23 41:3 46:17 49:18 58:10,14 64:14 66:18 69:14 79:16 91:22 98:14

**played** 19:1

**Plaza** 17:22 18:12

**point** 15:20 19:6 20:22 23:5 42:11 45:16 60:24 79:24 92:23, 25 94:6

**pointed** 82:14

**pointing** 42:1

**policies** 14:16,18,19 16:25 37:9, 16 52:16 57:14,21 77:9 78:19 85:21,25 88:6 90:24 97:9,19

**policy** 16:13 25:14 26:1,3,4,6 27:17 28:12,16 33:8 34:2 36:4,14 37:23 38:24 40:19 54:8 55:20,21 56:19 60:6,8,19 77:8 78:1,2,18 82:19 85:7,16,19 90:13,18 95:10, 15,16 97:3,5,12,15,17,19 98:4,7 99:25 100:1,5,6 101:10,13 105:2, 4

**political** 11:8

**portion** 47:14 51:16

**portions** 62:8

**pose** 31:17 34:8

**position** 11:20 12:21,23 14:8,25 29:11,12 37:14,19,21 53:19 54:24 56:1 57:19 58:3 65:15 68:18 70:15 72:21 78:9 81:18 82:4,23 87:24 91:4,25 92:4,5,6, 19,20 95:1,23 97:20,22,23 100:15 101:16 103:5

**positions** 78:18

**possession** 93:16

**post-graduate** 11:9

**post-trial** 77:19 88:25 89:4,9

**potential** 96:21

**practice** 45:7 59:20 99:18,22

**precedes** 26:2,5

**preparation** 16:16 19:10 58:20

**prepared** 9:15,24

**preparing** 19:5 58:23

**present** 22:9

**presume** 14:14 17:11 38:11 42:5 90:11

**prevent** 16:3

**previously** 10:13 14:6 60:18 77:16 86:14

**primarily** 14:11 15:6,8,9

**primary** 56:13,19 97:5,10,16 98:8

**prior** 9:21 18:6 34:4,14 52:18 82:18 95:14

**privilege** 55:15 102:15 103:14

**procedure** 8:9 10:22 31:9,12

**procedures** 8:24

**proceed** 24:5

**process** 17:12 24:11 79:2

**procure** 51:15

**produced** 9:10 42:22 43:11

**product** 86:10 102:15 103:14

**products** 51:5,9

**products-completed** 81:11

**prohibit** 95:16,18

**project** 17:22,25 18:1,3,12,16, 17,23 19:3,16,19,24 24:6 51:5 60:24 61:21,24 62:8 76:2 80:21 93:20 99:11

**projects** 52:22

**properly** 74:3

**property** 24:5 85:20,24 87:13, 14,17,18 93:19

**proposed** 86:25

**protective** 102:23

**prove** 100:4

**provide** 51:24 53:23 54:7 55:1,5 56:11 61:20 83:9 97:7,14 98:6

**provided** 20:22 21:3 29:21 78:19 82:24 83:3 84:1,4 97:13 98:5

**provisions** 97:9

**psychology** 11:7

**public** 95:16

**punch** 86:21

**purchase** 50:14,18

**purchased** 82:12

**purely** 89:11 90:23

**purportedly** 89:6

**purpose** 100:15

**pursuant** 8:9,24 60:8 74:16

**put** 17:8 22:2 39:9,10 85:13 95:6

---

### Q

**qualifies** 53:20

**qualify** 60:8 80:11 81:1 83:19

**question** 10:20 20:11,14 29:2,9, 18 30:21,24 31:7 39:3 40:15,22 41:1,17,24 42:10 44:10 53:6,7,8 62:5 63:5 67:21,24 76:10 78:15 80:16 81:5 82:1 91:1 92:3,14 93:12,22,24 94:11 99:7 102:25 104:6

**questions** 61:8 100:20,24 104:8,20

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                    Index: quick..responsible

**quick** 22:2 82:20 105:9

**quickly** 104:22

---

**R**

**raise** 71:25 101:1

**raised** 43:17 60:1 64:16 71:19
101:2

**RAP** 20:15,24 21:16 43:6 48:25
49:9 62:16,17 64:5,17 67:5 71:21
79:1,5 86:7,10,13,16,19 87:19,21
89:5 100:3

**RAP's** 28:2,7 68:4 71:3 72:3,10
87:11,15 89:21

**read** 24:16 27:24 30:19,21 33:11
34:23 35:9 36:4 37:9 38:9 39:6
41:1 50:12,20,25 51:6,10,17
52:11,24,25 53:5,6,11 54:21
55:10 57:14 60:4,9 61:11 62:9
64:12,18,19,20 65:6,9,14 66:13,
24 67:23,24 69:23 70:21 71:6
72:18 73:23,24 74:8,22 75:15
76:2 77:16 80:6,19,22 83:16 84:1
85:25 86:7 88:17,19,20,21 92:3
95:5,9,17,20 97:24 99:15 100:12
101:24 102:7,10

**reading** 40:21 42:2 52:19 62:21

**real** 22:2

**reason** 44:8,12

**recall** 13:15 17:3 20:7,13 24:2
30:6,9,12,13 34:14 42:15 43:9,
12,20,25 44:11,17,23 45:3 47:2
48:17 62:21 64:7 79:1

**received** 11:10 20:7 21:17,20
23:5,13 52:13

**receiving** 48:18,24 49:8

**recitation** 60:10,12

**recognize** 23:17

**recollection** 8:21 79:10 93:2

**record** 22:4 25:15 29:20 32:25
43:1,13 46:3,6,13 58:8 60:3
80:19 91:9 95:6,9 96:2 100:21
105:17

**records** 30:17 31:1 49:6

**recover** 86:7,10,13

**recovery** 64:24 66:7,13 67:12,
16 72:22 73:1,6

**refer** 94:20 95:4,24

**reference** 20:24 35:20 52:8 57:9
77:14

**referenced** 16:21 27:7 31:1,10
35:12 51:16 54:19 56:4 74:3
84:25 91:17,19,21

**references** 28:8 34:20,25 77:21

**referencing** 39:8 98:3 100:11

**referring** 26:13 38:12,17 62:6
63:19 76:25 101:17

**reflect** 8:8 22:4 29:21 46:6 58:8

**reflected** 90:10

**reflective** 83:15

**refresh** 8:20

**regional** 13:9

**regions** 13:7

**rejected** 87:24

**related** 64:2 77:16 102:19
103:16

**relevant** 55:19 77:9 89:14

**relied** 44:17 60:18 84:23 85:9,15

**relies** 38:21 53:25 55:21 77:10
78:20

**rely** 36:12,19,23 55:4 56:10 61:5
68:1,4 70:18 86:6,18,23 87:3,11,
15,19 88:21,24 89:16 90:2 91:13,
16,19 96:1 105:25

**relying** 38:24 54:5 60:14 75:14
78:5 94:18,21 95:22 98:9 100:19

**remain** 54:19 56:5

**remaining** 9:5

**remains** 36:25

**remedial** 72:4,11

**remedy** 74:20

**remember** 33:17 72:3,10

**removing** 75:24 86:12 87:8

**renew** 15:25

**rep** 12:9,23 14:6,9 17:5

**repair** 75:22 85:23 86:8,25 87:6

**repairs** 61:19 72:4,11 75:23
86:12,20 87:7

**repeat** 10:20 44:10 76:10

**rephrase** 20:10 30:24 49:3
51:13 53:7 77:10 91:13

**replacement** 85:23 86:25

**replacing** 75:24 86:12 87:8

**report** 36:24

**reported** 25:1

**reports** 48:19 49:8 61:24

**representative** 9:22 10:3,11
12:9 14:1,7 30:3,4 31:13 87:19

**representatives** 31:10 66:23,
25

**representing** 23:1

**request** 8:23 25:14,19 33:7
43:13

**requested** 9:6

**require** 37:8 50:17 56:18 57:13,
20 102:11

**required** 35:2 37:13,15,22
51:15,24 52:3 53:2,13,22 54:19
56:5 61:18 74:16 84:7,12 86:10,
11 99:15

**requirement** 31:21 55:1 97:14,
15 98:6,7

**requirements** 37:7 50:19 52:9
57:13 62:1

**requires** 54:6 55:5 56:1,10 97:7

**reread** 67:21

**reservation** 42:20 43:5,10,20,
21 44:3

**reserve** 104:13 105:7

**reserving** 9:8

**reshuffled** 12:5

**respect** 18:12 19:15,19 60:22
62:18 65:15 94:8,15,24 95:8
96:8,20 101:21 104:25

**response** 21:5 23:24 25:13,19
33:25 63:18

**responsible** 13:10

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020

restate 92:14

restaurant 12:14

resulted 66:23 70:25 74:4

review 16:17,19 17:3,12,20 18:24 20:6 27:17 79:2,4,8

reviewed 16:20,22,23,24,25 17:4,5,6 26:22 44:2,4 49:15,23, 25 59:5 78:25 79:3 93:3,5 96:14, 17

reviewing 18:19 43:20,25 64:7

rider 8:17

rights 9:8 42:20 43:5,10,20,21 44:3

RISCO 12:5,7,12

Riverside 20:16 99:10,11,12

Robert 46:10 96:7

role 18:25

roof 69:23

roughly 10:15 11:24 13:4

Routinely 31:14

Rule 8:24

rules 8:8,9,10 10:17 89:5

——————————————
                    S
——————————————

Safeco 11:17,18,20,22

satisfy 84:2

scenario 45:14

schedule 37:6 50:10 51:16 54:17 56:4 57:12,19 61:22 83:7,8

scheduled 24:7

science 11:8

scope 31:18 36:5 55:16,18 68:3 76:2 89:20 94:11 102:20 103:17, 21 104:3,5

scratch 62:5 94:23 103:22

sealed 83:14

Section 73:24

sections 40:17

seek 87:12,16

seeking 87:21 100:4

selection 52:14

send 31:9,15,16,25 32:1 99:18

sentence 72:8 74:15 102:10

sentences 60:5

separate 74:7,10,12

September 11:15 21:4 24:7 25:16 29:22 31:2 46:8,24 57:23

servants 65:4

served 9:21 12:14

set 61:5 72:12,16 73:3 74:1,22 91:25 92:19,20 105:25

settling 100:2

seventeen 25:4,5 26:14,20

shaking 104:19

shown 25:15

shows 37:3

sic 100:25

signatory 33:3

signature 105:7

signed 25:17 46:10

significant 15:10 28:6

signing 52:14

similar 39:14 84:22 87:24 88:4 103:7

simply 67:11

single 47:12

sir 10:18 11:25 12:15 13:21 15:4 16:15 27:23,25 33:22 36:20 46:21 50:11 51:2,7,11 52:10 60:2 90:14 98:20,23

sit 48:8

sitting 43:9

situation 26:1

sixteen 80:4 83:6 99:25

skip 74:8,15

slightly 48:2

sociology 11:8

sole 102:5

sounded 86:2

source 91:19 96:1

sources 69:23 70:3

Southeastern 11:9

speaking 33:17

speaks 28:10 35:17 39:12 50:6 65:22 70:10 71:24 73:21 84:15

special 15:11

specialist 13:3 15:2,4

specific 12:24 13:7 41:9 68:8 77:14 78:15 85:11 89:24 93:2

specifically 33:2 39:25 58:5 75:19 97:7 103:3

spoke 30:15

spoken 19:12 91:24 92:18

spot 69:11

stamp 17:8,10 24:16 25:3 46:10

stamps 16:21

standard 99:22

standing 15:16

start 11:13,16

started 11:11 16:1 65:7,10 96:9, 21

starting 11:2 24:7 26:8 57:11

State 11:4,5

stated 61:15 67:25 68:1 72:22 90:7 97:22 102:22

statement 26:6 28:12,15 36:7 38:21,23 39:5,12,14,16 57:18 75:7,8,11 77:11 105:1

statements 56:3 96:20

states 13:7,10 15:12 28:1 31:13 37:2 50:13 82:12 86:7,19 89:17, 18 97:3,23 98:3 99:10 102:22

stating 40:1 56:4 77:7

status 34:21 36:24 49:8

stay 12:17 14:20

stayed 14:22

sticking 103:7

stop 10:23 60:21

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                        Index: stoppped..TSG

**stoppped** 61:20

**storefronts** 83:12

**Street** 99:11

**strike** 20:10,14 45:15 51:13 53:8 67:18 71:10

**styled** 56:16 87:24

**subcontract** 37:7,12,22 49:15, 22 50:3,16 52:14 54:20,25 55:5 56:1,6,10,17 57:12 68:11 74:2,4, 13,16,19 75:17 81:15 82:8,9,11, 14,15,18 83:5 89:8,20 90:4 97:6 98:1,2

**subcontractor** 36:24 50:14,17 54:6

**subcontractor's** 50:15 52:12

**subcontractors** 50:17,20 61:17 65:3 66:22 70:25 71:6 101:22 102:3

**Subparagraph** 81:9

**subs** 35:7

**Subsequent** 11:8

**subsidiary** 12:6

**substantial** 26:8

**substantially** 36:5

**suddenly** 42:24

**sued** 68:2 77:24 78:6 89:18 90:8

**summary** 87:15

**sums** 75:24 86:14 87:8

**support** 37:18 60:14 91:4,25 92:4,5,19 94:19,25 95:23 98:9

**supposed** 69:12

**surrounding** 64:3

**sworn** 8:3

**system** 25:25 62:7,18 63:2,8,16, 20 68:19 73:18 76:16 83:14 93:9 94:9

**systems** 62:23 72:11 87:1

_____

_____

### T

**tabbed** 36:16

**taking** 57:19 100:15

**talk** 77:17

**talked** 26:7 62:22 82:19

**talking** 64:1 77:18

**talks** 75:3

**Taylor** 22:6,8 23:1 29:22 33:1

**Tecum** 8:17

**temporary** 12:25

**ten** 36:20,21 47:25

**ten-year** 84:12

**tenant** 28:4,7

**tenants** 28:2 80:20 85:15

**tender** 20:8,13 21:6,15 33:25 34:7

**tendering** 21:15

**Tennessee** 11:4,5,6

**tenure** 14:12

**term** 28:16,23 29:5 40:11 41:7,9, 14 63:12 76:24 77:14 80:25

**terms** 41:20 53:22 55:20 74:10, 12 97:25 98:2 102:6

**testified** 8:4 10:2 21:14 83:24 87:20 96:25

**testify** 9:15,24 24:25

**testifying** 16:4 32:7

**testimony** 59:4 96:7,14,16

**testing** 69:20 86:9

**theory** 68:9 72:22 73:1,6 89:25

**thing** 84:24

**things** 17:1 69:3

**thinking** 48:7

**thirty** 52:17,18

**thirty-nine** 69:5,13

**thought** 36:16 40:24

**thousand** 12:16

**tiles** 87:13,21

**time** 10:23 12:6 13:8 15:21 20:22 21:5 23:2,5 26:22 27:12 28:14 29:14 33:11 37:4 42:11 45:16 47:12 48:16,18 52:14 58:16 60:24 67:22 81:24 92:23,25 94:6

99:3

**times** 10:2,11,15

**title** 12:8 14:5

**titled** 95:24

**today** 8:18 105:20

**Tony** 105:14

**top** 50:10 51:8

**topic** 102:24 103:2

**topics** 9:25 103:17

**tort** 72:13 73:9 89:11

**total** 86:9,15

**TPA** 12:12,14

**trades** 65:2

**trades/integration** 70:24

**transcripts** 93:5,16

**transferred** 13:2

**trial** 68:19,25 70:2,16 71:12 72:21 73:11,17 87:20 96:8,14,16, 20,25

**trick** 101:8,9

**true** 69:20

**Trust** 9:12,16 10:5,12 14:24 16:13 20:7,23 21:6,15 23:5,12 24:10,23 32:8,9,10,15 34:12 37:14 42:12,19 43:17 44:9,12 45:4,7,14,16 47:13 48:16,24 49:6,7 51:12,14,23 52:2 53:1,11, 21 54:5 55:25 57:18 58:2,9,23 59:5,11,15 60:5,13,23 67:17 70:1,5,9 71:11,18 72:20 73:16,20 76:5,14 77:13 78:9 80:12 81:18 82:3,25 83:1,18,25 84:3,6 85:18 90:13 91:24 92:18 93:6,8,15,17 94:7 95:1,10,14 97:11,16,18 99:25 100:5,14 101:1 102:22 103:20 104:9

**Trust's** 28:16 53:19 54:24

**truthfully** 16:4

**TSG** 16:14 18:4 19:12 20:8,20,22 21:14,20 22:6,8 30:15 38:4,8 39:18 42:4,6,13,16,20 43:4,5,7, 18 44:9,13 45:3,5,22 46:9,24,25 47:3,15 48:17,19 49:9,14 50:3 51:13,15,24 52:3 53:2,13,22 54:6

AMERISURE INSURANCE and AMERISURE MUTUAL INSURANCE vs FCCI INSURANCE
Harris, Derrick on 02/14/2020                                    Index: Tsg's..yesterday

55:5 56:11,17,18 60:17,24 62:18
63:15 64:16 65:15,17 66:2 67:4,
7,11 68:2,11,12 70:2,11,22 71:2,
14,20 72:12,22 73:10 74:1,2,5,7,
13,16,18,19 75:1,17,20 76:7
77:23 82:25 85:1,6 86:25 87:4
88:22 89:1,7,8,18 90:3,7 91:25
92:19 93:6,8,19 94:8 95:13 96:21
97:6,7 98:25

**TSG's** 18:15 19:2 21:17 29:12
34:1 36:5,24 56:18 61:4,10 62:4,
6 64:4 67:20 68:18,24 69:21
70:15 72:18 74:3 75:4 76:2,24
82:23 85:3,23 89:20 93:18

**Tuesday** 17:16 33:12

**turn** 25:3,9 34:17 50:2,9 59:23
70:20 83:8

**turned** 12:3

**turning** 69:12

**twelve** 59:24

**twenty** 18:20 95:4

**twenty-four** 27:20,21

**twenty-two** 80:18

**type** 55:14

**types** 50:15

---

**U**

**Uh-huh** 24:19

**ultimately** 89:5

**umbrella** 14:18,19

**unaware** 82:16 83:25

**unclear** 10:20

**uncovered** 100:4

**undefined** 41:7,9

**underlying** 16:23 46:25 61:4,11
62:17 64:5,17 78:2 85:21,22
87:12,16,20 89:17 90:6,10 95:12
96:10

**underneath** 37:6

**understand** 18:25 63:12 92:15

**understanding** 10:21 22:25
23:4 45:18 67:3 73:10

**unit** 13:3 15:3

**University** 11:4,6

**updates** 48:25 49:8 61:22

**usual** 47:5

---

**V**

**verbatim** 64:20

**vicarious** 77:22

**vicariously** 39:20

---

**W**

**waiting** 40:23

**wall** 50:3 74:17

**warranty** 54:21 56:7 82:16,17,
24 83:2,9,14,19,22 84:1,4,8,12

**water** 17:1 27:4,11 28:4,8,9
69:18,20,22 70:3 75:25 80:4,22
86:15,17 87:9,22 96:8,20

**ways** 27:7

**Wednesday** 17:17 27:1,2 33:12
50:1

**week** 33:11,13 49:25 58:18

**weeks** 12:4

**window** 62:7,18,22 63:2,8,16,20
64:3 68:19 73:17 76:16 87:1 93:9
94:9

**windows** 69:22 75:24 86:13
87:8

**withdraw** 42:9

**withdrawing** 46:24

**withdrew** 45:17 47:1,3

**witnesses** 69:19,21

**word** 29:12 86:2,3 95:18

**worded** 85:5

**work** 11:9,22 13:25 18:15 36:5,
12,25 37:2 65:3 66:21 68:3,12
70:25 71:5 72:18 74:3,17,19,20,
21 76:2 83:7 84:9 85:23 89:7,20
90:7,16,17 102:15 103:8,14

**workers'** 97:9

**working** 11:13,16 61:21

**workmanlike** 74:17 89:7

**workmanship** 72:12 90:16,17

**write** 28:22

**written** 33:24 35:2 57:24 75:14
99:15

**wrote** 24:22,25 25:2 28:21 39:11

---

**Y**

**year** 18:5

**years** 11:3,11,23 12:18 83:13,14,
15,16

**yesterday** 17:19